| | | |
|---|---|---|
| JUDY HARWARD AND<br>BRENT HARWARD et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | CASE NO. 1:21-CV-00095 |
| | ) | |
| CITY OF AUSTIN and<br>AUSTIN COMMUNITY COLLEGE, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED COMPLAINT

Plaintiffs are property owners (the Homeowners) whose property is located along what was once the shoreline of the Colorado River and is now Lake Austin (the shoreline properties). The Homeowners file this First Amended Complaint against the City of Austin (the City) and Austin Community College (ACC) requesting injunctive, declaratory, and mandamus relief under 42 U.S.C. §§1983 and 1988, the Fourteenth Amendment of the United States Constitution, Article I, §10 of the United States Constitution, and the constitution and laws of the State of Texas.

### PRELIMINARY STATEMENT

1.      For well over a century, the Homeowners have not received municipal services from the City and have not paid taxes to the City because their properties were in the City's limited-purpose jurisdiction. As a result, the Homeowners secured other ways to get the services that their homes need. For example, some Homeowners installed and maintain expensive water filtration and storage systems to draw water from wells or from

Lake Austin. Others became part of and pay special utility districts whose sole purpose is to provide them with water services. Most also maintain their own septic systems and pay private companies to collect their trash.

2.     Nearly all the Homeowners know better than to rely on the City for emergency services. Because the shoreline properties are clustered along rugged terrain—many miles from the City center—police, fire, and emergency medical services from the City are ineffective or simply unavailable.

3.     In 1986, the City Council passed a resolution declaring that the shoreline properties were in the City's limited-purpose jurisdiction and could not be taxed until the City provided them with "all City services."

4.     But in 2019, the City broke its promise and attempted to rewrite history, unilaterally announcing—for the first time in the nearly 130 years the shoreline properties have been part of the City—that the shoreline properties had always been in the City's full-purpose jurisdiction and were thus required to pay City taxes. The result has left the Homeowners facing a huge additional tax bill while still paying for basic services from other sources.

5.     To annex property from a city's limited-purpose jurisdiction to its full-purpose jurisdiction, a municipality is required to follow the procedures prescribed by state law and its own charter. The City of Austin is well acquainted with those procedures—and it routinely follows them when it annexes limited-jurisdiction property to its full-purpose jurisdiction.

6.     But the City ignored those procedures in its eagerness to grab additional tax revenue from what it inaccurately framed as tax-exempt mansions on Lake Austin.

7.     Here, the City did not follow the procedures prescribed under state law and its own charter for a simple reason: the City knew that it could not satisfy the law's requirements. So instead of following the law, the City attempted to rewrite history by repealing the City's 1986 recognition of the shoreline properties' limited-jurisdiction status and claiming (falsely) that the shoreline properties had always been within the City's full-purpose jurisdiction. Put another way, the City attempted to change the shoreline properties' status retroactively so that the City would not have to comply with the law as it stands today.

8.     In doing so, the City flouted state law, disregarded the limits placed on its authority by the Austin City Charter, and trampled the Homeowners' rights under the Texas and United States Constitutions.

## JURISDICTION AND VENUE

9.     Jurisdiction is conferred on this Court by 28 U.S.C. §1331 because this case includes causes of action "arising under the Constitution, laws, or treaties of the United States" and by 28 U.S.C. §1343(a)(3) because this case seeks to redress the deprivation of federal constitutional rights under color of state law.

10.     This Court has supplemental jurisdiction over the causes of action arising under Texas law under 28 U.S.C. §1367.

11.     Venue is appropriate under 28 U.S.C §1391(b)(1)-(2) because the City is in this district and a substantial part of the events or omissions giving rise to the Homeowners' claims occurred in this district.

**PARTIES**

12.     Plaintiffs Judy Harward and Brent Harward are individuals who own the property located at 2701 Pearce Road, Austin, Texas 78730.

13.     Plaintiff 3325 Westlake Owners, LLC owns the property located at 3325 Westlake Drive, Austin, Texas 78746.

14.     Plaintiff Kirk H. Fritschen brings this suit as the trustee of the 3705 Westlake Trust. The 3705 Westlake Trust owns the property located at 3701 Westlake Drive, Austin, Texas 78746.

15.     Plaintiff 4200 Rivercrest LLC owns the property located at 4200 Rivercrest Drive, Austin, Texas 78746.

16.     Plaintiffs Robert G. Anding and Roberta H. Anding are individuals who own the property located at 2105 Big Horn Drive, Austin, Texas 78734.

17.     Plaintiffs Hunter H. Armistead and Kerry O. Armistead bring this suit as the trustees of the 2011 Amended and Restated Armistead Family Trust. The 2011 Amended and Restated Armistead Family Trust owns the property located at 3600 Rivercrest Drive, Austin, Texas 78746.

18.     Plaintiff Sara G. Austin is an individual who owns the property located at 2706 Edgewater Drive, Austin, Texas 78733.

19.     Plaintiffs Brent R. Bailey and Janet Lynn Bailey are individuals who own the property located at 1609 Manana Street, Austin, Texas 78730.

20.     Plaintiffs Robert W. Beardsley and Valerie A. Beardsley are individuals who own the property located at 2405 Westlake Drive, Austin, Texas 78746.

21.     Plaintiff Janet L. Bennett is an individual who owns the property located at 6708 Troll Haven, Austin, Texas 78746.

22.     Plaintiffs Al Bentley and Joann Bentley are individuals who own the property located at 3306 Rivercrest Drive, Austin, Texas 78746.

23.     Plaintiffs Barbara Pereira and Brian B. Berger bring this suit as the trustees of the Berger Living Trust. The Berger Living Trust owns the property located at 2329 Westlake Drive, Austin, Texas 78746.

24.     Plaintiffs Conrad Bering and Bernadine Bering are individuals who own the property located at 3126 Edgewater Drive, Austin, Texas 78733.

25.     Plaintiffs Richard A. Berkowitz, Judith A. Berkowitz, and Jason S. Berkowitz are individuals who own the property located at 3124 Edgewater Drive, Austin, Texas 78733.

26.     Plaintiffs Joseph W. Blandford, Patricia R. Blandford, and the Blandford Family Partnership jointly own the property located at 1318 Rockcliff Road, Austin, Texas 78746.

27.     Plaintiffs Jonathan M. Boatwright and Yvette F. Boatwright bring this suit as the trustees of the Boatwright Living Trust. The Boatwright Living Trust owns the properties located at 3202 and 3205 Rivercrest Drive, Austin, Texas 78746.

28.     Plaintiffs William R. Boebel and Elizabeth Barnett Boebel are individuals who own the property located at 1703 Manana Street, Austin, Texas 78730.

29. Plaintiff Conrad R. Bohn is an individual who owns the property located at 3201 Rivercrest Road, Austin, Texas 78746.

30. Plaintiff BRAMS Fund I LLC owns the property located at 6901 Greenshores Drive #3, Austin, Texas 78730.

31. Plaintiffs Robert Shawn Breedlove and Deanne Marie Breedlove are individuals who own the property located at 1709 Manana Street, Austin, Texas 78730.

32. Plaintiffs Lloyd Brinkman and Teresa Brinkman are individuals who own the property located at 2501 Tydings Cove, Austin, Texas 78730.

33. Plaintiff Carey L. Britt is an individual who owns the property located at 2505 Tydings Cove, Austin, Texas 78730.

34. Plaintiffs William Buchholz and Elizabeth Buchholz are individuals who own the property located at 1905 Manana Street, Austin, Texas 78730.

35. Plaintiff Christopher Bugge is an individual who owns the properties located at 3705 Robbins Road, Austin, Texas 78730 and 7029 Greenshores Drive, Austin, Texas 78730.

36. Plaintiff Clinton Bybee is an individual who owns the property located at 3415 Westlake Drive, Austin, Texas 78746.

37. Plaintiffs Phillip M. Cameron and Melissa Cameron are individuals who own the property located at 6705 Pixie Cove, Austin, Texas 78746.

38. Plaintiffs William L. Campbell and Linda Campbell are individuals who own the property located at 1701 Manana Street, Austin, Texas 78730.

39.     Plaintiffs Everett J. Carmody Jr. and Juli N. Carmody are individuals who own the property located at 2329 Westlake Dr. Unit 5, Austin, Texas 78746.

40.     Plaintiffs Elizabeth Carter and Shelby Carter III are individuals who own the property located at 2909 Westlake Cove, Austin, Texas 78746.

41.     Plaintiff Blaine Lourd brings this suit as the trustee of Casa Revocable Trust. Casa Revocable Trust owns the property located at 3704 Rivercrest Drive, Austin, Texas 78746.

42.     Plaintiffs Mark Preston Caudle and Molly Borden Caudle are individuals who own the property located at 1601 Manana Street, Austin, Texas 78730.

43.     Plaintiffs Donald R. Chapman and Wendy Leann Chapman bring this suit as the trustees of the Donald R. Chapman Management Trust with Plaintiff Linda B. Shelton, an individual. The Donald R. Chapman Management Trust and Linda B. Shelton own the property located at 1314 Rockcliff Road, Austin, Texas 78746.

44.     Plaintiff Robert Charlebois is an individual who owns the property located at 2457 Westlake Drive, Austin, Texas 78746.

45.     Plaintiffs Jerome Sherwood Clark and Elizabeth Rose Clark bring this suit as the trustees of the Clark Living Trust. The Clark Living Trust owns the property located at 1707 Manana Street, Austin, Texas 78730.

46.     Plaintiffs Jane H. Coleman and James H. Coleman are individuals who own the property located at 3604 Rivercrest Drive, Austin, Texas 78746.

47.     Plaintiff Kathleen C. Cornell is an individual who owns the property located at 2706 Rivercrest Drive, Austin, Texas 78746.

48. Plaintiffs Donald Counts and Kathryn O. Counts are individuals who own the property located at 3925 Westlake Drive, Austin, Texas 78746.

49. Plaintiff Kathryn O'Connor Counts is an individual who owns the property located at 3919 Westlake Drive, Austin, Texas 78746.

50. Plaintiff Jax B. Cowden is an individual who owns the property located at 2100 Island Wood Road, Austin, Texas 78733.

51. Plaintiff Scott R. Crawley is an individual who owns the property located at 3702 Rivercrest Drive, Austin, Texas 78746.

52. Plaintiffs Gregory K. Crouch and Dawn Stone Crouch are individuals who own the property located at 3206 Rivercrest Drive, Austin, Texas 78746.

53. Plaintiff Kevin M. Cunningham is an individual who owns the property located at 1603 Manana Street, Austin, Texas 78730.

54. Plaintiff Tom Martin Davis III is an individual who owns the property located at 1752 Channel Road, Austin, Texas 78746.

55. Plaintiff James Jefferson Dean is an individual who owns the property located at 2902 Rivercrest Drive, Austin, Texas 78746.

56. Plaintiffs Robert L. Depwe and Karen E. Depwe are individuals who own the properties located at 2507 and 2508 Westlake Drive, Austin, Texas 78746.

57. Plaintiffs Robert W. Dillard III and Krista D. Dillard are individuals who own the property located at 2329 Westlake Drive #10, Austin, Texas 78746.

58. Plaintiff Valla Djafari is an individual who owns the property located at 2009 Lake Shore Drive, Austin, Texas 78746.

59.     Plaintiff Drenner Holdings, LLC owns the property located at 1404 Rockcliff Road, Austin, Texas 78746.

60.     Plaintiffs John P. Duffy and Stephanie C. Stokes are individuals who own the property located at 3308 Rivercrest Drive, Austin, Texas 78746.

61.     Plaintiff Joseph Dulin is an individual who owns the property located at 6703 Troll Haven, Austin, Texas 78746.

62.     Plaintiffs Ryan P. Dumont and Margaret Dumont are individuals who own the property located at 3602 Rivercrest Drive, Austin, Texas 78746.

63.     Plaintiff Robert Dunbar is an individual who owns the property located at 4813 Laguna Lane, Austin, Texas 78746.

64.     Plaintiff Terri Ecoff is an individual who owns the property located at 2503 Tydings Cove, Austin, Texas 78730.

65.     Plaintiffs Chris Ellis and Amy Ellis are individuals who own the property located at 1702 Channel Road, Austin, Texas 78746.

66.     Plaintiff EHSME Partners, LTD owns the property located at 2910 Edgewater Drive, Austin, Texas 78733.

67.     Plaintiffs Kenneth K. Ellis and Lisa C. Ellis are individuals who own the property located at 2700 Rivercrest Drive, Austin, Texas 78746.

68.     Plaintiff Felix Erbring is an individual who owns the property located at 1714 Channel Road, Austin, Texas 78746.

69.     Plaintiff Bob A. Estes is an individual who owns the property located at 2001 Manana Street, Austin, Texas 78730.

70.     Plaintiff Carrie Ann Finch is an individual who owns the property located at 2806 Edgewater Drive, Austin, Texas 78733.

71.     Plaintiff Gail Findlay is an individual who owns the property located at 2005 Manana Street, Austin, Texas 78730.

72.     Plaintiffs Joshua Adam Fogelman and Stephanie S. Fogelman are individuals who own the property located at 2007 Manana Street, Austin, Texas 78730.

73.     Plaintiff Foster & Wellington, LLC owns the property located at 2447 Westlake Drive, Austin, Texas 78746.

74.     Plaintiffs Michael Frost and Terri Frost are individuals who own the property located at 2311 River Hills Road, Austin, Texas 78733.

75.     Plaintiffs Michael Gillette and Leann Gillette are individuals who own the property located at 3207 Rivercrest Drive, Austin, Texas 78746.

76.     Plaintiffs Thomas W. Gilligan and Christie L. Skinner are individuals who own the property located at 2455 Westlake Drive, Austin, Texas 78746.

77.     Plaintiffs Eric Goldreyer and Elizabeth Goldreyer are individuals who own the property located at 1502 Rockcliff Road, Austin, Texas 78746.

78.     Plaintiffs J.B. Goodwin and Marilyn Goodwin are individuals who own the property located at 2607 River Hills Road #D, Austin, Texas 78733.

79.     Plaintiff Derek Gordon is an individual who owns the property located at 3204 Rivercrest Drive, Austin, Texas 78746.

80.     Plaintiff Thomas Greene is an individual who owns the property located at 12411 River Bend, Austin, Texas 78732.

81.     Plaintiff John H. Greenwood is an individual who owns the property located at 2806 Rivercrest Drive, Austin, Texas 78746.

82.     Plaintiffs Bob E. Gregory and Kay R. Gregory are individuals who own the property located at 2939 Westlake Cove, Austin, Texas 78746.

83.     Plaintiff Susan Cope Griffith is an individual who owns the property located at 2415 Westlake Drive, Austin, Texas 78746.

84.     Plaintiffs Ryan N. Gustafson and Shannon L. Gustafson are individuals who own the properties located at 3510 Rivercrest Drive, Austin, Texas 78746 and 6700 Elfland Drive, Austin, Texas 78746.

85.     Plaintiffs William M. Hablinski and Leigh E. Hablinski are individuals who own the property located at 2905 Westlake Cove, Austin, Texas 78746.

86.     Plaintiff Stephen E. Hambric is an individual who owns the property located at 3605 Robbins Road, Austin, Texas 78730.

87.     Plaintiffs John E. Hamm and Frances B. Hamm are individuals who own the property located at 4801 Laguna Lane, Austin, Texas 78746.

88.     Plaintiffs Cavit Handley and Lauren Handley are individuals who own the property located at 2504 Tydings Cove, Austin, Texas 78730.

89.     Plaintiff Mark Jason Harries is an individual who owns the property located at 3804 Island Way #7, Austin, Texas 78746.

90.     Plaintiffs Justin H. Hartley and Ashley E. Hartley are individuals who own the property located at 2315 A Westlake Drive #9, Austin, Texas 78746.

91.     Plaintiff Mary Austin Hewitt is an individual who owns the property located at 4009 Rivercrest Drive, Austin, Texas 78746.

92.     Plaintiffs Joel Hock and Stacy Hock are individuals who own the property located at 3331 Westlake Drive, Austin, Texas 78746.

93.     Plaintiffs Lew D. Hodge and Dawnetta L. Hodge are individuals who own the property located at 2307 Manana Street, Austin, Texas 78730.

94.     Plaintiffs Colin Hodges and Shari Hodges bring this suit as the trustees of the Colin and Shari Hodges Revocable Trust. The Colin and Shari Hodges Revocable Trust owns the property located at 3102 Edgewater Drive, Austin, Texas 78733.

95.     Plaintiffs Eric Hoffman and Daisa Hoffman are individuals who own the property located at 14524 Flat Top Ranch Road, Austin, Texas 78732.

96.     Plaintiffs Gina Wyatt Hogan and Roy L. Wyatt III are individuals who own two lots located at 1758 Channel Road, Austin, Texas 78746.

97.     Plaintiff Jack Dallas Holford is an individual who owns the property located at 3409 Westlake Drive, Austin, Texas 78746.

98.     Plaintiff Jared L. Holland is an individual who owns the property located at 3404 Rivercrest Drive, Austin, Texas 78746.

99.     Plaintiffs Aaron R. Hoover and Daryl F. Hoover are individuals who own the property located at 6706 Troll Haven, Austin, Texas 78746.

100.    Plaintiff John C. Horton III is an individual who owns the property located at 3111 Westlake Drive, Austin, Texas 78746.

101.    Plaintiffs George Howe and Sarah Howe bring this suit as the trustees of the Howe Living Trust. The Howe Living Trust owns the property located at 6704 Troll Haven, Austin, Texas 78746.

102.    Plaintiff HubBev, LLC owns the property located at 2926 Westlake Cove, Austin, Texas 78746.

103.    Plaintiff Lance Hughes is an individual who owns the property located at 2609 Westlake Drive, Austin, Texas 78746.

104.    Plaintiffs Jeff R. Hunt and Anne Marie Hunt are individuals who own the property located at 2204 Island Wood Road, Austin, Texas 78733.

105.    Plaintiffs Brent Hunter and Katherine Hunter are individuals who own the property located at 4711 Laguna Lane, Austin, Texas 78746.

106.    Plaintiffs Greg Hurd and Stephanie N. Hurd are individuals who own the property located at 4104 Rivercrest Drive, Austin, Texas 78746.

107.    Plaintiffs Curtis Hutcheson and Courtney Hutcheson are individuals who own the property located at 4105 Lakeplace Lane, Austin, Texas 78746.

108.    Plaintiffs Scott S. Ingraham and Teresa G. Ingraham are individuals who own the property located at 3317 Westlake Drive, Austin, Texas 78746.

109.    Plaintiffs Ricky L. Jenkins and Carolyn M. Jenkins are individuals who own the property located at 3016 Edgewater Drive, Austin, Texas 78733.

110.    Plaintiffs Jack Edward Jensen and Allison Joy Jensen are individuals who own the property located at 2900 Rivercrest Drive, Austin, Texas 78746.

111.     Plaintiff Diana Fuller Johnson is an individual who owns the property located at 3115 Ski Shores Terrace, Austin, Texas 78730.

112.     Plaintiff Kathy Ann Goss Johnston is an individual who owns the property located at 3018 Edgewater Drive, Austin, Texas 78733.

113.     Plaintiffs David J. Jones and Jody B. Jones are individuals who own the property located at 2329 Westlake Drive #12, Austin, Texas 78746.

114.     Plaintiff Joot Holdings LP owns the property located at 2800 Rivercrest Drive, Austin, Texas 78746.

115.     Plaintiffs Cary D. Juby and Allyssa A. Juby are individuals who own the property located at 407 Lago Verde Drive, Austin, Texas 78734.

116.     Plaintiff Kane Anore LLC owns the property located at 2105 Island Wood Road, Austin, Texas 78733.

117.     Plaintiff Michael A. Kapsner brings this suit as the trustee of the Kapsner Family Trust. The Kapsner Family Trust owns the property located at 1804 Rockcliff Road, Austin, Texas 78746.

118.     Plaintiffs Patrick M. Keating and Jannette Keating are individuals who own the property located at 2900 Westlake Cove, Austin, Texas 78746.

119.     Plaintiff Patrick Kelley is an individual who owns the property located at 1717 Channel Road, Austin, Texas 78746.

120.     Plaintiffs Michael L. Klein and Jeanne L. Klein are individuals who own the property located at 1408 Rock Cliff Drive, Austin, Texas 78746.

121.    Plaintiffs Jan M. Klinck and Sally D. Klinck bring this suit as the trustees of the Jan M. and Sally D. Klinck Residential Trust. The Jan M. and Sally D. Klinck Residential Trust owns the property located at 6706 Leprechaun Drive, Austin, Texas 78746.

122.    Plaintiffs Mark Klingseisen and Colleen Klingseisen are individuals who own the property located at 3008 Rivercrest Drive, Austin, Texas 78746.

123.    Plaintiff Tiffany Faircloth Kosch is an individual who owns the property located at 4307 Michaels Cove, Austin, Texas 78746.

124.    Plaintiff Peggy J. Kramer is an individual who owns the property located at 3109 Westlake Drive, Austin, Texas 78746.

125.    Plaintiffs Gregory M. Kronberg and Sharon L. Kronberg are individuals who own the property located at 2205 Island Wood Road, Austin, Texas 78733.

126.    Plaintiffs Craig C. Kuglen and Margaret M. Kuglen are individuals who own the property located at 1310 Rockcliff Road, Austin, Texas 78746.

127.    Plaintiff Ricardo Jose Manllo Kuri is an individual who owns the property located at 2908 Westlake Cove, Austin, Texas 78746.

128.    Plaintiff Ken Lahanas is an individual who owns the property located at 3301 Rivercrest Drive, Austin, Texas 78746.

129.    Plaintiff Lake Austin Marina I, L.P. owns the property located at 2215 Westlake Drive, Austin, Texas 78746.

130.    Plaintiffs H. Michael Lambert and Jennifer R. Lambert are individuals who own the property located at 1611 Manana Street, Austin, Texas 78730.

131.    Plaintiffs Bradford Ledbetter and Shari Ann Ledbetter are individuals who own the property located at 1707 Channel Road, Austin, Texas 78746.

132.    Plaintiffs Richard Kent Ledbetter II and Julie Rae Ledbetter bring this suit as the trustees of the Ledbetter Revocable Trust. The Ledbetter Revocable Trust owns the property located at 3700 Rivercrest Drive, Austin, Texas 78746.

133.    Plaintiffs Quincy Lee and Lora Reynolds are individuals who own the property located at 1515 Manana Street, Austin, Texas 78730.

134.    Plaintiff Michael Lehrter is an individual who owns the property located at 2329 Westlake Drive #14, Austin, Texas, 78746.

135.    Plaintiffs Gary P. Little and Frances P. Little are individuals who own the property located at 2802 Rivercrest Drive, Austin, Texas 78746.

136.    Plaintiff Todd Lively is an individual who owns the property located at 6702 Leprechaun Drive, Austin, Texas 78746.

137.    Plaintiffs Edward J. MacInerney and Dorothy M. MacInerney are individuals who own the property located at 2316 Island Wood Road, Austin, Texas 78733.

138.    Plaintiff Marbella Interests II LLC owns the property located at 2404 Westlake Drive, Austin, Texas 78746.

139.    Plaintiffs Mark Mathias and Kathy Mathias are individuals who own the property located at 4108 Sandy Acre Road, Austin, Texas 78746.

140.    Plaintiffs David May and Christy May are individuals who own the property located at 1601 Rockcliff Road, Austin, Texas 78746.

141.    Plaintiff Katie May is an individual who owns the property located at 1511 Rockcliff Road, Austin, Texas, 78746.

142.    Plaintiff John S. Mayes brings this suit as the trustee of the John S. Mayes Revocable Trust. The John S. Mayes Revocable Trust owns the property located at 3715 Westlake Drive, Austin, Texas 78746.

143.    Plaintiffs Mark P. McAllister and Elena Rodriguez McAllister bring this suit as the trustees of the McAllister Management Trust. The McAllister Management Trust owns the property located at 3106 Rivercrest Drive, Austin, Texas 78746.

144.    Plaintiffs Brian P. McCabe and Elisabeth Maris Harmon McCabe are individuals who own the property located at 10702 River Terrace, Austin, Texas 78733.

145.    Plaintiffs Shain McCaig and Melody McCaig are individuals who own two lots located at 921 Cypress Grove Drive, Austin, Texas 78732.

146.    Plaintiff Nicholas Wayne McClure is an individual who owns the property located at 1201 N. Weston Lane, Austin, Texas 78733.

147.    Plaintiff Kathleen Suzanne Benyon McConnachie is an individual who owns the property located at 3128 Edgewater Drive, Austin, Texas 78733.

148.    Plaintiff Lorin Slot McDowell IV is an individual who owns the property located at 3117 Ski Shores Terrace, Austin, Texas 78730.

149.    Plaintiffs Kevin R. McKeown and Jennifer L. McKeown are individuals who own the property located at 3121 Ski Shores Terrace, Austin, Texas 78730.

150.    Plaintiffs W. Grey McLeod Jr. and Linda H. McLeod are individuals who own the property located at 2704 Rivercrest Drive, Austin, Texas 78746.

151.     Plaintiffs Archer McWhorter Jr. and Dava McWhorter are individuals who own the property located at 1509 Manana Street, Austin, Texas 78730.

152.     Plaintiff Archer McWhorter Jr. is an individual who also owns the property located at 1511 Manana Street, Austin, Texas 78730.

153.     Plaintiff Audrone C. Meylan is an individual who owns the property located at 2427 Westlake Drive, Austin, Texas 78746.

154.     Plaintiffs Jeffrey B. Michel and Andrea W. Michel are individuals who own the property located at 4100 Rivercrest Drive, Austin, Texas 78746.

155.     Plaintiffs D. Kirk Miller and Sheryl R. Miller are individuals who own the property located at 2305 Manana Street, Austin, Texas 78730.

156.     Plaintiffs Morgan C. Mills and Lydia L. Mills are individuals who own the property located at 3002 Rivercrest Drive, Austin, Texas 78746.

157.     Plaintiffs Sharon L. Brubaker and Garrie W. Moore bring this suit as the trustees of the William R. Moore Trust with Plaintiff Jo Ann Moore, an individual. The William R. Moore Trust and Jo Ann Moore own the property located at 2900 Edgewater Drive, Austin, Texas 78733.

158.     Plaintiff Jonathan L. Morgan is an individual who owns the property located at 3111 Ski Shores Terrace, Austin, Texas 78730.

159.     Plaintiffs Thomas P. Mucks and Marsha P. Mucks are individuals who own the property located at 3004 Edgewater Drive, Austin, Texas 78733.

160.     Plaintiffs William Muehl and Alexandra Muehl are individuals who own the property located at 6701 Elfland Drive, Austin, Texas 78746.

161.     Plaintiffs Doug Murrell Jr. and Martha R. Murrell are individuals who own the property located at 2607 N River Hills Road #E, Austin, Texas 78733.

162.     Plaintiffs Jessica Newton and Grant Newton are individuals who own the property located at 3800 Rivercrest Drive C-26, Austin, Texas 78746.

163.     Plaintiff Numvula Holdings, LLC owns the property located at 6706 Elfland Drive, Austin, Texas 78746.

164.     Plaintiff Donna Olson brings this suit as the trustee of the LaRue Olson Family Trust. The LaRue Olson Family Trust owns the property located at 3006 Edgewater Drive, Austin, Texas 78733.

165.     Plaintiffs Daryl Ostrander and Robin Ostrander are individuals who own the property located at 1406 Rock Cliff Drive, Austin, Texas 78746.

166.     Plaintiffs Kay M. McNutt and Gordon R. McNutt Jr. bring this suit individually. Plaintiff Lolla M. Page brings this suit individually and as co-trustee of the William Page Bypass Trust. Plaintiffs William H. Page Jr. and Elizabeth P. Ryll bring this suit as co-trustees of the William Page Bypass Trust. Kay M. McNutt, Gordon R. McNutt Jr., Lolla M. Page, and the William Page Bypass Trust own the property located at 3411 Westlake Drive, Austin, Texas 78746.

167.     Plaintiffs Kay M. McNutt, Gordon R. McNutt Jr., and Lolla M. Page also bring this suit as individuals who own the property located at 3413 Westlake Drive, Austin, Texas 78746.

168.     Plaintiffs Michael Panoff and Janice Panoff are individuals who own the property located at 14316 Flat Top Ranch Road, Austin, Texas 78732.

169. Plaintiffs Michael Patino and Yolanda F. Patino are individuals who own the property located at 6702 Troll Haven, Austin, Texas 78746.

170. Plaintiffs Paul B. Pender and Peggy A. Pender are individuals who own the property located at 2329 Westlake Drive #11, Austin, Texas 79846.

171. Plaintiffs J. Chris Perkins and Charlotte J. Perkins bring this suit as the trustees of the Perkins Family Trust. The Perkins Family Trust owns the property located at 2607 River Hills Road #I, Austin, Texas 78733.

172. Plaintiff John D. Perkins is an individual who owns the property located at 2021 River Hills Road, Austin Texas 78733.

173. Plaintiffs Jerald Peterson and Cynthia Roussel-Peterson are individuals who own the properties located at 1746 and 1748 Channel Road, Austin, Texas 78746.

174. Plaintiffs John B. Pevateaux and Margaret E. Pevateaux are individuals who own the property located at 1306 Rockcliff Road, Austin, Texas 78746.

175. Plaintiffs Amy Porter and John Porter are individuals who own the properties located at 1704 and 1706 Channel Road, Austin, Texas 78746.

176. Plaintiff Eleanor Powell is an individual who owns the property located at 1810 Rockcliff Road, Austin, Texas 78746.

177. Plaintiffs Cynthia Present and Steve Present are individuals who own the property located at 12413 River Bend, Austin, Texas 78732.

178. Plaintiffs Charles D. Priebe and Shelly Orr Priebe are individuals who own the property located at 13005 On the Lake Road, Austin, Texas 78732.

179.    Plaintiffs Kieran J. Purcell and Allison L. Sallee are individuals who own the property located at 6703 Leprechaun Drive, Austin, Texas 78746.

180.    Plaintiff Stephen A. Pyhrr is an individual who owns the property located at 10806 River Terrance, Austin, Texas 78733.

181.    Plaintiffs Frank P. Quatro and Stephany Quatro are individuals who own the property located at 1711 Channel Road, Austin, Texas 78746.

182.    Plaintiffs W. Matt Ralls and Amelia J. Ralls are individuals who own the property located at 3414 Robbins Road, Austin, Texas 78730.

183.    Plaintiff Ramming Land, LLC owns the property located at 2463 Westlake Drive, Austin, Texas 78746.

184.    Plaintiff RD KD Family Partners, LP owns the property located at 2329 Westlake Drive #8, Austin, Texas 78746.

185.    Plaintiff Red Bud Partners, LP owns the properties located at 1750 and 1751 Channel Road, Austin, Texas 78746.

186.    Plaintiffs William L. Reeb and Michaelle A. Cameron are individuals who own the property located at 2603 Pearce Road, Austin, Texas 78730.

187.    Plaintiff Daniel Reeves is an individual who owns three lots located at 2905 Rivercrest Drive, Austin, Texas 78746.

188.    Plaintiff Rob Ray Reid is an individual who owns the property located at 12505 River Bend, Austin, Texas 78732.

189.	Plaintiff Michael Angelo Renna, Sr. brings this suit as the trustee of the R & R Trust. The R & R Trust owns the property located at 3900 Island Knoll Drive, Austin, Texas 78746.

190.	Plaintiff Duane Lewis Rhodes is an individual who owns the property located at 6708 Leprechaun Drive, Austin, Texas 78746.

191.	Plaintiffs David R. Richard and Ethel A. Richard are individuals who own the property located at 4625 Rockcliff Road, Austin, Texas 78746.

192.	Plaintiffs Grant L. Richards and Karen L. Kofod are individuals who own the property located at 6919 Greenshores Drive #1, Austin, Texas 78730.

193.	Plaintiffs Kip A. Richmond and Melinda E. Richmond bring this suit as the trustees of the Richmond Family Trust. The Richmond Family Trust owns the property located at 2303 Manana Street, Austin, Texas 78730.

194.	Plaintiff Ridge Harbor Properties, LLC owns the property located at 2329 Westlake Drive #6, Austin, Texas 78746.

195.	Plaintiffs Scott D. Ritchie and Margot F. Ritchie are individuals who own the property located at 3000 Rivercrest Drive, Austin, Texas 78746.

196.	Plaintiff Wesley G. Ritchie is an individual who owns the property located at 2201 Island Wood Road, Austin, Texas 78733.

197.	Plaintiff Linda Maxine Roberts is an individual who owns the properties located at 3951 and 3955 Westlake Drive, Austin, Texas 78746.

198.	Plaintiffs Robert L. Romano and Catherine E. Romano are individuals who own the property located at 3006 Rivercrest Drive, Austin, Texas 78746.

199.    Plaintiffs James C. Root and Ann H. Root are individuals who own the property located at 3304 Rivercrest Drive, Austin, Texas 78746.

200.    Plaintiffs Mo Sadeghieh and Shahla Sadeghieh are individuals who own the property located at 3104 Rivercrest Drive, Austin, Texas 78746.

201.    Plaintiffs Kent A. Savage and Cheryl K. Savage are individuals who own the property located at 1500 Rockcliff Road, Austin, Texas 78746.

202.    Plaintiff Eugene P. Schoch III is an individual who owns the property located at 1907 Manana Street, Austin, Texas 78730.

203.    Plaintiff Christopher Schultz is an individual who owns the property located at 12515 River Bend, Austin, Texas 78732.

204.    Plaintiffs Michael Jordan Scott and Laila Peabody Scott are individuals who own the property located at 6700 Troll Haven, Austin, Texas 78746.

205.    Plaintiffs T. Glenn Scott and Ellen Brougher Scott are individuals who own the property located at 1711 Manana Street, Austin, Texas 78730.

206.    Plaintiffs Sterling Bradford Shearer and Nancy Thompson Shearer are individuals who own the property located at 1909 Lake Shore Drive, Austin, Texas 78746.

207.    Plaintiffs Michael Sheehan and Emily Sheehan are individuals who own the property located at 2304 Island Wood Road, Austin, Texas 78733.

208.    Plaintiffs Frank Simmen and Melinda M. Simmen are individuals who own the property located at 6704 Pixie Cove, Austin, Texas 78746.

209.    Plaintiffs Jason E. Simmons and Nanette A. Simmons are individuals who own the property located at 12417 River Bend #15, Austin Texas 78732.

210. Plaintiffs Kurt M. Simons and Cheryl R. Simons are individuals who own the property located at 6707 Leprechaun Drive, Austin, Texas 78746.

211. Plaintiff Lyall Thomas Sinclair is an individual who owns the properties located at 2702 and 3007 Rivercrest Drive, Austin, Texas 78746.

212. Plaintiffs Alan Smith and Michelle Smith are individuals who own the property located at 1504 Rockcliff Road, Austin, Texas 78746.

213. Plaintiff Lisa Snider is an individual who owns the property located at 10810 River Terrace, Austin, Texas 78733.

214. Plaintiff Robert Sonheim is an individual who owns the property located at 12417 River Bend #16, Austin Texas 78732.

215. Plaintiffs Charles R. Spangler Jr. and Toni R. Spangler are individuals who own the property located at 12417 River Bend #8, Austin, Texas 78732.

216. Plaintiffs Glenn E. Staats and Marsha Staats are individuals who own the property located at 2311 Island Wood Road, Austin, Texas 78733.

217. Plaintiffs William N. Stassen and Deborah M. O'Connell are individuals who own the property located at 4109 Lakeplace Lane, Austin, Texas 78746.

218. Plaintiff Cody Stavig is an individual who owns the property located at 2904 Rivercrest Drive, Austin, Texas 78746.

219. Plaintiffs Glenn N. Steinle Jr., Alfred A. Steinle, Jane Steinle Andrus, and Don W. Steinle are individuals who own the property located at 3100 Edgewater Drive, Austin, Texas 78733.

220. Plaintiffs Richard T. Swisher and Gail M. Swisher bring this suit as the trustees of the R & G Swisher Family Trust. The R & G Swisher Family Trust owns the property located at 3601 Robbins Road, Austin, Texas 78730.

221. Plaintiffs Robert W. Talbot and Donna J. Talbot are individuals who own the properties located at 1719 Channel Road, Austin, Texas 78746 and 4825 Laguna Lane, Austin, Texas 78746.

222. Plaintiffs Mark Tate and Naomi Tate are individuals who own the property located at 1506 Rockcliff Road, Austin Texas 78746.

223. Plaintiffs Charles A. Taylor and Georgeann Cissel bring this suit as the trustees of Taylor-Cissel Revocable Trust. Taylor-Cissel Revocable Trust owns the property located at 916 Cypress Grove Drive, Austin, Texas 78732.

224. Plaintiffs Edward D. Thomas and Gail R. Thomas are individuals who own the property located at 2315 Island Wood Road, Austin, Texas 78733.

225. Plaintiffs Ted G. Thomson and Carol L. Thomson are individuals who own the property located at 3008 Edgewater Drive, Austin, Texas 78733.

226. Plaintiffs Thomas D. Toles and Kandy B Toles are individuals who own the property located at 4701 Laguna Lane, Austin, Texas 78746.

227. Plaintiffs Todd T. Trenasty and Lori K. Trenasty are individuals who own the property located at 2009 Manana Street, Austin, Texas 78730.

228. Plaintiff Jill H. Turlington is an individual who owns the property located at 2015 River Hills Road, Austin, Texas 78733.

229.     Plaintiff Michael Goldman brings this suit as the trustee of the TXLARC Beach Trust. The TXLARC Beach Trust owns the property located at 1610 Rockcliff Road, Austin, Texas 78746.

230.     Plaintiffs Jim Upshaw and Caren Upshaw are individuals who own the property located at 1715 Channel Road, Austin, Texas 78746.

231.     Plaintiffs Joe F. Vaughan Jr. and Elma Vaughan are individuals who own the property located at 6901 Greenshores Drive #2, Austin, Texas 78730.

232.     Plaintiffs Menno Vermeulen and Christina Vermeulen are individuals who own the properties located at 3320 Westlake Drive, Austin, Texas 78746 and 4301 Michaels Cove, Austin, Texas 78746.

233.     Plaintiff Matthew T. Voss brings this suit as the trustee of the Matthew T. Voss Revocable Trust. The Matthew T. Voss Revocable Trust owns the property located at 1754 Channel Road, Austin, Texas 78746.

234.     Plaintiffs Richard L. Wambold and Patricia B. Wambold are individuals who own the property located at 2906 Rivercrest Drive, Austin, Texas 78746.

235.     Plaintiff Teri Niven Waters is an individual who owns the property located at 1510 Rockcliff Road, Austin, Texas 78746.

236.     Plaintiff James D. Welch is an individual who owns the property located at 2401 Westlake Drive, Austin, Texas 78746.

237.     Plaintiff West Lake Beach, L.L.C. owns the property located at 2509 Westlake Drive, Austin, Texas 78746.

238.    Plaintiffs Jennifer G. West and Thomas M. West Jr. are individuals who own the property located at 3108 Rivercrest Drive, Austin, Texas 78746.

239.    Plaintiffs James M. Wiersema and Jo Ann M. Wiersema are individuals who own the property located at 1602 Rockcliff Road, Austin, Texas 78746.

240.    Plaintiffs Austin Travis Williams and John Terrell Williams are individuals who own the property located at 1742 Channel Road, Austin, Texas 78746.

241.    Plaintiffs Robert O. Williams and Jill L. Williams are individuals who own the property located at 2305 Westlake Drive #A, Austin, Texas 78746.

242.    Plaintiff Windler Family Partners LTD owns the property located at 3010 Edgewater Drive, Austin, Texas 78733.

243.    Plaintiff Wombwell Land Holdings LP owns the property located at 1507 Manana Street, Austin, Texas 78730.

244.    Plaintiffs Brian C. Wood and Dena Wood bring this suit as the trustees of the Elkhorn-South Trust. The Elkhorn-South Trust owns the property located at 1410 Rockcliff Drive, Austin, Texas 78746.

245.    Plaintiff Janet Zand brings this suit as the trustee of the Janet Zand Revocable Trust. The Janet Zand Revocable Trust owns the property located at 1600 Rockcliff Road, Austin, Texas 78746.

246.    Plaintiffs Robert S. Zlotnik and Marcie C. Zlotnik are individuals who own the properties located at 10610 and 10706 River Terrace, Austin, Texas 78733.

247.    Plaintiff Diana Zuniga is an individual who owns the properties located at 3012 and 3014 Edgewater Drive, Austin, Texas 78733.

248.     Defendant City of Austin is a home-rule municipality located in Travis County, Texas. Under Texas Civil Practice and Remedies Code §17.024(b), the City of Austin may be served with process by serving Mayor Steve Adler at 301 West 2nd Street, Austin, Texas 78701 or wherever he may be found. Service is requested at this time.

249.     Defendant Austin Community College is a junior college district located in Central Texas. Under Texas Civil Practice and Remedies Code §17.024(c), ACC may be served with process by serving its Board Chair Dr. Nan McRaven. Dr. McRaven may be served at 5930 Middle Fiskville Road, Austin, Texas 78752 or wherever she may be found. Service is requested at this time.

**FACTUAL ALLEGATIONS**

250.     All preceding paragraphs are expressly incorporated by reference.

**A.      The 1891 Texas Legislature extended the City's boundaries—annexing to the City certain land along the Colorado River for limited purposes.**

251.     On December 27, 1839, the Third Texas Congress incorporated the City of Austin and defined its city limits via a special law that became the City's first charter. Act of Dec. 27, 1839, 3rd Tex. Congress. R.S., No. 86.

252.     On information and belief, from 1839 to 1891, the City's boundaries remained the same: 640 acres located on the north bank of the Colorado River known as the "Town Tract."

253.     In 1890, Austin began constructing its first dam on the Colorado River, a 60-foot high, 1,200-foot-long granite dam just west of the City. Bob Garcia-Buckalew, *The Legacy of Our Early Dams: How an Electrified Early Austin Helped Shape Our Lives Today*, KVUE ABC (July 26, 2019, 10:23 PM), https://www.kvue.com/article/news/history/the-

legacy-of-our-local-dams-how-an-electrified-early-austin-helped-shaped-our-lives-today/269-fe7cb13a-b0a5-4a80-8448-2fba2ade2377.[1]

254. To ensure that the City had the jurisdiction and power it needed to construct and maintain the dam and regulate the Colorado River itself, the 1891 Legislature reincorporated the City, granted it a new charter, and "extend[ed] its boundaries" westward along the Colorado River, "10 varas" (approximately 30 feet) from the ordinary water level on each bank of the river. Act of April 3, 1891, 22nd R.S., ch. 22, §2, 1981 Tex. Gen. Laws 101, 101-02 (1891 Act). The Legislature indicated that the Colorado River's ordinary water level should be marked "after completion of the dam now being constructed[.]" *Id.*

255. The image below illustrates how the Legislature extended the City's boundaries along the Colorado River in 1891:

---

[1] Upon completion in 1893, the early dam provided hydropower for electric generators inside a powerhouse located on the river's bank, making Austin one of the first electrified cities in the country. *Id.* Austin's electrical system—powered by the first Austin Dam—was so innovative that it made the cover of *Scientific American* magazine and powered a network of electric street cars and the still-famous "moonlight towers" acquired by the City in 1895. H.H. Childers, *The Austin Dam*, Scientific American, Aug. 8, 1896, at 1; Bruce Hunt, The Rise and Fall of the Austin Dam, Not Even Past, *available at* https://notevenpast.org/rise-and-fall-austin-dam/. The first dam collapsed during heavy spring flooding in 1900, killing dozens of people and leaving the City deeply in debt and without electricity for months. A second dam built on top of the first collapsed in 1915. The Tom Miller Dam, built between 1938 and 1940, stands on the same site as the first two dams and impounds what is known today as Lake Austin.



**1891**  **CITY TERRITORY ALONG LAKE**

■ Not taxed;
limited or no services

CITY OF AUSTIN TERRITORY
DEFINED BY LEGISLATURE

**10** varas
(~30 ft)

256.    This special law allowed the City to regulate the banks of the Colorado River for health, safety, and navigation purposes. Even so, the City did not tax property in the 10-vara strips, a state of affairs recognized today as "limited-purpose jurisdiction."

257.    In 1913, the Texas State Legislature enacted a law corroborating the concepts at play in the 1891 Act's provisions extending the boundaries of the City of Austin to include the 10-vara strips. The 1913 law authorized cities "situated along or upon navigable streams" and "acting under special charters[]" to extend their boundaries to include land on both sides of a stream for up to 20 miles from the "ordinary boundaries of said city." Act approved March 17, 1913, 33rd R.S., ch. 25, §1, 1913 Tex. Gen. Laws 47, 47-48.

258.    Under the 1913 law, cities had the power to regulate navigation and wharfage in the strips annexed along navigable streams, but they did not have the right to tax property in the annexed strips. *Id.*

259. Consistent with the understanding that the 10-vara strips were only added to the City for limited purposes, the City of Austin regulated the land along the banks of the Colorado River (later Lake Austin) but did not impose ad valorem taxation or provide meaningful municipal services to it from 1891 to 2019.

**B. The City altered its boundaries to follow the 504.9′ contour line and subsequently annexed 500 feet landward for limited purposes.**

260. In 1928, the City of Austin amended its charter via election and redefined its boundaries, altering the description of the strips of land along the Colorado River from "10 varas from the high-water mark" to the "504.9′ above mean sea level contour line" on both banks (the 504.9′ contour line). Austin, Tex., Charter, art. I, §2 (1928).

261. The City continued to regulate the strips of land between the normal lake level (492.8′) and the 504.9′ contour line, but it never taxed those strips of land (the shoreline properties).

262. The City did not perform a survey in 1928 to define the location of the 504.9′ contour line—and still has never done such a survey.

263. On May 6, 1982, the City of Austin annexed via ordinance "500 feet landward" from the 504.9-contour line for the limited purposes of "planning and zoning" and "sanitation and health protection." Austin, Tex., Ordinance 820506-D (May 6, 1982) (the 1982 Ordinance). As the 1982 Ordinance confirmed, the City had "no power to levy any tax for municipal purposes on either the property or the inhabitants of territory annexed for limited purposes." *Id.*

**C. In 1986, the City passed an ordinance declaring the limited-purpose-jurisdiction status of the shoreline properties.**

264.    In 1985, the Auditor's Office of the City of Austin, without City Council approval, listed the shoreline properties on the City's tax appraisal roll for the first time.

265.    It had been common knowledge for nearly a century that the shoreline properties were not taxable. For example, in 1909, the Texas Legislature granted the City of Austin a new charter. Act of February 3, 1909, 31st R.S., ch. 2, 1909 Tex. Gen. Laws 8.[2] The 1909 Act expressly required the city tax assessor to "assess or cause to be assessed all taxable property" (*id.* art. VII, §14), but at no point before 1985 did the City of Austin attempt to assess the properties located within the 10-vara strips of land—precisely because the land was not "taxable property."

266.    Confessing an "error" had been made and wanting to resolve the "substantial confusion" regarding the legal status of the shoreline properties, the City passed an ordinance in 1986 "declaring the limited purpose jurisdiction status of all shoreline properties lying along Lake Austin below the 504.9′ mean sea level contour line." Austin, Tex., Ordinance 860130-A (Jan. 30, 1986) (the 1986 Ordinance).

267.    The City of Austin knew what that meant. Under the City's own charter in 1986, "limited purpose" jurisdiction meant that the land was within the city limits and could be regulated for specific purposes like planning and zoning or sanitation and health protection. But property within the City's limited-purpose jurisdiction—specifically

---

[2] During the 1909 Legislative Session, the 1909 charter was amended a little over a month after its enactment. Act of March 24, 1909, 31st R.S., ch. 90, 1909 Tex. Gen. Laws 634.

including the shoreline properties—did not receive full municipal services and could not be taxed.

268. "Full purpose" jurisdiction (also called "all purpose" jurisdiction), by contrast, included land that received full city services and could be taxed.

269. The 1986 Ordinance was enacted to "clarify the status of the Lake Austin shoreline properties below the respective north shore and south shore 504.9′ contour lines" to "avoid any future confusion over the respective rights and duties of Lake Austin shoreline residents or the respective rights and duties of the City of Austin." *Id.*

270. Under the 1986 Ordinance, the City promised to apply the "same tax collection policy which prevailed with regard to said tracts from the 1891 through the 1984 tax years"—namely, that the shoreline properties are not subject to taxation by the City of Austin—"until all City services are available for said tracts." *Id.* Only *after* all City services were made available could the City Council decide, "by resolution," whether to "order[] taxes to be collected on all or part of the value" of the shoreline properties. *Id.*

271. The City instructed the Chief Appraiser of the Travis County Appraisal District to move the Travis County Appraisal Review Board "to correct the City's tax appraisal roll by written order and notify the Travis County Assessor of this action." *Id.*

272. The City also recognized the difficulty in using the 504.9′ contour line to define the City's boundaries "because of the inability to exactly locate said contour line without doing an on-the-ground survey[.]" *Id.*

273. While the strips of land between Lake Austin's 492.8′ conservation level and the 504.9′ contour line can range from a few feet along the bluffs to hundreds of feet on the

flatter land along the shoreline, the conceptual image below illustrates the status of shoreline properties and the surrounding area, as reaffirmed by the 1986 Ordinance:



274.    The next year, the 1987 Legislature statutorily confirmed the distinction between limited-purpose jurisdiction (some regulation but no taxation without full city services) and full-purpose jurisdiction (full regulation and taxation with full services required). Act of May 30, 1987, 70th Leg., R.S., ch. 1077, 1987 Tex. Gen. Laws 3674 (codified in Chapter 43 of the Texas Local Government Code).

**D.      From 1986 to 2019, the City recognized the limited-jurisdiction status of the shoreline properties.**

275.    Between 1891 and 2019, it was undisputed that the shoreline properties were not subject to City property taxes.

276.     In the first decade of the 2000s, the City recognized that it was still not providing full municipal services to the shoreline properties—and that the City could not tax those properties until it provided them with full services.

277.     In 2006, the City attempted a full-purpose annexation of land abutting some of the shoreline properties on Lake Austin Peninsula, an area along Lake Austin north of the City of West Lake Hills and west of the City of Austin. Recognizing its duty to provide full municipal services to the shoreline properties before taxing them, the City included some adjacent shoreline properties in the service plan for the Lake Austin Peninsula annexation. But because that annexation failed, the adjacent shoreline properties did not become part of the City's full-purpose jurisdiction, were never provided full municipal services, and thus were not taxed.

278.     In 2018, the City of Austin considered what it would cost to provide the shoreline properties with full municipal services but ultimately decided not to extend full services to the shoreline properties, as doing so would be too expensive and too difficult.

279.     For example, in February 2018, Austin Water—the water utility service for the City—estimated that it would take five to seven years to construct the water and wastewater facilities necessary to serve just a subset of the shoreline properties (those located on Manana Street). And the cost to provide water and wastewater services to just the Manana Street properties would range from "$11 million to $17 million plus" depending on the specific construction plan. Even assuming 100% cash funding of such a project, Austin Water's director concluded that the "cost to serve numbers crush the

revenues," meaning the City could never expect to recover the cost to build the water and wastewater facilities.

280. Thus, as of June 2019—by the City's own snapshot analysis—of the 401 properties the City believed (at the time) to be within the shoreline-properties category:

    a. 345 properties do not receive water service from the City;
    b. 348 properties do not receive wastewater service from the City;
    c. all properties receive limited service from the Austin Fire Department;
    d. 313 properties do not receive trash or recycling services from the City; and
    e. 50 properties do not even receive electricity service from the City.

**E.      In June 2019, the City repealed the 1986 Ordinance, a unilateral and illegal annexation of the shoreline properties for full purposes.**

281. In 2019, after an *Austin American-Statesman* newspaper article decried the "lakefront tax break" for "mansions on Lake Austin," the City Council abruptly sought to tax the shoreline properties for the first time. Rather than properly annex the properties for full purposes in accordance with state law and extend full municipal services to the shoreline properties, the City attempted to erase its recognition of the shoreline properties' limited-jurisdiction status by repealing the 1986 Ordinance. Pretending the shoreline properties had always been in the City's full-purpose jurisdiction and only enjoyed a tax exemption, the City sought to avoid the procedural requirements of both state law and its own charter, which the City knew it could not satisfy.

282. In other words, the City of Austin created—out of whole cloth—a story that shoreline properties were already in its full-purpose jurisdiction so it could tax the properties, violating not only the City Charter, state law, and federal law but also the promise City Council made in the 1986 Ordinance that it would not tax the shoreline properties "until all City services are available for said tracts."

283.    Item 87 on the Austin City Council's June 20, 2019 consent agenda was described as: "Approve an ordinance repealing Ordinance No. 860130-A, relating to certain properties located along Lake Austin." The topic description included no mention of annexing the shoreline properties to the City's full-purpose jurisdiction or taxing the properties.

284.    Even though Item 87 was pulled from the consent agenda, Austin City Council Members had already "commit[ed]"—as of June 15, 2019—to repeal the 1986 Ordinance "unanimously." Philip Jankowski, *City Council Commits to Repeal Lake Austin Tax Exemption*, AUSTIN AMERICAN STATESMAN, Jun. 15, 2019.

285.    Before the June 20, 2019 City Council meeting, the City provided no notice to the Homeowners of the shoreline properties that it was annexing their properties for full purposes and would impose City property taxes on their properties for the first time in the nearly 130 years that their land had been a part of the City.

286.    Further, the City did not publish notice (in a newspaper of general circulation or anywhere else) that the City Council meeting would be a public hearing on the full-purpose annexation of the shoreline properties.

287.    During the June 20, 2019 City Council meeting, the City Council heard brief comments from a few members of the public—as a perfunctory activity.

288.    The City Council subsequently approved an ordinance repealing the 1986 Ordinance. Austin, Tex., Ordinance 20190620-087 (June 20, 2019) (Repeal Ordinance). As part of the "findings" in the Repeal Ordinance, the City Council stated for the first time that "the properties identified in the [1986 Ordinance] are within the City's full

purpose jurisdiction, "have been at all times since the 1891 Act of Incorporation," and "are subject to taxation by the City because they are within the City limits." *Id.*

289. The Repeal Ordinance went into effect on July 1, 2019.

290. The image below illustrates the alleged status of shoreline properties and the surrounding area following passage of the Repeal Ordinance:



291. In contrast with the City's treatment of the shoreline properties, the City routinely annexes property to its full-purpose jurisdiction from its limited-purpose jurisdiction via ordinance. When the City does so, it confirms that (1) notice of the public hearing(s) concerning the full-purpose annexation was published in a newspaper of general circulation in the City, in the area to be annexed, and on the City of Austin website; (2) at least one public hearing on the full-purpose annexation was held; (3) all persons at the public hearing had an opportunity to heard; (4) the full-purpose annexation serves the interests of current and future residents of the City; and (5) all state law

procedural requirements were met. *See* Austin, Tex., Ordinance 20200604-052 (June 4, 2020); Austin, Tex., Ordinance 20191031-024 (Oct. 31, 2019). After stating that those procedural requirements are satisfied, the City typically describes the territory—using a legal description—that is "within the limited purpose jurisdiction" and is thereby "annexed into the City for full purposes[.]" *Id.* But the City did none of those things in the Repeal Ordinance.

292.     Notwithstanding the City's illegal attempt to annex the shoreline properties and consistent with the City's historical limited-purpose-jurisdiction treatment of the area, the City still does not provide the shoreline properties with municipal services comparable with the services it provides to properties within its full-purpose jurisdiction.

293.     The City's municipal services for its full-purpose areas include construction and maintenance of water and wastewater facilities (the most costly and important services), municipal police protection, fire protection, emergency medical services, and trash collection. The City has repeatedly admitted that providing these typical municipal services to the shoreline properties is physically difficult and economically infeasible.

294.     Also disturbing, the City does not even have a clear record of which properties fall under the umbrella of the shoreline properties and properties it now views as within its full-purpose jurisdiction. That is because "of the inability to exactly locate said contour lines without doing an on-the-ground survey"—which, on information and belief, the City has yet to do. Austin, Tex., Ordinance 860130-A (Jan. 30, 1986).

295.     When the City passed the Repeal Ordinance, it claimed that it was imposing property tax on approximately 400 properties. But news reports suggest as many as 1,004

properties might fall within the contours that define the shoreline properties and thus now might be within City's new full-purpose jurisdiction and be taxed by the City and/or ACC for the first time. Philip Jankowski, *After Statesman Reports, Hundreds of Lakefront Properties Avoiding Taxes Now May Have to Pay Up*, AUSTIN AMERICAN STATESMAN, Jan. 16, 2020.

296.    On information and belief, no survey to locate the precise location of the 504.9′ contour line has ever been done, nor has the City determined where this line falls on each of the Homeowners' properties.

**F.    The City and ACC seek to assert full-purpose jurisdiction over the Homeowners like the Harwards without following the proper processes and without furnishing full municipal services—including water, wastewater, and fire-hydrant services.**

297.    In Texas, local taxing units—the local government entities—determine their boundaries. When a municipality alters its boundaries, it notifies the applicable county appraisal district. TEX. TAX CODE §6.07. County appraisal districts appraise the market value of the property within each county as of January 1st of each year. *Id.* §§21.02, 25.01. Each county appraisal district is charged with preparing the appraisal records for the county, which include the appraised value and the relevant taxing units for each property in the county. *Id.* §25.02.

298.    An appraisal review board—a board of local citizens appointed by the county administrative judge—decides disagreements between property owners and the county appraisal district. *Id.* §25.22. The appraisal records, as revised by the appraisal review board, become the appraisal roll for the county. *Id.* §25.24. After the chief appraiser for

the district certifies the appraisal roll to the taxing units, the taxing units approve the annual tax rate and notify the county tax assessor-collector of the rate. *Id.* §§26.01, 26.05.

299.    Only after the tax rate is approved are taxes assessed. *Id.* §§26.05; 26.09. Using the appraisal roll, the county tax assessor-collector calculates assessed values, determines the tax due for each property, creates the tax roll, prepares the property tax bills, and mails the bills to property owners. *Id.* §§26.09, 31.01. The Travis County Tax Assessor-Collector also collects all the property tax for the county and transfers the appropriate collected amount to each government entity.

300.    It is undisputed that the Homeowners previously paid taxes to the Travis County Tax Assessor-Collector for taxing entities such as Travis County, the Austin Independent School District, the Eanes Independent School District, the Lake Travis Independent School District, and the Leander Independent School District.

301.    But after the City passed the Repeal Ordinance, the City and ACC notified Travis Central Appraisal District (TCAD) that their taxing-unit boundaries had changed to include the shoreline properties. *See* TEX. TAX CODE §6.07. For the 2020 tax year, TCAD included the City and—for those properties located in the Lake Travis Independent

School District or Eanes Independent School District[3]—ACC as taxing entities for the first time on the appraisal records for the shoreline properties.[4]

302.    For retirees like Judy and Brent Harward, the addition of the City as a taxing unit came out of nowhere.

303.    In 1991, the Harwards bought a piece of property on the shores of Lake Austin. The Harwards had greatly enjoyed spending time in Austin when Judy had attended a program at University of Texas for nurse educators, and the couple decided that they wanted to retire here.

304.    In preparation for the move, Brent retired from teaching art and vocational studies to high schoolers, a position he had held for 20 years. Judy accepted two positions in Austin, one teaching nursing at Austin Community College and one caring for patients at St. David's Hospital. Once settled in Austin, Brent worked installing countertops and eventually took a role teaching others how to work with countertop materials.

305.    When the Harwards first bought their property in 1991, they lived in the boat shed—the only building on the property—as they worked toward building their dream home. Three years later, they finally moved into the home they enjoy today.

---

[3] Homeowners of the shoreline properties located in Austin Independent School District or Leander Independent School District were already part of the ACC district and previously paid taxes to ACC. Those shoreline properties that the City now claims are subject to taxation but are in the Lake Travis Independent School District or Eanes Independent School District are being added to the City of Austin taxing area and thus the ACC tax district for the first time.

[4] It is unclear if Travis Central Appraisal District included the City and, where applicable, ACC on the appraisal records for all the shoreline properties or merely a subset of those properties.

306.    Brent retired from the countertop business in 2006, and Judy retired from nursing in 2011. The couple lives on Brent's modest teacher's pension, Social Security payments, and an annuity from Teachers Insurance and Annuity Association.

307.    When they retired, the Harwards did not plan for a nearly $7,000 additional annual tax bill from the City. And, to make matters worse, the Harwards still do not receive municipal services and must bear the costs of providing most of these services themselves.

308.    For instance, the Harwards do not receive water or wastewater from the City. Instead, the Harwards installed a $7,500 water pump and filtration system to draw water from Lake Austin, a system that costs approximately $2,000 a year to maintain. But even that system does not guarantee the Harwards' water is safe to drink, so the Harwards purchase bottled water for drinking and cooking.

309.    The Harwards, like most of the Homeowners, also installed a septic system when they built their home.

310.    And because the Harwards do not receive trash services from the City, the Harwards pay a private company to collect their garbage.

311.    Further, the Harwards know they cannot depend on the City for fire, police, or emergency medical services. They have witnessed neighbors lose property from the long delay in the arrival of any fire service. And the Harwards and their neighbors know better than to count on emergency medical services when life is on the line. Ambulances either never arrive or response times are far too long. Instead, the Homeowners rely on family, friends, or each other to get to the hospital in an emergency.

312.     Like most Homeowners in this suit, the Harwards timely protested TCAD's inclusion of the City and, where applicable, ACC as taxing units for their property to the Travis County Appraisal Review Board (ARB) under §41.41(a)(4) of the Texas Tax Code.

313.     The ARB subsequently held hearings on the protests but denied the Homeowners' protests that the properties were not within the taxing jurisdiction of the City and, where applicable, ACC. Indeed, the ARB refused to consider whether the City and, where applicable, ACC were proper taxing units for the shoreline properties, reasoning that it did not have the jurisdiction to determine whether the shoreline properties are properly part of the City's full-purpose jurisdiction. The Homeowners who timely protested the inclusion of the City and (where applicable) ACC on their tax bills, like the Harwards, then timely appealed the ARB's decision to Texas district court pursuant to Chapter 42 of the Texas Tax Code.

314.     The Homeowners cannot sue the City or ACC—or seek redress for their actions—in the state-court proceeding. Section 42.031(b) of the Texas Tax Code specifically prohibits a taxing unit from "interven[ing] in or in any other manner be[ing] made a party, whether as defendant or otherwise, to an appeal of an order of the appraisal review board determining a taxpayer protest." TEX. TAX CODE §42.031(b).

315.     The Travis County Tax Assessor-Collector has begun collecting tax payments from the Homeowners on behalf of the City and ACC, and many of the Homeowners have paid their 2020 tax bills to the City and ACC under protest.

316.     Here, the Homeowners seek declaratory, injunctive, and mandamus relief for the City's and ACC's violations of the Homeowners' rights under the United States

Constitution and under Texas law in changing the jurisdictional status of the shoreline properties and in notifying other local government entities that the shoreline properties are within the City's and ACC's taxing-unit boundaries.

**CLAIMS**

317.    The Homeowners incorporate by reference the allegations in all preceding paragraphs.

318.    There are important limits on the power of a municipality to change the annexation status of land. By ignoring those limits, the Defendants violated the Homeowners' rights under local, state, and federal law.

*A.     State law and the City Charter narrowly curtail the City's annexation power.*

319.    Before 1912, the Texas Legislature created virtually all cities and municipal corporations. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 26 (Tex. 2003). "At that time, Texas permitted annexation under only two circumstances: (i) pursuant to the general law, usually by majority vote of the annexed residents, or (ii) by special act of the Legislature granting or amending a specific city's charter." *Id.*

320.    With the Home Rule Amendment in 1912, Texas home-rule cities acquired the power to change their own charters and acquired the authority to annex property without the owners' consent. *Id.* at 27. The result was an explosion of unbridled annexation in the State. *Id.*

321.    Reacting to widespread annexation wars between cities, the Legislature passed the Municipal Annexation Act in 1963 "to curb the virtually unlimited power of home rule municipalities to unilaterally annex territory." *Id.* Under the Municipal Annexation Act,

a municipality could still annex unilaterally but had to follow certain procedures—namely notice and a hearing—and could only annex property within its extraterritorial jurisdiction. Act of April 29, 1963, Municipal Annexation Act, 58th Leg., R.S., ch. 160, §§6-7, 1963 Tex. Gen. Laws 447, 449-50.

322.    For the next 24 years, municipal annexation authority remained largely unencumbered beyond the constraints imposed in 1963. The Legislature tinkered with annexation but did not make sweeping changes. Thus, in 1986, a municipality still had authority to unilaterally annex land for either limited purposes or full purposes via ordinance—and could alter those statuses from one to another. A city needed only to meet a few state statutory requirements such as proper notice and a public hearing—plus any additional requirements found in its own charter or ordinances.

323.    Starting in the 1987 legislative session, the Legislature began passing bills to curb unilateral annexations. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 1078, 1987 Tex. Gen. Laws 3674; *see also* Act of Aug. 12, 2017, 85th Leg., 1st C.S., ch. 6, 2017 Tex. Gen. Laws 4504. The Legislature also mandated that a "municipality may not impose a tax on any property in an area annexed for limited purposes or on any resident of the area for activity occurring in the area." Act of May 30, 1987, 70th Leg., R.S., ch. 1078, §5, 1987 Tex. Gen. Laws 3674, 3678.

324.    Most recently, in 2019, the Legislature revised a home-rule municipality's annexation authority so that the vast majority of annexations require a municipality to first obtain consent from the property owners of the land the municipality seeks to annex through one of three consent procedures: (1) through the request of each property owner

whose land would be annexed; (2) by petition of voters—and, if the voters do not own more than 50% of the land in the area, property owners—if the area has a population of less than 200; or (3) by election of voters—and, if the voters do not own more than 50% of the land in the area, by petition of property owners—if the area has a population of at least 200. Act of May 24, 2019, 86th Leg., R.S., ch. 155 (codified Chapter 43 of Texas Local Government Code). The 2019 legislation curtailing a home-rule municipality's annexation authority took effect on May 24, 2019 (about a month before the City issued the Repeal Ordinance).

325.     A few narrow exceptions to the consent requirement remain. Only after satisfying specific statutorily-prescribed requirements—such as completing a service plan, holding two public hearings, and providing notice—may a municipality annex an enclave, industrial district, a municipally-owned area, a navigable stream, a strategic-partnership area, a municipally-owned reservoir, a municipally-owned airport, or a road and right-of-way as defined in statute. TEX. LOC. GOV'T CODE Subchapter C-1.

326.     A home-rule municipality has no authority to annex property to its full-purpose jurisdiction without satisfying the annexation procedures of Chapter 43 of the Texas Local Government Code—either the applicable consent procedure or the special procedure for an area exempted from the consent requirement.

327.     In addition to those state-law requirements, Austin's City Charter further restricts the City's annexation authority and treatment of both all-purpose and limited-purpose areas.

328.    The "Annexation for All Purposes" section of the City Charter requires the City Council to provide an opportunity "for all interested persons" to be heard at a public hearing "[b]efore the city may institute annexation or disannexation proceedings." Austin, Tex., City Charter, art. I, §6. The Charter also mandates that prior notice of such public hearings be published "in a newspaper of general circulation in the city and in the territory proposed to be annexed." *Id.*

329.    Further, the City Charter requires that inhabitants of property annexed for all purposes "shall be entitled to all rights and privileges of all the citizens." *Id.*

330.    In areas annexed for limited purposes, the City "has no power to levy any tax for municipal purposes on either the property or the inhabitants of [the] territory[.]" *Id.* art. I, §7.

B.    *In 1891, the Legislature annexed the shoreline properties to the City for limited purposes.*

331.    The 1891 Act annexed the shoreline properties, then defined by 10 varas from the Colorado River, to the City of Austin for limited purposes such as regulating navigation, wharfage, and dam construction on the Colorado River.

332.    Because the shoreline properties were only added to the City's limited-purpose jurisdiction, the shoreline properties were not added to the City's tax rolls and were not taxed by the City. In fact, the city tax assessor did not even assess the shoreline properties for 94 years despite a duty to assess all taxable property. *See* Act of February 3, 1909, 31st R.S., ch. 2, art. VII, §14, 1909 Tex. Gen. Laws 8, 22. That is because the shoreline properties were not property that was taxable by the City.

*C.*      *In 1986, the City reaffirmed that the shoreline properties were located within its limited-purpose jurisdiction.*

333.      In 1985, the City of Austin Auditor's office—for the first time since the shoreline properties had been annexed for limited-purposes in 1891—mistakenly added the shoreline properties to the City's tax rolls. The City Council confessed that it was an "error" to add the shoreline properties, and it passed the 1986 Ordinance "declaring the limited purpose jurisdiction status of all shoreline properties lying along Lake Austin below the 504.9′ mean sea level contour line." Austin, Tex., Ordinance 860130-A (Jan. 30, 1986).

334.      The 1986 Ordinance—a legislative act—clarified that the shoreline properties were within the City's limited-purpose jurisdiction, not within its full-purpose jurisdiction.

*D.*      *In 2019, the City illegally annexed the shoreline properties to its full-purpose jurisdiction via the Repeal Ordinance.*

335.      From 1891 to 2019, the shoreline properties were within the City of Austin's limited-purpose jurisdiction.

336.      In June 2019, the City Council passed the Repeal Ordinance, which purports to repeal the 1986 Ordinance. The Repeal Ordinance states, for the first time in history, that "the properties identified in the [1986 Ordinance] are within the City's Full Purpose jurisdiction" and "have been at all times" since 1891. Austin, Tex., Ordinance 20190620-087 (June 20, 2019).

337.      The City Council also declared, for the first time, that the shoreline properties "are subject to taxation by the City because they are within the City limits."

338.     Through the Repeal Ordinance, the City illegally annexed the shoreline properties

to its full-purpose jurisdiction through a sui generis, arbitrary process—a process it has

never used in annexing other limited-purpose-jurisdiction properties to full-purpose

jurisdiction—rather following the procedures required by Chapter 43 of the Texas Local

Government Code, the City Charter, and its own internal procedures. The effective date

of that annexation was July 1, 2019.

E.      *The City Council had no authority to unilaterally annex the shoreline properties for full purposes—and its attempt to retroactively change the shoreline properties' legal status, to avoid current law, violates the Homeowners' rights to due process and equal protection.*

339.     The City had no authority to annex the shoreline properties for full purposes

outside of the statutory scheme set out in Chapter 43 of the Texas Local Government

Code. The City did not obtain the consent of either the owners of the shoreline properties

or the voters in the area. The City neither identified an exemption from the applicable

consent procedures nor followed the exempted-from-consent procedures.

340.     The City Council also had no authority to annex the shoreline properties area for

all purposes outside of the procedures described in Article I, §6 of the City Charter.

341.     Additionally and independently, the City and ACC exceeded their authority by

notifying TCAD that the shoreline properties are within their taxing-unit boundaries

based on the Repeal Ordinance in violation of Texas Local Government Code §43.130(c)

and Article I, §7 of the City Charter.

342.     The City's attempt to change the shoreline properties' legal status retroactively—

to avoid complying with current state and local law—violates the Homeowners' rights to

due process and equal protection and other constitutional and statutory rights, as described more fully below.

343. Because the shoreline properties were not properly annexed to the City's full-purpose (all-purpose) jurisdiction, the shoreline properties remain in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners, and cannot be taxed under Chapter 43 of the Texas Local Government Code or the City Charter.

344. Most of the Homeowners bringing this suit timely protested TCAD's inclusion of the City and ACC as taxing units and subsequently exhausted their administrative remedies. Even so, exhaustion of administrative remedies is not a prerequisite where, as here, there is a challenge to the underlying ordinance, constitutional issues are involved, the issues presented are purely questions of law, and the City purportedly acted outside of its statutory powers.

**Count 1:**
**Retroactive Change in the Properties' Status Violated**
**Plaintiffs' Fourteenth Amendment Right to Due Process**
**of Law (Brought Under 42 U.S.C. §1983)**

345. All preceding paragraphs are expressly incorporated by reference.

346. The Fourteenth Amendment of the United States Constitution guarantees that a person may not be deprived of certain substantive rights—life, liberty, and property—without due process of law. In addition to setting procedural minima for deprivations of life, liberty, or property, the Due Process Clause limits arbitrary or retroactive government actions without regard to the procedures employed to effect them.

347. The Repeal Ordinance purports to change, retroactively, the status of the Homeowners' properties from limited-purpose jurisdiction to full-purpose jurisdiction.

348. The City relies on the Repeal Ordinance—and its purported retroactive status change in the Homeowners' properties—as an illegal attempt to avoid complying with current local and state laws and procedures for converting a property's status to full-purpose jurisdiction. In short, the City retroactively changed the status of the shoreline properties (from limited-purpose jurisdiction to full-purpose jurisdiction) to avoid complying with the law as it stands today.

349. The Homeowners have a property interest in their properties and in the legal status of their properties. The Homeowners also have liberty interests in the procedures for changing the legal status of their properties.

350. The Homeowners purchased their properties and/or continued to own their properties, in part, based on (1) the limited-purpose-jurisdiction status of their properties, (2) the City's promise not to tax their properties unless and until the City provided full municipal services to them, (3) reasonable and legitimate expectations, including distinct investment-backed expectations, that the City would follow settled and established legal processes before changing the legal status of their properties.

351. The pre-existing limited-purpose-jurisdiction status of the Homeowners' properties made the properties more valuable.

352. The Homeowners have vested rights in their properties and in the legal status of their properties—and such status cannot be changed except as would be consistent with local, state, and federal law as it existed at the time of the Repeal Ordinance.

353. By attempting to retroactively change the Homeowners' properties from limited-purpose jurisdiction to full-purpose jurisdiction, the City arbitrarily abused its power to deprive the Homeowners' of constitutionally protected property rights.

354. The deprivation of the Homeowners' property interests is not rationally related to a legitimate government interest. There is no rational relationship between retroactively changing the legal status of the Homeowners' properties to avoid complying with current state and local laws and procedures and a conceivable legitimate objective. Further, retroactive laws such as the Repeal Ordinance are subject to a heightened standard of review, which the City cannot meet.

355. The City's efforts to retroactively change the status of the Homeowners' properties is a violation of the Fourteenth Amendment committed by a person acting under the color of state law. A "person" within the meaning of 28 U.S.C. §1983, the City enacted an official policy when the Austin City Council unanimously passed the Repeal Ordinance.

356. The Repeal Ordinance was passed with deliberate indifference to the risk of violating the Homeowners' due-process rights. Although the City knew that the 1986 Ordinance declared the shoreline properties to be within its limited-purpose jurisdiction and that state and local law define how and when limited-jurisdiction property can be converted to full-purpose jurisdiction, the City nevertheless ignored the constraints on its authority. After all, the City knew that it could not satisfy the law's requirements. Violation of the Homeowners' due process rights was a highly predicable consequence of disregarding state and local law.

**Count 2:**
**Converting Plaintiffs' Properties to Full-Purpose Jurisdiction**
**Violated Plaintiffs' Fourteenth Amendment Guarantee**
**of Procedural Due Process (Brought Under 42 U.S.C. §1983)**

357.    All preceding paragraphs are expressly incorporated by reference.

358.    Chapter 43 of the Texas Local Government Code requires a municipality to follow certain annexation procedures—either the applicable consent procedure or the special procedure for an area exempted from the consent requirement.

359.    Further, as explained above, the City Charter mandates that specific notice and hearing prerequisites be satisfied in annexing property for "all" purposes.

360.    To fulfill the procedural requirements of the Chapter 43 and the City Charter, the City has established processes for converting properties to its full-purpose jurisdiction.

361.    The Homeowners have property and liberty interests in the processes mandated by state and local law—and usually afforded by the City. If a person is to be deprived of such interests, the government must afford due process, which requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before a decision affecting an individual's liberty interests or property rights.

362.    Here, the City did not follow Chapter 43's procedures or fulfill the notice and hearing requirements of the City Charter in annexing the shoreline properties for all or full purposes. Nor did the City follow its established processes.

363.    As previously described, in contrast with the City's treatment of the shoreline properties, the City routinely annexes property to its full-purpose jurisdiction from its limited-purpose jurisdiction via ordinance. When the City does so, it confirms that (1) notice of the public hearings concerning the full-purpose annexation was published in

a newspaper of general circulation in the City, in the area to be annexed, and on the City of Austin website; (2) at least one public hearing on the full-purpose annexation was held; (3) all persons at the public hearing had an opportunity to heard; (4) the full-purpose annexation serves the interests of current and future residents of the City; and (5) all state law procedural requirements were met. *See, e.g.*, Austin, Tex., Ordinance 20200604-052 (June 4, 2020); Austin, Tex., Ordinance 20191031-024 (Oct. 31, 2019). After stating that those procedural requirements are satisfied, the City typically describes the territory—using a legal description—that is "within the limited purpose jurisdiction" and is thereby "annexed into the City for full purposes[.]" *Id.* But the City did none of those things in the Repeal Ordinance. By ignoring its typical process for converting property from its limited-purpose jurisdiction to its full-purpose jurisdiction—a process that satisfies the requirements of Chapter 43 and the City Charter—the City deprived the Homeowners of liberty and property interests without due process.

364.     Further, in addition to denying the Homeowners of the same procedural protections that the City ordinarily affords other residents, the City (and, as applicable, ACC) did not provide *any* of the minimum requirements of due process in changing their jurisdictional status.

365.     The City and, where applicable, ACC did not provide the Homeowners of notice that was reasonably calculated to apprise the Homeowners of the potential change to the jurisdictional status of their properties and the purported duty to pay new taxes without the provision of full municipal services.

366. The City and ACC did not provide the Homeowners with any meaningful opportunity to be heard on the City/ACC jurisdictional issue.

367. Nor did the City or ACC provide the Homeowners with a forum in which they could raise the issue and have it adjudicated.

368. While, on occasion, due process can be satisfied after deprivation of a property interest, the only post-deprivation process is the tax-protest procedure. But the ARB categorically denied the Homeowners' taxing-unit protests, explaining to Homeowners that the issue was something to take up with the City (and, as applicable, ACC) and could not be considered in the ARB process.

369. The City and ACC thus failed to provide notice, an opportunity to be heard, or a forum where their actions and the validity of the altered jurisdictional status could be considered and adjudicated, violating all three basic norms of procedural fairness.

**Count 3:**
**The Fourteenth Amendment's Due-Process Requirement**
**of Fair Notice and Prohibition on Vague Laws Require**
**a Survey Before Assessing Taxes on the Homeowners' Properties,**
**Brought Under 42 U.S.C. §1983**

370. All preceding paragraphs are expressly incorporated by reference.

371. On information and belief, the City and ACC have never performed a survey marking the 492.8′ and 504.9′ contour lines, which define the areas newly determined to be in the City's full-purpose jurisdiction, nor has the City or ACC determined where this line falls on each of the Homeowners' properties.

372. The Homeowners thus do not have fair notice about whether—or how much of—their property is now allegedly in the City's full-purpose jurisdiction.

373.    Despite the uncertainty about what land is actually within the purported boundaries of City and ACC's taxing authority, the City and ACC notified TCAD that their boundaries had been altered to include the shoreline properties and the Travis County Tax Assessor-Collector will seek to impose penalties on those who do not pay the full amount of the tax claimed.

374.    The taxing units—here the City and ACC—have the burden to prove that all the land over which they seek to exercise full-purpose jurisdiction is properly situated within the relevant geographical boundaries.

375.    The City and ACC cannot prove which shoreline properties—or which portion of such properties—fall below the 504. 9′ contour line.

376.    Because the City and ACC cannot prove the shoreline properties are located within the City's full-purpose boundaries, the City and (as applicable) ACC cannot exercise full-purpose jurisdiction over the Homeowners' properties.

377.    Without a proper survey to delineate the area between the 492.8′ and 504.9′ contour lines, the City's and ACC's exercise of full-purpose jurisdiction over shoreline properties is arbitrary and without fair notice—and is thus unconstitutionally vague.

**Count 4:**
**Converting the Homeowners' Properties to Full-Purpose**
**Jurisdiction Without Following Procedures Accorded to**
**Other Similarly Situated Residents Denied Homeowners**
**the Equal Protection of the Laws Guaranteed by the**
**Fourteenth Amendment, Brought Under 42 U.S.C. §1983**

378.    All preceding paragraphs are expressly incorporated by reference.

379.    As described above, the City has provided specific processes to others when converting property to full-purpose jurisdiction.

380.    Yet the City did not provide those established processes to the Homeowners.

381.    The failure to provide equal protection of the law, including the procedures granted to others, violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

382.    Depriving the Homeowners of the City's established processes is not rationally related to a legitimate government interest. There is no rational relationship between providing the Homeowners with a different (and constitutionally deficient) process than the City provides to other property owners and a conceivable legitimate objective.

383.    The Repeal Ordinance was passed with deliberate indifference to the risk of violating the Homeowners' rights to equal protection under the law. Casting aside the procedures it usually follows when it annexes any other property from limited-purpose to full-purpose jurisdiction, the City shut its eyes to the highly predictable consequence that it would violate the Homeowners' rights to equal protection.

**Count 5:**
**Including the Homeowners' Properties Within the City's Full-Purpose Jurisdiction Without Providing Full City Services Denies Homeowners the Equal Protection of the Laws Under the Fourteenth Amendment (Brought Under 42 U.S.C. §1983)**

384.    All preceding paragraphs are expressly incorporated by reference.

385.    The City has unilaterally and retroactively converted the shoreline properties to the City's full-purpose jurisdiction, yet the Homeowners of the shoreline properties do not receive municipal services comparable to those received by owners of other properties in the City's full-purpose jurisdiction. Put another way, the City is charging the

Homeowners with full municipal taxes and yet does not provide municipal services comparable to the services it provides others who pay full municipal taxes.

386.     Further, the City does not impose municipal taxes on other similarly situated property owners, who own real property within City limits that receives similar or identical levels of municipal services as the shoreline properties.

387.     This disparate treatment violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

388.     The unequal treatment of the Homeowners compared to other property owners— i.e., to those who pay full municipal taxes and receive full municipal services, or to those who receive identical or similar levels of municipal services as the Homeowners and yet pay no municipal taxes—is not rationally related to a legitimate government interest. There is no rational relationship between treating the Homeowners differently from other property owners and a conceivable legitimate objective.

389.     The Repeal Ordinance was passed with deliberate indifference to the risk of violating the Homeowners' rights to equal protection under the law. Ignoring the fact that the City had promised the Homeowners that they would not be taxed until full municipal services were available and the requirements of state law, the City disregarded the highly predictable consequence that it would violate the Homeowners' rights to equal protection.

**Count 6 (in the alternative):**
**Takings Claim Under the Takings Clause**
**of the United States Constitution**
**(Brought Under 42 U.S.C. §1983)**

390.     All preceding paragraphs are expressly incorporated by reference.

391. The Takings Clause of the Fifth Amendment (incorporated against the City through the Fourteenth Amendment) provides, "[N]or shall private property be taken for public use, without just compensation."

392. The Homeowners own the shoreline properties and have a property interest in their land's limited-purpose-jurisdiction status.

393. The City has taken away the shoreline properties' limited-purpose-jurisdiction status for public use: namely, raising taxes. And in doing so, the City has attempted to change the Homeowners' status retroactively.

394. The economic impact of this taking is significant. It substantially interferes with the Homeowners' reasonable investment-backed expectations and upsets settled transactions involving their properties. Further, the nature of the City's action is unusual, as it purports to deprive the Homeowners of their limited-purpose-jurisdiction status retroactively. The City has not provided just compensation for the taking of the Homeowners' property.

395. The Homeowners raise this claim in the alternative to their claims that seek to invalidate the City's illegal alteration of the jurisdictional status of the shoreline properties. If the Court does not invalidate the City's retroactive change to the shoreline properties' status, then the Homeowners are entitled to just compensation as required under the U.S. Constitution for the taking.

**Count 7 (in the alternative):**
**Takings Claim Under the Takings Clause**
**of the Texas Constitution, Art. 1, §17**

396. All preceding paragraphs are expressly incorporated by reference.

397.     The Takings Clause of the Texas Constitution provides that "[N]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."

398.     The Homeowners own the shoreline properties and have a property interest in their land's limited-purpose-jurisdiction status.

399.     The City has taken away the shoreline properties' limited-purpose-jurisdiction status for public use: namely, raising taxes. And in doing so, the City has attempted to change the Homeowners' status retroactively.

400.     The economic impact of this taking is significant. It substantially interferes with the Homeowners' reasonable investment-backed expectations and upsets settled transactions involving their properties. Further, the nature of the City's action is unusual, as it purports to deprive the Homeowners of their limited-purpose-jurisdiction status retroactively. The City has not provided just compensation for the taking of the Homeowners' property.

401.     The Homeowners raise this claim in the alternative to their claims that seek to invalidate the City's illegal alteration of the jurisdictional status of the shoreline properties. If the Court does not invalidate the City's retroactive change to the shoreline properties' status, then the Homeowners are entitled to just compensation as required under the Texas Constitution for the taking.

**Count 8:**
**Violation of the Ex Post Facto Clause**
**of Article I, §10 of the U.S. Constitution**
**(Brought Under 42 U.S.C. §1983)**

402.     All preceding paragraphs are expressly incorporated by reference.

403. Article I, §10 of the U.S. Constitution provides, in relevant part, "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."

404. The U.S. Supreme Court has applied this Ex Post Facto Clause only in the criminal context. But at least one current member of the Supreme Court has asserted that the Ex Post Facto Clause may also invalidate a civil law that (1) retroactively changes the status of property and yet (2) passes muster under current Takings Clause jurisprudence. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 538-39 (1998) (Thomas, J., concurring).

405. Here, the City does not have a compelling interest for retroactively changing the limited-purpose-jurisdiction status of the shoreline properties.

406. The Repeal Ordinance violates the Ex Post Facto Clause of Article I, §10 of the U.S. Constitution.

**Count 9:**
**Request for Declaratory Judgment**
**Under 28 U.S.C. §2201 for Violations of**
**Chapter 43, Texas Local Government Code**

407. All preceding paragraphs are expressly incorporated by reference.

408. To exercise full-purpose jurisdiction over real property, the City must annex the property for full purposes in compliance with the rules set out in Chapter 43 of the Local Government Code. Indeed, the City routinely annexes property for full purposes when it seeks to change property from its limited-purpose jurisdiction to its full-purpose jurisdiction. And, when it does so, it complies with Chapter 43's requirements.

409. There are different paths a municipality may follow under Chapter 43 to annex property for full purposes. The City followed none of them.

410. Under the exempted-from-consent annexation procedures, the City did not meet the following statutory requirements:

   a. The City did not "conduct two public hearings at which persons interested in the annexation [were] given the opportunity to be heard" before "the 20th day before the date of the institution of the [annexation] proceedings." TEX. LOC. GOV'T CODE §43.063(a).

   b. The City did not "post notice of the hearings on the municipality's Internet website[.]" *Id.* §43.063(c)(1).

   c. The City did not "publish notice of the hearings in a newspaper of general circulation[.]" *Id.* §43.063(c)(2).

   d. The City failed to "direct its planning department or other appropriate municipal department to prepare a service plan that provides for the extension of full municipal services to the area to be annexed." *Id.* §43.065(a).

   e. The City did not "complete[] before the annexation" a service plan that "include[s] a program under which the municipality will provide full municipal services in the annexed area no later than 2–1/2 years after the effective date of the annexation" or a schedule "for the provision of full municipal services not later than 4–1/2 years after the effective date of the annexation." *Id.* §§43.065(b), 43.056(b).

   f. The City did not provide the shoreline properties with services such as fire protection, fire hydrants, operation and maintenance of water and wastewater facilities, operation and maintenance of roads and streets, or operation and maintenance of parks and playgrounds on the effective date of annexation, July 1, 2019. *Id.* §43.056(b).

   g. The City failed to make the "proposed service plan available for public inspection" or "explain [it] to the inhabitants of the area at public hearings[.]" *Id.* §§43.065(b), 43.056(j).

411. Nor did the City follow any of the statutory requirements for consent annexations (Subchapter C-3, Subchapter C-4, or Subchapter C-5).

412. Because the Repeal Ordinance did not properly annex the shoreline properties for full purposes under any of Chapter 43's allowable procedures, the shoreline properties

remain in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners.

413. Under Texas Local Government Code §43.130(c), the City "may not impose a tax on any property in an area annexed for limited purposes or any resident of the area for an activity occurring in the area."

414. Nevertheless, the Repeal Ordinance finds that the shoreline properties "are subject to taxation by the City because they are within City limits[.]" The Repeal Ordinance therefore violates §43.130(c).

415. Because the Repeal Ordinance violates multiple provisions of Chapter 43 of the Local Government Code, the shoreline properties remain within the City's limited-purpose jurisdiction (subject to disannexation requests from affected property owners) and are not taxable by the City or (as applicable) ACC.

**Count 10:**
**Request for Declaratory Judgment**
**Under 28 U.S.C. §2201 for**
**Violations of the Austin City Charter**

416. All preceding paragraphs are expressly incorporated by reference.

417. The "Annexation for All Purposes" section of the City Charter governs full-purpose annexations. It requires the City Council to provide an opportunity "for all interested persons" to be heard at a public hearing "[b]efore the city may institute annexation or disannexation proceedings." Austin, Tex., City Charter, art. I, §6.

418. The Charter also mandates that prior notice of such public hearings must be published "in accordance with state law in a newspaper of general circulation in the city and in the territory proposed to be annexed." *Id.*

419. For multiple reasons, the City did not satisfy these notice and opportunity-to-be-heard requirements before instituting full-purpose-annexation proceedings and passing the Repeal Ordinance.

420. First, the City did not provide the notice required in Article I, §6 of the City Charter.

421. Second, while City Council allowed a handful of citizens to speak about the proposed Repeal Ordinance at the City Council meeting, the City Council did not "provide an opportunity for all interested persons" to be heard at a public hearing.

422. Third, the City instituted full-purpose annexation proceedings before providing *any* of the affected landowners with notice and an opportunity to be heard. The City Council originally placed the Repeal Ordinance on the consent agenda—instituting full-purpose annexation proceedings—before any public hearing on the matter. Thus, the City had already "institute[d] annexation . . . proceedings" before it allowed *any* affected landowners to speak at the public hearing, violating Article I, §6 of the City Charter.

423. Indeed, public statements by Austin City Council Members confirm that the Repeal Ordinance—and thus full-purpose annexation of the shoreline properties—was already a done deal before the June 20, 2019 City Council meeting.

424. Only after the Repeal Ordinance was pulled from the consent agenda did the City Council provide *some* interested persons the opportunity to speak before the Council passed the Repeal Ordinance.

425. Besides the notice and hearing protections, the City Charter also requires that inhabitants of property annexed for all purposes "shall be entitled to all rights and privileges of all the citizens." *Id.*

426. But the owners of the shoreline properties do not receive all rights and privileges of other Austin citizens. The City does not provide full municipal services to the shoreline properties and has not made any plans to do so. The Repeal Ordinance thus violates the City Charter's guarantee that inhabitants of areas annexed for all purposes are entitled to all rights and privileges of all the citizens, including the rights or privileges of receiving full municipal services.

427. Because the Repeal Ordinance did not properly annex the shoreline properties for full purposes, the shoreline properties remain in the City's limited-purpose jurisdiction.

428. And under the City Charter, the City "has no power to levy any tax for municipal purposes on either the property or the inhabitants of territory annexed for limited purpose or purposes[.]" Austin, Tex., City Charter, art. I, §7.

429. Nevertheless, the Repeal Ordinance finds that the shoreline properties "are subject to taxation by the City because they are within City limits[.]"

430. Because the Repeal Ordinance violates multiple provisions of the Austin City Charter, the shoreline properties remain within the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners.

**Count 11:**
**Request for Declaratory Judgment Under**
**28 U.S.C. §2201 for Violation of the Texas Constitution's**
**Prohibition of Retroactive Laws, Article I, §16**

431. All preceding paragraphs are expressly incorporated by reference.

432.    The Texas Constitution prohibits the making of any retroactive law. TEX. CONST. art. I, §16.

433.    The 1891 Act added the shoreline properties (as 10-vara strips) to the City's limited-purpose jurisdiction. For 94 years, the City treated the properties as within its limited-purpose jurisdiction and did not assess the properties for City taxes.

434.    In 1986, to fix an "error" and "clarify the status" of the shoreline properties, the City "declar[ed] the limited purpose jurisdiction status of all shoreline properties lying along Lake Austin below the 504.9′ mean sea level contour line[.]" Austin, Tex., Ordinance 860130-A (Jan. 30, 1986).

435.    For another 33 years, the shoreline properties unquestionably remained in the City's limited-purpose jurisdiction and did not receive full municipal services or pay City taxes.

436.    But, under the Repeal Ordinance in 2019, the City—for the first time—declared that the shoreline properties "are within the City's full-purpose jurisdiction and have been at all times since the 1891 Act[.]"

437.    The Repeal Ordinance is an attempt to retroactively change the status of the shoreline properties in violation of the Texas Constitution.

438.    The Homeowners have vested property rights in their homes and expected tax payments for those properties.

439.    The longtime limited-purpose-jurisdiction status of the shoreline properties and the 1986 Ordinance's reconfirmation of that status settled the Homeowners' expectations that the properties were within the City's limited-purpose jurisdiction. Any subsequent

full-purpose annexation needs to satisfy state law and City requirements—and also needs to comply with Texas's constitutional prohibition against retroactive laws.

440.     The Homeowners bought and developed their properties based on those expectations. Many invested in costly water-processing and septic systems. Others live on a fixed income and considered their expected tax bill in making careful financial decisions.

441.     The City did not have and does not have a compelling public interest to overcome the heavy presumption against retroactive laws. Instead of retroactively changing the status of the shoreline properties, the City could have attempted to annex the properties for full purposes through the procedures prescribed by Texas Local Government Code Chapter 43 and the City Charter—but failed to do so.

442.     Because the Repeal Ordinance violates the Texas Constitution's prohibition against retroactive laws, the shoreline properties remain in the City's limited-purpose jurisdiction (subject to disannexation requests from affected property owners).

**Count 12:**
**Request for Declaratory Judgment Under**
**28 U.S.C. §2201 for Violations of the Texas**
**Constitution's Due Process Clause, Article I, §19**

443.     All preceding paragraphs are expressly incorporated by reference.

444.     Article I, §19 of the Texas Constitution guarantees that an individual may not be deprived of certain substantive rights—life, liberty, and property—without constitutionally adequate procedures. If an individual is to be deprived of a vested property right or liberty interest, the government must afford an appropriate and meaningful opportunity to be heard to comport with procedural due process. Due process

requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before a decision affecting an individual's property rights.

445.     Changing the shoreline properties' status from limited-purpose to full-purpose jurisdiction constitutes a deprivation of the Homeowners' property rights. Collection of a tax likewise constitutes a deprivation of property.

446.     A governmental entity must afford property owners due process of law before depriving them of a property interest.

447.     The City violated the Homeowners' rights to due process in multiple ways, each constituting a constitutional violation.

448.     First, the City retroactively changed the legal status of the shoreline properties (from limited-purpose jurisdiction to full-purpose jurisdiction) to avoid complying with the law as it stands today.

449.     Second, the City failed to provide notice, an opportunity to be heard, or a forum where its actions could be considered and adjudicated, violating three basic norms of procedural fairness.

450.     Third, the City did not follow the processes prescribed by Chapter 43 of the Texas Local Government Code and the City Charter in altering the jurisdictional status of the shoreline properties. Here, the Homeowners' vested due-process rights are defined by Chapter 43 of the Texas Local Government Code, the City Charter, and/or the City's regular procedures for annexing limited-jurisdiction property to its full-purpose jurisdiction. The City did not comply with the procedures set out in Chapter 43, the City Charter, or its regular procedures for annexing limited-jurisdiction property to its full-

purpose jurisdiction in enacting the Repeal Ordinance and therefore violated the Homeowners' constitutional due-process rights.

451. Because the Repeal Ordinance is constitutionally invalid, the shoreline properties remain in the City's limited-purpose jurisdiction (subject to disannexation requests from affected property owners) and cannot be taxed.

**Count 13:**
**Request for Declaratory Judgment Under**
**28 U.S.C. §2201 for Violations of the Texas**
**Constitution's Equal Rights Clause, Article I, §3**

452. All preceding paragraphs are expressly incorporated by reference.

453. Article I, §3 of the Texas Constitution guarantees individuals the right to equal treatment under the law.

454. In annexing the shoreline properties to the City's full-purpose jurisdiction, the City did not follow its regular procedures when annexing limited-jurisdiction property to its full-purpose jurisdiction. Instead, it provided substantially less process to the Homeowners than it provides to other property owners whose land is initially in the City's limited-purpose jurisdiction. The City had no rational basis for that different treatment and thus violated the Homeowners' rights to equal treatment under the law.

455. Additionally, the Homeowners' rights to equal treatment under the law are being violated both (1) because the City is not providing the Homeowners full municipal services comparable to the services provided to other property owners in the City's full-purpose jurisdiction and (2) because the City does not tax many other residents who receive the same or similar level of municipal services as the Homeowners. There is no rational basis for treating the Homeowners' properties differently from other full-

purpose-jurisdiction properties, nor is there any rational basis for treating the Homeowners differently from property owners whose land receives the same or similar levels of municipal services as the shoreline properties.

456. Like other full-purpose-jurisdiction properties, the City must provide the Homeowners with "all rights and privileges of all the citizens," which includes full municipal services—including the most valuable and important services of water, wastewater, and fire hydrants.

457. The City's failure to provide the Homeowners with the same privileges it affords to other property owners in its full-purpose jurisdiction—and treating the Homeowners differently from residents receiving identical or similar levels of municipal services—violates the Homeowners' equal-protection rights.

**Count 14:**
**Violation of the Texas Open Meetings Act,**
**Texas Government Code §551.041**

458. All preceding paragraphs are expressly incorporated by reference.

459. The Texas Open Meetings Act requires that governmental bodies give written notice of the subject of each meeting held. TEX. GOV'T CODE §551.041.

460. When a meeting topic is of special interest to the public, the description of that topic must be more detailed and must provide reasonable specificity of the subject matter to be considered.

461. Full-purpose annexation is a topic of special interest to the public. A meeting about full-purpose annexation of property must provide notice to the public through a detailed topic description.

462. Additionally, the imposition of new taxes on real property—taxes that had never before been imposed on that property—is a topic of special interest to the public that requires a detailed description.

463. The Austin City Council is a governmental body to which the requirements of the Texas Open Meetings Act apply.

464. The Austin City Council held a meeting on June 20, 2019. Item 87 on the City Council's consent agenda for that meeting was described as follows: "Approve an ordinance repealing Ordinance No. 860130-A, relating to certain properties located along Lake Austin."

465. Item 87's description did not provide adequate notice of the topic slated for discussion.

466. At the June 20, 2019 meeting, the City Council intended to annex the shoreline properties to City's full-purpose jurisdiction. Full-purpose annexation of these properties does not appear in the meeting's subject description.

467. Also significant, at the June 20, 2019 meeting, the City Council intended to declare the shoreline properties subject to taxation by the City for the first time in the over 128 years the properties had been considered part of the City (albeit within the City's limited-purpose jurisdiction). There is no mention of imposing new taxes in the subject of Item 87.

468. Because the City violated the Texas Open Meetings Act in not adequately describing the subject of the topic slated for discussion, the Homeowners request mandamus or injunctive relief to prevent or reverse the violation.

## Count 15:
## Request for Declaratory Judgment Under
## 28 U.S.C. §2201 That the Shoreline Properties
## Remain in The City's Limited-Purpose Jurisdiction,
## Pursuant to Texas Local Government Code §43.130
## and Article I, §7 of the Austin City Charter

469.     All preceding paragraphs are expressly incorporated by reference.

470.     Even if the 1986 Ordinance were valid (which it is not), its repeal did not actually change the shoreline properties' limited-purpose jurisdiction status. For nearly 100 years before the 1986 Ordinance was enacted, the City did not tax or provide services to the shoreline properties because they were in the City's limited-purpose jurisdiction.

471.     To change the shoreline properties' annexation status from limited-purpose to full-purpose, the City must comply with the procedures prescribed by state law and the Austin City Charter. It has not done so.

472.     The shoreline properties therefore remain in the City's limited-purpose jurisdiction, subject to the disannexation remedies available due to the City's failure to timely annex the properties for full purposes in accordance with the requirements of Subchapter F of Chapter 43 of the Texas Local Government Code.

## Count 16:
## Petition for Disannexation,
## Texas Local Government Code §43.128(b)

473.     All preceding paragraphs are expressly incorporated by reference.

474.     The shoreline properties were annexed for limited purposes. In purporting to repeal the 1986 Ordinance and seeking to tax the shoreline properties for the first time, the City attempted to convert the shoreline properties to its full-purpose jurisdiction—a de facto annexation for full purposes.

475.    To the extent the shoreline properties were annexed for full-purposes by the Repeal Ordinance (which the Homeowners do not concede the City successfully achieved), the City did not satisfy the steps prescribed by §43.127(b) of the Texas Local Government Code. Specifically, the City failed to (1) develop a land-use and intensity plan as the basis for services and capital improvements projects planning for the shoreline properties; (2) include the shoreline properties in the City's long-range financial forecast and the City's program to identify future capital improvement projects; or (3) include projects intended to serve the shoreline properties with identified funding sources in its adopted capital improvements program.

476.    Because the City failed to take the steps required by §43.127(b), the Homeowners, who are affected persons, petition the Court to compel disannexation of the shoreline properties under Texas Local Government Code §43.128(b).

**PRAYER FOR RELIEF**

477.    For these reasons, the Homeowners respectfully request a final judgment that includes:

    a.   an order granting the Homeowners' petition to disannex the shoreline properties under Texas Local Government Code §43.128(b);

    b.   a declaration that the Repeal Ordinance is invalid because it violates Chapter 43 of the Texas Local Government Code;

    c.   a declaration that the Repeal Ordinance is invalid because it violates the Austin City Charter;

    d.   a declaration that, regardless of the validity of the Repeal Ordinance, the shoreline properties are located within the City's limited-purpose jurisdiction, subject to disannexation requests by affected landowners;

e. an injunction directing the City to comply with Chapter 43 of the Local Government Code when seeking to annex the Homeowners' properties for full purposes;

f. a declaration that the Repeal Ordinance is invalid because it violates Article I, §16 of the Texas Constitution;

g. a declaration that the Repeal Ordinance is invalid because it violates the Fourteenth Amendment of the United States Constitution;

h. a declaration that the Repeal Ordinance is invalid because it violates Article I, §19 of the Texas Constitution;

i. a declaration that the City's and ACC's notices to TCAD that the shoreline properties are within their taxing-unit boundaries are invalid;

j. a writ of mandamus directing the City to instruct TCAD and the Travis County Assessor-Collector that the shoreline properties are in the City's limited-purpose jurisdiction;

k. an injunction ordering the City and, where applicable, ACC (or an entity acting on their behalf) to provide the Homeowners' properties with the same municipal services as provided to other properties in the City's full-purpose jurisdiction;

l. a writ of mandamus directing the City to disannex the shoreline properties pursuant to Texas Local Government Code §43.128(b);

m. an award of reasonable and necessary attorneys' fees and costs incurred under 42 U.S.C. §1988;

n. an award of costs and reasonable and necessary attorneys' fees in enforcing Chapter 43 of the Texas Local Government Code (pursuant to §43.908(c))

o. an award of the costs of litigation and reasonable attorneys' fees under Texas Government Code §551.142;

p. an award of reasonable and necessary attorneys' fees and costs incurred in this action as available under Texas law or other applicable law; and/or

q. an award of any other legal or equitable relief to which Homeowners may show themselves to be justly entitled.

Respectfully submitted,

  /s/ Christopher S. Johns
Christopher S. Johns
Texas Bar No. 24044849
Christen Mason Hebert
Texas Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West
Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com

Ernest A. Young
Texas Bar No. 00791972
3208 Fox Terrace Drive
Apex, North Carolina 27502
919-360-7718
young@law.duke.edu

Lorri Michel
Texas Bar No. 14009460
MICHEL | GRAY |ROGERS LLP
812 West 11th Street, Suite 301
Austin, Texas 78701
512-477-0200
512-477-6636 fax
lorri@michelgray.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2021, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system which will send notification

of such filing to the following:

Hannah M. Vahl
Texas Bar No. 24082377
CITY OF AUSTIN LAW DEPARTMENT
P. O. Box 1546
Austin, Texas 78167
512-974-2346
512-974-1311 fax
hannah.vahl@austintexas.gov

*Counsel for Defendant City of Austin*

Cobby Caputo
Texas Bar No. 03784650
Gunnar Peterson Seaquist
Texas Bar No. 24043358
BICKERSTAFF HEATH DELGADO ACOSTA LLP
3711 S. Mopac Expressway
Building One
Suite 300
Austin, Texas 78746
512-472-8021
512-320-5638 fax
ccaputo@bickerstaff.com
gseaquist@bickerstaff.com

*Counsel for Defendant Austin Community College*

 /s/ Christopher S. Johns
Christopher S. Johns