# EXHIBIT A

1/20/2021 9:05 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-20-006182
Nancy Rodriguez

CAUSE NO. D-1-GN-20-006182

| | | |
|---|---|---|
| BRENT R. and JANET LYNN BAILEY et al., | § § § § § | In the 53rd District Court |
| *Plaintiffs,* | | |
| | | |
| v. | § § § | of |
| | | |
| TRAVIS CENTRAL APPRAISAL DISTRICT, | § § | |
| *Defendant.* | § | Travis County, Texas |

## PLAINTIFFS' EIGHTH AMENDED PETITION

Plaintiffs are property owners (the Homeowners) whose property is located along what was once the shoreline of the Colorado River and is now Lake Austin (the shoreline properties). The Homeowners file this eighth amended petition against Travis Central Appraisal District (TCAD).

For well over a century, the Homeowners have not received municipal services from the City of Austin (the City) and have not paid taxes to the City because their properties were in the City's limited-purpose jurisdiction. As a result, the Homeowners secured other ways to get the services that their homes need. For example, some Homeowners installed and maintain expensive water filtration and storage systems to draw water from wells or from Lake Austin. Others became part of and pay special utility districts whose sole purpose is to provide them with water services. Most also maintain their own septic systems and pay private companies to collect their trash.

Nearly all the Homeowners know better than to rely on the City for emergency services. Because the shoreline properties are clustered along rugged terrain—many miles from the City center—police, fire, and emergency medical services from the City are ineffective or simply unavailable.

But in 2019, the City unilaterally announced—for the first time in the nearly 130 years the shoreline properties have been part of the City—that the shoreline properties are in the City's full-purpose jurisdiction and are thus required to pay taxes to the City. The result has left the Homeowners facing a huge additional tax bill while still paying for basic services from other sources.

To annex property from a city's limited-purpose jurisdiction to its full-purpose jurisdiction, a city is required to follow the procedures prescribed by state law and its own charter. The City of Austin is well acquainted with those procedures—and it routinely follows them when it annexes limited-jurisdiction property to its full-purpose jurisdiction.

But the City ignored those procedures in its eagerness to grab additional tax revenue from what it inaccurately framed as tax-exempt mansions on Lake Austin. Here, the City did not follow the procedures prescribed under state law and its own charter for a simple reason: the City knew that it could not satisfy the law's requirements. So instead of following the law, the City attempted to rewrite history by repealing the City's 1986 recognition of the shoreline properties' limited-jurisdiction status and claiming (falsely) that the shoreline properties had always been within the City's full-purpose jurisdiction. Put another way, the City attempted to change the shoreline properties' status retroactively so that it would not have to comply with the law as it stands today. In doing

so, the City flouted state law, disregarded the limits placed on its authority by the Austin City Charter, and trampled the Homeowners' constitutional rights. Pretending the shoreline properties have always been in the City's full-purpose jurisdiction, the City and (in special circumstances) Austin Community College (ACC) seek to collect taxes from the shoreline properties for the first time—and have instructed TCAD to impose the taxes even though the City and (for some properties) ACC are not proper taxing units for the shoreline properties. TCAD followed the City's instructions and refused to consider the Homeowners objections to TCAD's inclusion of the City as a taxing authority for the shoreline properties. Likewise, during the formal hearing on the Homeowners' protests, the Travis County Appraisal Review Board (ARB) refused to consider the Homeowners' protests.

Here, the Homeowners appeal TCAD's wrongful inclusion of the City and (where applicable) ACC as taxing authorities for their properties and ask the Court to determine, under §§41.41(a)(6) and 42.01 of the Texas Tax Code, that the City and (where appliable) ACC are not proper taxing authorities for their properties.

## I.    DISCOVERY-CONTROL PLAN

1.    The Homeowners intend to conduct discovery in this case, in consultation with Defendant and with the Court's approval, under Level 3 pursuant to Texas Rule of Civil Procedure 190.4. The Homeowners affirmatively plead that this suit is not governed by the expedited-actions process in the Texas Rule of Civil Procedure 169 because the Homeowners seek nonmonetary relief.

## II.    RELIEF

2.      The Homeowners seek primarily nonmonetary relief. They only seek monetary relief in the form of court costs and attorneys' fees recoverable by statute and, for those Homeowners who pay their disputed 2020 taxes, a refund of their 2020 tax payments plus 9.5% interest pursuant to §42.43 of the Texas Tax Code.

## III.    PARTIES

3.      Plaintiffs Brent R. and Janet Lynn Bailey are individuals who own the property located at 1609 Manana Street, Austin, Texas 78730.

4.      Plaintiffs Robert G. and Roberta H. Anding are individuals who own the property located at 2105 Big Horn Drive, Austin, Texas 78734.

5.      Plaintiff Sara G. Austin is an individual who owns the property located at 2706 Edgewater Drive, Austin, Texas 78733.

6.      Plaintiffs Robert W. and Valerie A. Beardsley are individuals who own the property located at 2405 Westlake Drive, Austin, Texas 78746.

7.      Plaintiffs Al and Joan Bentley are individuals who own the property located at 3306 Rivercrest Drive, Austin, Texas 78746.

8.      Plaintiffs Barbara Pereira and Brian B. Berger bring this suit as the trustees of the Berger Living Trust. The Berger Living Trust owns the property located at 2329 Westlake Drive, Austin, Texas 78746.

9.      Plaintiffs Conrad and Bernadine Bering are individuals who own the property located at 3126 Edgewater Drive, Austin, Texas 78733.

4

10.     Plaintiffs Richard A. Berkowitz, Judith A. Berkowitz, and Jason S. Berkowitz are individuals who own the property located at 3124 Edgewater Drive, Austin, Texas 78731.

11.     Plaintiffs Joseph W. Blandford, Patricia R. Blandford, and the Blandford Family Partnership jointly own the property located at 1318 Rockcliff Road, Austin, Texas 78746. Mr. Blandford and Ms. Blandford bring this suit individually and as general partners for Blandford Family Partnership Ltd.

12.     Plaintiffs William R. Boebel and Elizabeth Barnett Boebel are individuals who own the property located at 1703 Manana Street, Austin, Texas 78730.

13.     Plaintiff BRAMS Fund I LLC owns the property located at 6901 Greenshores Drive #3, Austin, Texas 78730.

14.     Plaintiffs Robert Shawn and Deanne Marie Breedlove are individuals who own the property located at 1709 Manana Street, Austin, Texas 78730.

15.     Plaintiffs William and Elizabeth Buchholz are individuals who own the property located at 1905 Manana Street, Austin, Texas 78730.

16.     Plaintiff Clinton Bybee is an individual who owns the property located at 3415 Westlake Drive, Austin, Texas 78746.

17.     Plaintiffs William L. Reeb and Michaelle A. Cameron are individuals who own the property located at 2603 Pearce Road, Austin, Texas 78730.

18.     Plaintiffs Phillip M. and Melissa Cameron are individuals who own the property located at 6705 Pixie Cove, Austin, Texas 78746.

19.     Plaintiffs William L. and Linda Campbell are individuals who own the property located at 1701 Manana Street, Austin, Texas 78730.

20.     Plaintiffs Juli N. and Everett J. Carmody, Jr. are individuals who own the property located at 2329 Westlake Dr. Unit 5, Austin, Texas 78746.

21.     Plaintiffs Elizabeth and Shelby Carter III are individuals who own the property located at 2909 Westlake Cove, Austin, Texas 78746.

22.     Plaintiffs Mark Preston Caudle and Molly Borden Caudle are individuals who own the property located at 1601 Manana Street, Austin, Texas 78730.

23.     Plaintiffs Donald R. Chapman and Wendy Leann Chapman bring this suit as the trustees of the Donald R. Chapman Management Trust with Plaintiff Linda B. Shelton, an individual. The Donald R. Chapman Management Trust and Linda B. Shelton own the property located at 1314 Rockcliff Road, Austin, Texas 78746.

24.     Plaintiff Ridge Harbor Properties, LLC owns the property located at 2329 Westlake Drive #6, Austin, Texas 78746.

25.     Plaintiffs Jerome Sherwood Clark and Elizabeth Rose Clark bring this suit as the trustees of the Clark Living Trust. The Clark Living Trust owns the property located at 1707 Manana Street, Austin, Texas 78730.

26.     Plaintiffs Donald and Kathryn O. Counts are individuals who own the property located at 3925 Westlake Drive, Austin, Texas 78746.

27.     Plaintiff Kathryn O'Connor Counts is an individual who owns the property located at 3919 Westlake Drive, Austin, Texas 78746.

28.     Plaintiff Jax B. Cowden is an individual who owns the property located at 2100 Island Wood Road, Austin, Texas 78733.

29.     Plaintiff Scott R. Crawley is an individual who owns the property located at 3702 Rivercrest Drive, Austin, Texas 78746.

30.     Plaintiffs Gregory K. and Dawn Stone Crouch are individuals who own the property located at 3206 Rivercrest Drive, Austin, Texas 78746.

31.     Plaintiff Kevin M. Cunningham is an individual who owns the property located at 1603 Manana Street, Austin, Texas 78730.

32.     Plaintiff Tom Martin Davis III is an individual who owns the property located at 1752 Channel Road, Austin, Texas 78746.

33.     Plaintiff James Jefferson Dean is an individual who owns the property located at 2902 Rivercrest Drive, Austin, Texas 78746.

34.     Plaintiffs Robert L. and Karen E. Denove are individuals who own the properties located at 2507 and 2508 Westlake Drive, Austin, Texas 78746.

35.     Plaintiffs Krista D. and Robert W. Dillard III are individuals who own the property located at 2329 Westlake Drive #10, Austin, Texas 78746.

36.     Plaintiff RD KD Family Partners, LP owns the property located at 2329 Westlake Drive #8, Austin, Texas 78746.

37.     Plaintiffs John P. Duffy and Stephanie C. Stokes are individuals who own the property located at 3308 Rivercrest Drive, Austin, Texas 78746.

38.     Plaintiffs Ryan P. and Margaret Dumont are individuals who own the property located at 3602 Rivercrest Drive, Austin, Texas 78746.

39.     Plaintiff Robert Dunbar is an individual who owns the property located at 4813 Laguna Lane, Austin, Texas 78746.

40. Plaintiff Joseph Dunlin is an individual who owns the property located at 6703 Troll Haven, Austin, Texas 78746.

41. Plaintiff EHSME Partners, LTD owns the property located at 2910 Edgewater Drive, Austin, Texas 78733.

42. Plaintiffs Kenneth K. and Lisa C. Ellis are individuals who own the property located at 2700 Rivercrest Drive, Austin, Texas 78746.

43. Plaintiff Bob A. Estes is an individual who owns the property located at 2001 Manana Street, Austin, Texas 78730.

44. Plaintiff Felix Erbring is an individual who owns the property located at 1714 Channel Road, Austin, Texas 78746.

45. Plaintiff Carrie Ann Finch is an individual who owns the property located at 2806 Edgewater Drive, Austin, Texas 78733.

46. Plaintiff Gail Findlay is an individual who owns the property located at 2005 Manana Street, Austin, Texas 78730.

47. Plaintiffs Joshua Adam and Stephanie S. Fogelman are individuals who own the property located at 2007 Manana Street, Austin, Texas 78730.

48. Plaintiffs Michael and Terri Frost are individuals who own the property located at 2311 River Hills Road, Austin, Texas 78733.

49. Plaintiffs Eric and Elizabeth Goldreyer are individuals who own the property located at 1502 Rockcliff Road, Austin, Texas 78746.

50. Plaintiffs J.B. and Marilyn Goodwin are individuals who own the property located at 2607 River Hills Road #D, Austin, Texas 78733.

51.     Plaintiff John H. Greenwood is an individual who owns the property located at 2806 Rivercrest Drive, Austin, Texas 78746.

52.     Plaintiffs Bob E. and Kay R. Gregory are individuals who own the property located at 2939 Westlake Cove, Austin, Texas 78737.

53.     Plaintiff Susan Cope Griffith is an individual who owns the property located at 2415 Westlake Drive, Austin, Texas 78746.

54.     Plaintiffs Ryan N. and Shannon L. Gustafson are individuals who own the properties located at 3510 Rivercrest Drive, Austin, Texas 78746 and 6700 Elfland Drive, Austin, Texas 78746.

55.     Plaintiff William M. and Leigh E. Hablinski are individuals who own the property located at 2905 Westlake Cove, Austin, Texas 78746.

56.     Plaintiff Stephen E. Hambric is an individual who owns the property located at 3605 Robbins Road, Austin, Texas 78730.

57.     Plaintiff Mark Jason Harres is an individual who owns the property located at 3804 Island Way #7, Austin, Texas 78746.

58.     Plaintiffs Justin H. and Ashley E. Hartley are individuals who own the property located at 2315 A Westlake Drive #9, Austin, Texas 78746.

59.     Plaintiffs Brent and Judy Harward are individuals who own the property located at 2701 Pearce Road, Austin, Texas 78730.

60.     Plaintiff Mary Austin Hewitt is an individual who owns the property located at 4009 Rivercrest Drive, Austin, Texas 78746.

61.     Plaintiffs Lew D. and Dawnetta L. Hodge are individuals who own the property located at 2307 Manana Street, Austin, Texas 78730.

62.     Plaintiffs Colin and Shari Hodges bring this suit as the trustees of the Colin and Shari Hodges Revocable Trust. The Colin and Shari Hodges Revocable Trust owns the property located at 3102 Edgewater Drive, Austin, Texas 78733.

63.     Plaintiffs Eric and Daisa Hoffman are individuals who own the property located at 14524 Flat Top Ranch Road, Austin, Texas 78732.

64.     Plaintiff Jack Dallas Holford is an individual who owns the property located at 3409 Westlake Drive, Austin, Texas 78746.

65.     Plaintiffs Aaron R. and Daryl F. Hoover are individuals who own the property located at 6706 Troll Haven, Austin, Texas 78746.

66.     Plaintiff John C. Horton III is an individual who owns the property located at 3111 Westlake Drive, Austin, Texas 78746.

67.     Plaintiffs George Howe and Sarah Howe bring this suit as the trustees of the Howe Living Trust. The Howe Living Trust owns the property located at 6704 Troll Haven, Austin, Texas 78746.

68.     Plaintiff Lance Hughes is an individual who owns the property located at 2609 Westlake Drive, Austin, Texas 78746.

69.     Plaintiffs Jeff R. and Anne Marie Hunt are individuals who own the property located at 2204 Island Wood Road, Austin, Texas 78733.

70.     Plaintiffs Brent and Katherine Hunter are individuals who own the property located at 4711 Laguna Lane, Austin, Texas 78746.

71.     Plaintiff HubBev, LLC owns the properties located at 2926 Westlake Cove, Austin, Texas 78746 and 3317 Westlake Drive, Austin, Texas 78746.

72.     Plaintiffs Ricky L. and Carolyn M. Jenkins are individuals who own the property located at 3016 Edgewater Drive, Austin, Texas 78733.

73.     Plaintiff Diana Fuller Johnson is an individual who owns the property located at 3115 Ski Shores Terrace, Austin, Texas 78730.

74.     Plaintiffs Kathy Ann Goss Johnston is an individual who owns the property located at 3018 Edgewater Drive, Austin, Texas 78733.

75.     Plaintiffs David J. and Jody B. Jones are individuals who own the property located at 2329 Westlake Drive #12, Austin, Texas 78746.

76.     Plaintiffs Cary D. and Allyssa A. Judy are individuals who own the property located at 407 Lago Verde Drive, Austin, Texas 78734.

77.     Plaintiffs Mark and Colleen Klingseisen are individuals who own the property located at 3008 Rivercrest Drive, Austin, Texas 78746.

78.     Plaintiffs Gregory M. and Sharon L. Kronberg are individuals who own the property located at 2205 Island Wood Road, Austin, Texas 78733.

79.     Plaintiffs Craig C. and Margaret M. Kuglen are individuals who own the property located at 1310 Rockcliff Road, Austin, Texas 78746.

80.     Plaintiff Lake Austin Marina I, L.P. owns the property located at 2215 Westlake Drive, Austin, Texas 78746.

81.     Plaintiffs Quincy Lee and Lora Reynolds are individuals who own the property located at 1515 Manana Street, Austin, Texas 78730.

82.     Plaintiff Michael Lehrter is an individual who owns the property located at 2329 Westlake Drive #14, Austin, Texas, 78746.

83.     Plaintiffs Gary P. and Frances P. Little are individuals who own the property located at 2802 Rivercrest Drive, Austin, Texas 78746.

84.     Plaintiff Todd Lively is an individual who owns the property located at 6702 Leprechaun Drive, Austin, Texas 78746.

85.     Plaintiffs Edward J. and Dorothy M. MacInerney are individuals who own the property located at 2316 Island Wood Road, Austin, Texas 78733.

86.     Plaintiff Ricardo Jose Manllo Kuri is an individual who owns the property located at 2908 Westlake Cove, Austin, Texas 78746.

87.     Plaintiff Joe Kirkland Massey brings this suit as the trustee of the Massey Management Trust. The Massey Management Trust and Plaintiff Numvula Holdings, LLC owned the property located at 6706 Elfland Drive, Austin, Texas 78746 during the 2020 tax year. The Massey Management Trust owned 6706 Elfland Drive until November 30, 2020, when it sold 6706 Elfland to Numvula Holdings, LLC.

88.     Plaintiffs Mark and Kathy Mathias are individuals who own the property located at 4108 Sandy Acre Road, Austin, Texas 78746.

89.     Plaintiffs David and Christy May are individuals who own the property located at 1601 Rockcliff Road, Austin, Texas 78746.

90.     Plaintiff Katie May is an individual who owns the property located at 1511 Rockcliff Road, Austin, Texas, 78746.

91.     Plaintiff John S. Mayes brings this suit as the trustee of the John S. Mayes Revocable Trust. The John S. Mayes Revocable Trust owns the property located at 3715 Westlake Drive, Austin, Texas 78746.

92.     Plaintiffs Mark P. McAllister and Elena Rodriguez McAllister bring this suit as the trustees of the McAllister Management Trust. The McAllister Management Trust owns the property located at 3106 Rivercrest Drive, Austin, Texas 78746.

93.     Plaintiffs Shain and Melody McCaig are individuals who own the property located at 921 Cypress Grove Drive, Austin, Texas 78732.

94.     Plaintiff Nicholas Wayne McClure is an individual who owns the property located at 1201 N. Weston Lane, Austin, Texas 78733.

95.     Plaintiff Kathleen Suzanne Benyon McConnachie is an individual who owns the property located at 3128 Edgewater Drive, Austin, Texas 78733.

96.     Plaintiffs Dava and Archer McWhorter, Jr. are individuals who own the property located at 1509 Manana Street, Austin, Texas 78730.

97.     Plaintiff Archer McWhorter, Jr. is an individual who also owns the property located at 1511 Manana Street, Austin, Texas 78730.

98.     Plaintiffs Sharon L. Brubaker and Garrie W. Moore bring this suit as the trustees of the William R. Moore Trust with Plaintiff Jo Ann Moore, an individual. The William R. Moore Trust and Jo Ann Moore own the property located at 2900 Edgewater Drive, Austin, Texas 78733.

99.     Plaintiff Jonathan L. Morgan is an individual who owns the property located at 3111 Ski Shores Terrace, Austin, Texas 78730.

100.     Plaintiffs D. Kirk and Sheryl R. Miller are individuals who own the property located at 2305 Manana Street, Austin, Texas 78730.

101.     Plaintiffs Thomas P. and Marsha P. Mucks are individuals who own the property located at 3004 Edgewater Drive, Austin, Texas 78733.

102.     Plaintiffs William and Alexandra Muehl are individuals who own the property located at 6701 Elfland Drive, Austin, Texas 78746.

103.     Plaintiffs Martha R. and Doug Murrell, Jr. are individuals who own the property located at 2607 N River Hills Road #E, Austin, Texas 78733.

104.     Plaintiffs Daryl and Robin Ostrander are individuals who own the property located at 1406 Rock Cliff Drive, Austin, Texas 78746.

105.     Plaintiffs Kay M. and Gordon R. McNutt, Jr. and Lolla McNutt Page bring this suit as the trustees of the William Page Bypass Trust. The William Page Bypass Trust owns the properties located at 3411 and 3413 Westlake Drive, Austin, Texas 78746.

106.     Plaintiff Donna Olson brings this suit as the trustee of LaRue Olson Family Trust. LaRue Olson Family Trust owns the property located at 3006 Edgewater Drive, Austin, Texas 78733.

107.     Plaintiffs Michael and Janice Panoff are individuals who own the property located at 14316 Flat Top Ranch Road, Austin, Texas 78732.

108.     Plaintiffs Michael and Yolanda F. Patino are individuals who own the property located at 6702 Troll Haven, Austin, Texas 78746.

109.     Plaintiffs Paul B. and Peggy A. Pender are individuals who own the property located at 2329 Westlake Drive #11, Austin, Texas 79846.

110.     Plaintiffs John B. and Margaret E. Pevateaux are individuals who own the property located at 1306 Rockcliff Road, Austin, Texas 78746.

111.     Plaintiffs Amy and John Porter are individuals who own the properties located at 1704 and 1706 Channel Road, Austin, Texas 78746.

112.     Plaintiff Eleanor Powell is an individual who owns the property located at 1810 Rockcliff Road, Austin, Texas 78746.

113.     Plaintiffs Cynthia and Steve Present are individuals who own the property located at 12413 River Bend, Austin, Texas 78732.

114.     Plaintiffs Charles D. Priebe and Shelly Orr Priebe are individuals who own the property located at 13005 On the Lake Road, Austin, Texas 78732.

115.     Plaintiff Stephen A. Pyhrr is an individual who owns the property located at 10806 River Terrance, Austin, Texas 78733.

116.     Plaintiffs W. Matt and Amelia J. Ralls are individuals who own the property located at 3414 Robbins Road, Austin, Texas 78730.

117.     Plaintiff Red Bud Partners, LP owns the property located at 1751 Channel Road, Austin, Texas 78746.

118.     Plaintiff Rob Kay Reid is an individual who owns the property located at 12505 River Bend, Austin, Texas 78732.

119.     Plaintiff Michael Angelo Renna, Sr. brings this suit as the trustee of the R & R Trust. The R & R Trust owns the property located at 3900 Island Knoll Drive, Austin, Texas 78746.

120.    Plaintiffs Grant L. Richards and Karen L. Kofod are individuals who own the property located at 6919 Greenshores Drive, Austin, Texas 78730.

121.    Plaintiffs Kip A. and Melinda E. Richmond bring this suit as the trustees of the Richmond Family Trust. The Richmond Family Trust owns the property located at 2303 Manana Street, Austin, Texas 78730.

122.    Plaintiffs Scott D. and Margot F. Ritchie are individuals who own the property located at 3000 Rivercrest Drive, Austin, Texas 78746.

123.    Plaintiff Wesley G. Ritchie is an individual who owns the property located at 2201 Island Wood Road, Austin, Texas 78733.

124.    Plaintiffs Robert L. and Catherine E. Romano are individuals who own the property located at 3006 Rivercrest Drive, Austin, Texas 78746.

125.    Plaintiffs James C. and Ann H. Root are individuals who own the property located at 3304 Rivercrest Drive, Austin, Texas 78746.

126.    Plaintiffs Kent A. and Cheryl K. Savage are individuals who own the property located at 1500 Rockcliff Road, Austin, Texas 78746.

127.    Plaintiff Eugene P. Schoch III is an individual who owns the property located at 1907 Manana Street, Austin, Texas 78730.

128.    Plaintiff Christopher Schultz is an individual who owns the property located at 12515 River Bend, Austin, Texas 78732.

129.    Plaintiffs T. Glenn and Ellen Brougher Scott are individuals who own the property located at 1711 Manana Street, Austin, Texas 78730.

130.     Plaintiffs Michael and Emily Sheehan are individuals who own the property located at 2304 Island Wood Road, Austin, Texas 78733.

131.     Plaintiffs Frank and Melinda M. Simmen are individuals who own the property located at 6704 Pixie Cove, Austin, Texas 78746.

132.     Plaintiffs Jason E. Simmons and Nanette A. Simmons are individuals who own the property located at 12417 River Bend #15, Austin Texas 78732.

133.     Plaintiffs Kurt M. and Cheryl R. Simons are individuals who own the property located at 6707 Leprechaun Drive, Austin, Texas 78746.

134.     Plaintiff Lyall Thomas Sinclair is an individual who owns the properties located at 2702 and 3007 Rivercrest Drive, Austin, Texas 78746.

135.     Plaintiffs Thomas W. Gilligan and Christie L. Skinner are individuals who own the property located at 2455 Westlake Drive, Austin, Texas 78746.

136.     Plaintiffs Alan and Michelle Smith are individuals who own the property located at 1504 Rockcliff Road, Austin, Texas 78746.

137.     Plaintiff Lisa Snider is an individual who owns the property located at 10810 River Terrace, Austin, Texas 78733.

138.     Plaintiff Robert Sonheim is an individual who owns the property located at 12417 River Bend #16, Austin Texas 78732.

139.     Plaintiffs Toni R. and Charles R. Spangler Jr. are individuals who own the property located at 12417 River Bend #8, Austin, Texas 78732.

140.     Plaintiffs Glenn E. and Marsha Staats are individuals who own the property located at 2311 Island Wood Road, Austin, Texas 78733.

141.    Plaintiffs Glenn N. Steinle, Jr., Alfred A. Steinle, Jane Steinle Andrus, and Don W. Steinle are individuals who own the property located at 3100 Edgewater Drive, Austin, Texas 78733.

142.    Plaintiffs Richard T. and Gail M. Swisher bring this suit as the trustees of the R & G Swisher Family Trust. The R & G Swisher Family Trust owns the property located at 3601 Robbins Road, Austin, Texas 78730.

143.    Plaintiffs Robert W. and Donna J. Talbot are individuals who own the properties located at 1719 Channel Road, Austin, Texas 78746 and 4825 Laguna Lane, Austin, Texas 78746.

144.    Plaintiffs Mark and Naomi Tate are individuals who own the property located at 1506 Rockcliff Road, Austin Texas 78746.

145.    Plaintiffs Edward D. and Gail R. Thomas are individuals who own the property located at 2315 Island Wood Road, Austin, Texas 78733.

146.    Plaintiffs Ted G. and Carol L. Thomson are individuals who own the property located at 3008 Edgewater Drive, Austin, Texas 78733.

147.    Plaintiffs Todd T. and Lori K. Trenasty are individuals who own the property located at 2009 Manana Street, Austin, Texas 78730.

148.    Plaintiff Michael Goldman brings this suit as the trustee of TXLARC Beach Trust. TXLARC Beach Trust owns the property located at 1610 Rockcliff Road, Austin, Texas 78746.

149.    Plaintiffs Jim and Caren Upshaw are individuals who own the property located at 1715 Channel Road, Austin, Texas 78746.

150.     Plaintiffs Elma and Joe F. Vaughan, Jr. are individuals who own the property located at 6901 Greenshores Drive #2, Austin, Texas 78730.

151.     Plaintiffs Menno and Christina Vermeulen are individuals who own the properties located at 3320 Westlake Drive, Austin, Texas 78746 and 4301 Michaels Cove, Austin, Texas 78746.

152.     Plaintiff Matthew T. Voss brings this suit as the trustee of the Matthew T. Voss Revocable Trust. The Matthew T. Voss Revocable Trust owns the property located at 1754 Channel Road, Austin, Texas 78746.

153.     Plaintiffs Richard L. and Patricia B. Wambold are individuals who own the property located at 2906 Rivercrest Drive, Austin, Texas 78746.

154.     Plaintiff Teri Niven Waters is an individual who owns the property located at 1510 Rockcliff Road, Austin, Texas 78746.

155.     Plaintiffs Jennifer G. and Thomas M. West Jr. are individuals who own the property located at 3108 Rivercrest Drive, Austin, Texas 78746.

156.     Plaintiffs James M. and Jo Ann M. Wiersema are individuals who own the property located at 1602 Rockcliff Road, Austin, Texas 78746.

157.     Plaintiffs Austin Travis Williams and John Terrell Williams are individuals who own the property located at 1742 Channel Road, Austin, Texas 78746.

158.     Plaintiffs Robert O. and Jill L. Williams are individuals who own the property located at 2305 Westlake Drive #A, Austin, Texas 78746.

159.     Plaintiff Windler Family Partners LTD owns the property located at 3010 Edgewater Drive, Austin, Texas 78733.

160. Plaintiff Wombwell Land Holdings LP owns the property located at 1507 Manana Street, Austin, Texas 78730.

161. Plaintiffs Brian C. Wood and Dena Wood bring this suit as the trustees of The Elkhorn-South Trust. The Elkhorn-South Trust owns the property located at 1410 Rockcliff Drive, Austin, Texas 78746.

162. Plaintiff Janet Zand brings this suit as the trustee of the Janet Zand Revocable Trust. The Janet Zand Revocable Trust owns the property located at 1600 Rockcliff Road, Austin, Texas 78746.

163. Plaintiffs Robert S. and Marcie C. Zlotnik are individuals who own the properties located at 10610 and 10706 River Terrace, Austin, Texas 78733.

164. Plaintiff Diana Zuniga is an individual who owns the properties located at 3012 and 3014 Edgewater Drive, Austin, Texas 78733.

165. Plaintiff Kirk H. Fritscher brings this suit as the trustee of the 3705 Westlake Trust. The 3705 Westlake Trust owns the property located at 3701 Westlake Drive, Austin, Texas 78746.

166. Plaintiffs' properties are within TCAD's jurisdictional boundaries.

167. Defendant Travis Central Appraisal District is responsible for identifying and appraising taxable property for ad valorem taxation and can be served by serving the Chief Appraiser, Marya Crigler, or any officer or employee of the Travis Central Appraisal District at 850 East Anderson Lane, Austin, Texas 78752. Service is requested at this time.

## IV. JURISDICTION AND VENUE

168.     This Court has subject-matter jurisdiction over this matter under §§42.01, 42.016, and 42.21 of the Texas Tax Code.

169.     Venue is proper in Travis County under §42.22 of the Texas Tax Code because (i) the affected real property at issue is in Travis County and (ii) TCAD is in Travis County.

## V. THE PROPERTIES

170.     Plaintiffs are the owners of certain real property. The attempted taxation of those parcels of real property is the subject of this suit.

171.     The properties are located within the boundaries of Travis County and the purview of TCAD. Exhibit A provides a description of each property involved in this suit.

## VI. CONDITIONS PRECEDENT

172.     All conditions precedent have been met.

173.     For the 2020 tax year, the Homeowners timely protested TCAD's identification of the City and, where applicable, ACC as taxing units in which their property is taxable. Thereafter, following hearings, the ARB denied the Homeowners' protests, from which this appeal is taken.

## VII. FACTUAL ALLEGATIONS

174.     The preceding paragraphs are expressly incorporated by reference.

**A.** **The 1891 Texas Legislature extended the City's boundaries—annexing to the City certain land along the Colorado River for limited purposes.**

175. On December 27, 1839, the Third Texas Congress incorporated the City of Austin and defined its city limits via a special law that became the City's first charter. Act of Dec. 27, 1839, 3rd Tex. Congress. R.S., No. 86.

176. On information and belief, from 1839 to 1891, the City's boundaries remained the same: 640 acres located on the north bank of the Colorado River known as the "Town Tract."

177. In 1890, Austin began constructing its first dam on the Colorado River, a 60-foot high, 1,200-foot-long granite dam just west of the City. Bob Garcia-Buckalew, *The Legacy of Our Early Dams: How an Electrified Early Austin Helped Shape Our Lives Today*, KVUE ABC (July 26, 2019, 10:23 PM), https://www.kvue.com/article/news/history/the-legacy-of-our-local-dams-how-an-electrified-early-austin-helped-shaped-our-lives-today/269-fe7cb13a-b0a5-4a80-844a-2fba2ade2377.[1]

178. To ensure that the City had the jurisdiction and power it needed to construct and maintain the dam and regulate the Colorado River itself, the 1891 Legislature

---

[1] Upon completion in 1893, the early dam provided hydropower for electric generators inside a powerhouse located on the river's bank, making Austin one of the first electrified cities in the country. *Id.* Austin's electrical system—powered by the first Austin Dam—was so innovative that it made the cover of *Scientific American* magazine and powered a network of electric street cars and the still-famous "moonlight towers" acquired by the City in 1895. H.H. Childers, *The Austin Dam*, Scientific American, Aug. 8, 1896, at 1; Bruce Hunt, The Rise and Fall of the Austin Dam, Not Even Past, *available at* https://notevenpast.org/rise-and-fall-austin-dam/. The first dam collapsed during heavy spring flooding in 1900, killing dozens of people and leaving the City deeply in debt and without electricity for months. A second dam built on top of the first collapsed in 1915. The Tom Miller Dam, built between 1938 and 1940, stands on the same site as the first two dams and impounds what is known today as Lake Austin.

reincorporated the City, granted it a new charter, and "extend[ed] its boundaries" westward along the Colorado River, "10 varas" (approximately 30 feet) from the ordinary water level on each bank of the river. Act of April 3, 1891, 22nd R.S., ch. 22, §2, 1891 Tex. Gen. Laws 101, 101-02 (1891 Act). The Legislature indicated that the Colorado River's ordinary water level should be marked "after completion of the dam now being constructed[.]" *Id.*

179.    The image below illustrates how the Legislature extended the City's boundaries along the Colorado River in 1891:



180.    This special law allowed the City to regulate the banks of the Colorado River for health, safety, and navigation purposes. Even so, the City did not tax property in the 10-vara strips, a state of affairs recognized today as "limited-purpose jurisdiction."

181.    In 1913, the Texas State Legislature enacted a law corroborating the concepts at play in the 1891 Act's provisions extending the boundaries of the City of Austin to include

the 10-vara strips. The 1913 law authorized cities "situated along or upon navigable streams" and "acting under special charters[]" to extend their boundaries to include land on both sides of a stream for up to 20 miles from the "ordinary boundaries of said city." Act approved March 17, 1913, 33rd R.S., ch. 25, §1, 1913 Tex. Gen. Laws 47, 47-48.

182. Under the 1913 law, cities had the power to regulate navigation and wharfage in the strips annexed along navigable streams, but they did not have the right to tax property in the annexed strips. *Id.*

183. Consistent with the understanding that the 10-vara strips were only added to the City for limited purposes, the City of Austin regulated the land along the banks of the Colorado River (later Lake Austin) but did not impose ad valorem taxation or provide meaningful municipal services to it from 1891 to 2019.

**B. The City altered its boundaries to follow the 504.9′ contour line and subsequently annexed 500 feet landward for limited purposes.**

184. In 1928, the City of Austin amended its charter via election and redefined its boundaries, altering the description of the strips of land along the Colorado River from "10 varas from the high-water mark" to the "504.9′ above mean sea level contour line" on both banks (the 504.9′ contour line). Austin, Tex., Charter, art. I, §2 (1928).

185. The City continued to regulate the strips of land between the normal lake level (492.8′) and the 504.9′ contour line, but it never taxed those strips of land (the shoreline properties).

186. The City did not perform a survey in 1928 to define the location of the 504.9′ contour line—and still has never done such a survey.

187.    On May 6, 1982, the City of Austin annexed via ordinance "500 feet landward" from the 504.9-contour line for the limited purposes of "planning and zoning" and "sanitation and health protection." Austin, Tex., Ordinance 820506-D (May 6, 1982) (the 1982 Ordinance). As the 1982 Ordinance confirmed, the City had "no power to levy any tax for municipal purposes on either the property or the inhabitants of territory annexed for limited purposes." *Id.*

**C.    In 1986, the City passed an ordinance declaring the limited-purpose-jurisdiction status of the shoreline properties.**

188.    In 1985, the Auditor's Office of the City of Austin, without City Council approval, listed the shoreline properties on the City's tax appraisal roll for the first time.

189.    It had been common knowledge for nearly a century that the shoreline properties were not taxable. For example, in 1909, the Texas Legislature granted the City of Austin a new charter. Act of February 3, 1909, 31st R.S., ch. 2, 1909 Tex. Gen. Laws 8.[2] The 1909 Act expressly required the city tax assessor to "assess or cause to be assessed all taxable property" (*id.* art. VII, §14). But at no point before 1985 did the City of Austin attempt to assess the properties located within the 10-vara strips of land—precisely because the land was not "taxable property."

190.    Confessing an "error" had been made and wanting to resolve the "substantial confusion" regarding the status of the shoreline properties, the City passed an ordinance in 1986 declaring the limited purpose jurisdiction status of all shoreline properties lying

---

[2] During the 1909 Legislative Session, the 1909 charter was amended a little over a month after its enactment. Act of March 24, 1909, 31st R.S., ch 90, 1909 Tex. Gen. Laws 634.

along Lake Austin below the 504.9′ mean sea level contour line." Austin, Tex., Ordinance 860130-A (Jan. 30, 1986) (the 1986 Ordinance).

191.    The City of Austin knew what that meant. Under the City's own charter in 1986, "limited purpose" jurisdiction meant that the land was within the city limits and could be regulated for specific purposes like planning and zoning or sanitation and health protection. But property within the City's limited-purpose jurisdiction—specifically including the shoreline properties—could not be taxed.

192.    "Full purpose" jurisdiction (also called "all purpose" jurisdiction), by contrast, included land that received full city services and could be taxed.

193.    The 1986 Ordinance was enacted to "clarify the status of the Lake Austin shoreline properties below the respective north shore and south shore 504.9′ contour lines" to "avoid any future confusion over the respective rights and duties of Lake Austin shoreline residents or the respective rights and duties of the City of Austin." *Id.*

194.    Under the 1986 Ordinance, the City promised to apply the "same tax collection policy which prevailed with regard to said tracts from the 1891 through the 1984 tax years"—namely, that the shoreline properties are not subject to taxation by the City of Austin—"until all City services are available for said tracts." *Id.* Only *after* all City services were made available could the City Council decide, "by resolution," whether to "order[] taxes to be collected on all or part of the value" of the shoreline properties. *Id.*

195.    The City instructed the Chief Appraiser of the Travis County Appraisal District to move the Travis County Appraisal Review Board "to correct the City's tax appraisal roll by written order and notify the Travis County Assessor of this action." *Id.*

196.    The City also recognized the difficulty in using the 504.9′ contour line to define the City's boundaries "because of the inability to exactly locate said contour line without doing an on-the-ground survey[.]" *Id.*

197.    While the strips of land between Lake Austin's 492.8′ conservation level and the 504.9′ contour line can range from a few feet along the bluffs to hundreds of feet on the flatter land along the shoreline, the conceptual image below illustrates the status of shoreline properties and the surrounding area, as reaffirmed by the 1986 Ordinance:



198.    The next year, the 1987 Legislature statutorily confirmed the distinction between limited-purpose jurisdiction (some regulation but no taxation without full city services) and full-purpose jurisdiction (full regulation and taxation with full services required). Act of May 30, 1987, 70th Leg., R.S., ch. 1077, 1987 Tex. Gen. Laws 3674 (codified in Chapter 43 of the Texas Local Government Code).

**D.  From 1986 to 2019, the City recognized the limited-jurisdiction status of the shoreline properties.**

199.  Between 1891 and 2019, it was undisputed that the shoreline properties were not subject to City property taxes.

200.  In the first decade of the 2000s, the City recognized that it was still not providing full municipal services to the shoreline properties—and that the City could not tax those properties until it provided them with full services.

201.  In 2006, the City attempted a full-purpose annexation of land abutting some of the shoreline properties on Lake Austin Peninsula, an area along Lake Austin north of the City of West Lake Hills and west of the City of Austin. Recognizing its duty to provide full municipal services to the shoreline properties before taxing them, the City included some adjacent shoreline properties in the service plan for the Lake Austin Peninsula annexation. But because that annexation failed, the adjacent shoreline properties did not become part of the City's full-purpose jurisdiction, were never provided full municipal services, and thus were not taxed.

202.  In 2018, the City of Austin considered what it would cost to provide the shoreline properties with full municipal services but ultimately decided not to extend full services to the shoreline properties because to do so was too expensive and too difficult.

203.  For example, in February 2018, Austin Water—the water utility service for the City—estimated that it would take five to seven years to construct the water and wastewater facilities necessary to serve just a subset of the shoreline properties (those located on Manana Street). And the cost to provide water and wastewater services to just the Manana Street properties would range from "$11 million to $17 million plus"

depending on the specific construction plan. Even assuming 100% cash funding of such a project, Austin Water's director concluded that the "cost to serve numbers crush the revenues," meaning the City could never expect to recover the cost to build the water and wastewater facilities.

204. Thus, as of June 2019—by the City's own snapshot analysis—of the 401 properties the City believed to be within the shoreline properties category:

- 345 properties do not receive water service from the City;
- 348 properties do not receive wastewater service from the City;
- all properties receive limited service from the Austin Fire Department;
- 313 properties do not receive trash or recycling services from the City; and
- 50 properties do not even receive electricity service from the City.

**E.  In June 2019, the City repealed the 1986 Ordinance, a unilateral and illegal annexation of the shoreline properties for full purposes.**

205. In 2019, after a *Statesman* newspaper article decried the "lakefront tax break" for "mansions on Lake Austin," the City Council abruptly sought to tax the shoreline properties for the first time. Rather than properly annex the properties for full purposes in accordance with state law and extend full municipal services to the shoreline properties, the City attempted to erase its recognition of the shoreline properties' limited-jurisdiction status by repealing the 1986 Ordinance. Pretending the shoreline properties had always been in the City's full-purpose jurisdiction and only enjoyed a tax exemption, the City sought to avoid the procedural requirements of both state law and its own charter, which the City knew it could not satisfy.

206. In other words, the City of Austin created—out of whole cloth—a story that shoreline properties were already in its full-purpose jurisdiction so it could tax the properties, violating not only state law and the City Charter but also the promise City

Council made in the 1986 Ordinance that it would not tax the shoreline properties "until all City services are available for said tracts."

207.    Item 87 on the Austin City Council's June 20, 2019 consent agenda was described as: "Approve an ordinance repealing Ordinance No. 860130-A, relating to certain properties located along Lake Austin." The topic description included no mention of annexing the shoreline properties to the City's full-purpose jurisdiction or taxing the properties.

208.    Even though Item 87 was pulled from the consent agenda, Austin City Council Members had already "commit[ed]"—as of June 15, 2019—to repeal the 1986 Ordinance "unanimously." Philip Jankowski, *City Council Commits to Repeal Lake Austin Tax Exemption*, AUSTIN AMERICAN STATESMAN, Jun. 15, 2019.

209.    Before the June 20, 2019 City Council meeting, the City provided no notice to the Homeowners of the shoreline properties that it was annexing their properties for full purposes and would impose City property taxes on their properties for the first time in the nearly 130 years that their land had been a part of the City.

210.    Further, on information and belief, the City did not publish notice (in a newspaper of general circulation or anywhere else) that the City Council meeting would be a public hearing on the full-purpose annexation of the shoreline properties.

211.    During the June 20, 2019 City Council meeting, the City Council heard brief comments from a few members of the public—as a perfunctory activity.

212. The City Council subsequently approved an ordinance repealing the 1986 Ordinance. Austin, Tex., Ordinance 20190620-087 (June 20, 2019) (Repeal Ordinance).[3] As part of the "findings" in the Repeal Ordinance, the City Council stated for the first time that "the properties identified in the [1986 Ordinance] are within the City's full purpose jurisdiction, "have been at all times since the 1891 Act of Incorporation," and "are subject to taxation by the City because they are within the City limits." *Id.*

213. The Repeal Ordinance went into effect on July 1, 2019.

214. The image below illustrates the alleged status of shoreline properties and the surrounding area following passage of the Repeal Ordinance:



<hr />

[3] Although the Homeowners refer to other ordinances relevant to this dispute by year approved, Homeowners refer to Ordinance 20190620-087 as the Repeal Ordinance because the City Council considered a resolution directing the City Manager to use the new property taxes from the shoreline properties to fund certain initiatives on the same day the City Council passed the Repeal Ordinance. *See* Austin, Tex., Resolution 20190620-089.

215.    In contrast with the City's treatment of the shoreline properties, the City routinely annexes property to its full-purpose jurisdiction from its limited-purpose jurisdiction via ordinance. When the City does so, it confirms that (1) notice of the public hearing(s) concerning the full-purpose annexation was published in a newspaper of general circulation in the City, in the area to be annexed, and on the City of Austin website; (2) at least one public hearing on the full-purpose annexation was held; (3) all persons at the public hearing had an opportunity to heard; (4) the full-purpose annexation serves the interests of current and future residents of the City; and (5) all state law procedural requirements were met. *See* Austin, Tex. Ordinance 20200604-052 (June 4, 2020); Austin, Tex., Ordinance 20191031-024 (Oct. 31, 1982). After stating that those procedural requirements are satisfied, the City typically describes the territory—using a legal description—that is "within the limited purpose jurisdiction" and is thereby "annexed into the City for full purposes[.]" *Id.* But the City did none of those things in the Repeal Ordinance.

216.    Notwithstanding the City's illegal attempt to annex the shoreline properties and consistent with the City's historical limited-purpose-jurisdiction treatment of the area, the City of Austin still does not provide the shoreline properties with municipal services comparable with the services it provides to properties within its full-purpose jurisdiction.

217.    The City's municipal services for its full-purpose areas include construction and maintenance of water and wastewater facilities (the most costly and important services), municipal police protection, fire protection, emergency medical services, and trash collection. The City has repeatedly admitted that providing these typical municipal

services to the shoreline properties is physically and economically difficult because the shoreline properties are clustered along rugged terrain.

218. Also disturbing, the City does not even have a clear record of which properties fall under the umbrella of the shoreline properties and on which properties it imposed a new tax by passing the Repeal Ordinance. That is because "of the inability to exactly locate said contour lines without doing an on-the-ground survey"—which, on information and belief, the City has yet to do. Austin, Tex., Ordinance 860130-N (Jan. 30, 1986).

219. When the City passed the Repeal Ordinance, it claimed that it was imposing property tax on approximately 400 properties. But news reports suggest as many as 1,004 properties might fall within the contours that define the shoreline properties and thus now might be within City's new full-purpose jurisdiction and be taxed by the City and/or ACC for the first time. Philip Jankowski, *After Statesman Reports, Hundreds of Lakefront Properties Avoiding Taxes Now May Have to Pay Up*, AUSTIN AMERICAN STATESMAN, Jan. 16, 2020.

220. On information and belief, no survey to locate the precise location of the 504.9′ contour line has ever been done, nor has the City determined where this line falls on each of the Homeowners' properties.

**E.**   **TCAD and the City seek to impose an additional tax bill on the Homeowners without following the proper processes and without furnishing full municipal services—including water, wastewater, and fire-hydrant services.**

221. It is undisputed that the Homeowners previously paid taxes to taxing entities such as Travis County, the Austin Independent School District, and the Leander Independent School District.

222. But for the 2020 tax year, TCAD included the City and—for those properties located in the Lake Travis Independent School District or Eanes Independent School District[4]—ACC as taxing entities for the first time on the tax bills of the shoreline properties.[5]

223. For many, the hefty additional property tax bill came out of nowhere.

224. But despite that additional tax bill from the City, most of the Homeowners still do not receive meaningful municipal services from the City. Instead, the Homeowners must do without—or bear the costs of providing most of these services themselves.

225. For instance, most of the Homeowners do not receive water or wastewater from the City. Instead, some have installed expensive water pump and filtration systems to draw water from Lake Austin, systems that cost at least $2,000 a year to maintain. But even those systems do not guarantee safe drinking water, so many Homeowners still purchase bottled water for drinking and cooking.

226. Other Homeowners pay water districts such as Travis County Water District No. 10, Travis County Water District No. 17, and Travis County Water Control and Improvement District No. 18 to service their properties.

---

[4] Homeowners of the shoreline properties located in Austin Independent School District or Leander Independent School District were already part of the ACC district and previously paid taxes to ACC. Those shoreline properties that the City now claims are subject to taxation but are in the Lake Travis Independent School District or Eanes Independent School District are being added to the City of Austin taxing area and thus the ACC tax district for the first time.

[5] It is unclear if Travis Central Appraisal District included the City and, where applicable, ACC on the tax bills for all the shoreline properties or merely a subset of those properties.

227.　And most Homeowners also maintain septic systems at their own expense. Likewise, because the Homeowners generally do not receive trash services from the City, they typically pay private companies to collect their garbage.

228.　Further, the Homeowners know they cannot depend on the City for fire, police, or emergency medical services.

229.　Several Homeowners have lost loved ones and property from the long delay in the arrival of any emergency service and lack of fire hydrants.

230.　Given such losses, the Homeowners know better than to count on emergency medical services when life is on the line. Ambulances take far too long to arrive or sometimes never come. Instead, the Homeowners rely on family, friends, or each other to get to the hospital in an emergency.

231.　The Homeowners in this suit timely protested the taxation of their properties by the City and, where applicable, ACC.

232.　The ARB subsequently held hearings on the Homeowners' protests and denied the Homeowners' protests that their properties were not within the taxing jurisdiction of the City and, where applicable, ACC.

233.　Indeed, the ARB refused to consider whether the City and, where applicable, ACC were proper taxing units for the shoreline properties.

234.　The Homeowners take this appeal from that denial.

## VIII. Cause of Action

### Appeal of Tax Protest under §42.01 of Texas Tax Code

235.    The Homeowners incorporate by reference the allegations in all preceding paragraphs.

*A.    State law and the City Charter narrowly curtail the City's annexation power.*

236.    Before 1912, the Legislature created virtually all cities and municipal corporations. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 26 (Tex. 2003). "At that time, Texas permitted annexation under only two circumstances: (i) pursuant to the general law, usually by majority vote of the annexed residents, or (ii) by special act of the Legislature granting or amending a specific city's charter." *Id.*

237.    With the Home Rule Amendment in 1912, Texas home-rule cities acquired the power to change their own charters and acquired the authority to annex property without the owners' consent. *Id.* at 27. The result was an explosion of unbridled annexation in the State. *Id.*

238.    Reacting to widespread annexation wars between cities, the Legislature passed the Municipal Annexation Act in 1963 "to curb the virtually unlimited power of home rule municipalities to unilaterally annex territory." *Id.* Under the Municipal Annexation Act, a municipality could still annex unilaterally but had to follow certain procedures—namely notice and a hearing—and could only annex property within its extraterritorial jurisdiction. Act of April 29, 1963, Municipal Annexation Act, 58th Leg., R.S., ch. 160, § §6-7, 1963 Tex. Gen. Laws 447, 449-50.

239.    For the next 24 years, municipal annexation authority remained largely unencumbered beyond the constraints imposed in 1963. The Legislature tinkered with annexation but did not make sweeping changes. Thus, in 1986, a municipality still had authority to unilaterally annex land for either limited purposes or full purposes via ordinance—and could alter those statuses from one to another. A city needed only to meet a few state statutory requirements such as proper notice and a public hearing—plus any additional requirements found in its own charter or ordinances.

240.    Starting in the 1987 legislative session, the Legislature began passing bills to curb unilateral annexations. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 1078, 1987 Tex. Gen. Laws 3674; *see also* Act of Aug. 12, 2017, 85th Leg., 1st C.S., ch. 6, 2017 Tex. Gen. Laws 4504. The Legislature also mandated that a "municipality may not impose a tax on any property in an area annexed for limited purposes or on any resident of the area for activity occurring in the area." Act of May 30, 1987, 70th Leg., R.S., ch. 1078, §5, 1987 Tex. Gen. Laws 3674, 3678.

241.    Most recently, in 2019, the Legislature revised a home-rule municipality's annexation authority so that the vast majority of annexations require a municipality to first obtain consent from the property owners of the land the municipality seeks to annex through one of three consent procedures: (1) through the request of each property owner whose land would be annexed; (2) by petition of voters—and, if the voters do not own more than 50% of the land in the area, property owners—if the area has a population of less than 200; or (3) by election of voters—and, if the voters do not own more than 50% of the land in the area, by petition of property owners—if the area has a population of at

least 200. Act of May 24, 2019, 86th Leg., R.S., ch. 155 (codified Chapter 43 of Texas Local Government Code). The 2019 legislation curtailing a home-rule municipality's annexation authority took effect on May 24, 2019.

242.    A few narrow exceptions to the consent requirement remain. Only after satisfying specific statutorily-prescribed requirements—such as completing a service plan, holding two public hearings, and providing notice—may a municipality annex an enclave, industrial district, a municipally-owned area, a navigable stream, a strategic-partnership area, a municipally-owned reservoir, a municipally-owned airport, or a road and right-of-way as defined in statute. TEX. LOC. GOV'T CODE Subchapter C-1.

243.    A home-rule municipality has no authority to annex property to its full-purpose jurisdiction without satisfying the annexation procedures of Chapter 43 of the Texas Local Government Code—either the applicable consent procedure or the special procedure for an area exempted from the consent requirement.

244.    In addition to those state-law requirements, Austin's City Charter further restricts the City's annexation authority and treatment of both all-purpose and limited-purpose areas.

245.    The "Annexation for All Purposes" section of the City Charter requires the City Council to provide an opportunity "for all interested persons" to be heard at a public hearing "[b]efore the city may institute annexation or disannexation proceedings." Austin, Tex., City Charter, art. I, §6. The Charter also mandates that prior notice of such public hearings be published "in a newspaper of general circulation in the city and in the territory proposed to be annexed." *Id.*

246. Further, the City Charter requires that inhabitants of property annexed for all purposes "shall be entitled to all rights and privileges of all the citizens." *Id.*

247. In areas annexed for limited purposes, the City "has no power to levy any tax for municipal purposes on either the property or the inhabitants of [the] territory[.]" *Id.* art. I, §7.

B.    *In 1891, the Legislature annexed the shoreline properties to the City for limited purposes.*

248. The 1891 Act annexed the shoreline properties, then defined by 10 varas from the Colorado River, to the City of Austin for limited purposes such as regulating navigation, wharfage, and dam construction on the Colorado River.

249. Because the shoreline properties were only added to the City's limited-purpose jurisdiction, the shoreline properties were not added to the City's tax rolls and were not taxed by the City. In fact, the city tax assessor did not even assess the shoreline properties for 94 years despite a duty to assess all taxable property. *See* Act of February 3, 1909, 31st R.S., ch. 2, art. VII, §14, 1909 Tex. Gen. Laws 8, 22. That is because the shoreline properties were not property that was taxable by the City.

C.    *In 1986, the City reaffirmed that the shoreline properties were located within its limited-purpose jurisdiction.*

250. In 1985, the City of Austin Auditor's office—for the first time since the shoreline properties had been annexed for limited-purposes in 1891—mistakenly added the shoreline properties to the City's tax rolls. The City Council confessed that it was an "error" to add the shoreline properties, and it passed the 1986 Ordinance "declaring the limited purpose jurisdiction status of all shoreline properties lying along Lake Austin

below the 504.9′ mean sea level contour line." Austin, Tex., Ordinance 860130-A (Jan. 30, 1986).

251.     The 1986 Ordinance—a legislative act—clarified that the shoreline properties were within the City's limited-purpose jurisdiction, not within its full-purpose jurisdiction.

D.     *In 2019, the City illegally annexed the shoreline properties to its full-purpose jurisdiction via the Repeal Ordinance.*

252.     From 1891 to 2019, the shoreline properties were within the City of Austin's limited-purpose jurisdiction.

253.     In 2019, the City Council passed the Repeal Ordinance, which purports to repeal the 1986 Ordinance. The Repeal Ordinance states, for the first time in history, that "the properties identified in the [1986 Ordinance] are within the City's Full Purpose jurisdiction" and "have been at all times" since 1891. Austin, Tex., Ordinance 20190620-087 (June 20, 2019).

254.     The City Council also declared, for the first time, that the shoreline properties "are subject to taxation by the City because they are within the City limits."

255.     Through the Repeal Ordinance, the City illegally annexed the shoreline properties to its full-purpose jurisdiction through a sui generis, arbitrary process—a process it has never used in annexing other limited-purpose-jurisdiction properties to full-purpose jurisdiction—rather following the procedures required by Chapter 43 of the Texas Local Government Code, the City Charter, and its own internal procedures. The effective date of that annexation was July 1, 2019.

256.     It is the responsibility of TCAD's chief appraiser to prepare the appraisal records, which must include "an identification of each taxing unit in which the property is taxable." TEX. TAX CODE §§25.01, 25.02(11). TCAD subsequently included the City and, where applicable, ACC as taxing entities on the tax bills for the shoreline properties for the first time.

E.     *The City Council had no authority to unilaterally annex the shoreline properties for full purposes.*

257.     The City had no authority to annex the shoreline properties for full purposes outside of the statutory scheme set out in Chapter 43 of the Texas Local Government Code. The City did not obtain the consent of either the owners of the shoreline properties or the voters in the area. The City neither identified an exemption from the applicable consent procedures nor followed the exempted-from-consent procedures.

258.     The City Council also had no authority to annex the shoreline properties area for all purposes outside of the procedures described in Article I, §6 of the City Charter.

259.     Additionally and independently, the City Council exceeded its authority by attempting to tax the shoreline properties in violation of Texas Local Government Code §43.130(c) and Article I, §7 of the City Charter.

260.     Because the shoreline properties were not properly annexed to the City's full-purpose or all-purpose jurisdiction, the shoreline properties remain in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners, and cannot be taxed under Chapter 43 of the Texas Local Government Code or the City Charter.

*F.*     *The Homeowners challenge TCAD's identification of the City and ACC as taxing units in which their property is taxable.*

261.     TCAD's chief appraiser is charged with identifying each taxing unit in which property is taxable. TEX. TAX CODE §§25.01, 25.02(11). And Texas Tax Code §41.41 gives a property owner the explicit right to protest the "identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll[.]"

262.     A property owner is entitled to appeal an appraisal review board decision concerning a protest brought under §41.41. TEX. TAX CODE §42.01(a)(1)(A).

263.     The Homeowners protested TCAD's identification of the City and, where applicable, ACC as taxing units in which their property is taxable.

264.     The ARB denied the Homeowners' protests, refusing even to consider this ground of protest, and the Homeowners appeal that conclusion.

265.     There are multiple independent reasons why the City and (as applicable) ACC are not taxing units in which the Homeowners' property is taxable. The following provides a summary of the reasons why the Homeowners' property is not subject to the City's or (as applicable) ACC's taxing authority:

    a.  **Multiple violations of Chapter 43 of the Texas Local Government Code:** The City did not follow the process in Chapter 43 of the Local Government Code to annex the shoreline properties for full purposes. For example, the City failed to (1) conduct the multiple hearings required by statute, (2) provide proper notices for those hearings, (3) create a service plan, and (4) provide full municipal services. Because the City's attempted full-purpose annexation is improper, the properties remain within the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners, and both state law and the City Charter bar the City from taxing areas in limited-purpose jurisdiction.

b. **Multiple violations of the City Charter:** The City's Repeal Ordinance and the City's attempt to tax the Homeowners violate the Austin City Charter in multiple, independent ways. For instance, the City Council failed to provide an opportunity for "all interested persons" to be heard at a public hearing before instituting annexation proceedings. The City Charter also required the City to publish "prior notice of the hearing in a newspaper general circulation in the city." Further, the City Charter requires that inhabitants of property annexed for "all purposes" "shall be entitled to all rights and privileges of all the citizens." But, here, the Homeowners do not receive "all rights and privileges" of other Austin citizens, since they do not have access to full municipal services available to other citizens of the City.

c. **Violation of the Texas Constitution's prohibition against retroactive laws:** The City is trying to retroactively erase the limited-purpose-jurisdiction status of the lakeshore properties to attempt to avoid complying with Chapter 43 of the Texas Local Government Code. To the extent the Repeal Ordinance retroactively changes the status of the lakeshore properties, the Repeal Ordinance violates the Texas Constitution's provision against retroactive laws and thus the shoreline properties cannot be treated as being within the City's full-purpose jurisdiction.

d. **Violation of the U.S. Constitution's and Texas Constitution's due-process guarantees:** The City violated the Homeowners' vested due-process rights in imposing the new taxes for multiple reasons. First, the City retroactively changed the status of the shoreline properties (from limited-purpose jurisdiction to full-purpose jurisdiction) to avoid complying with the law as it stands today, violating the Homeowners' substantive-due-process rights. Second, the City failed to provide notice, an opportunity to be heard, or a forum where its actions could be considered and adjudicated. Third, the City did not follow the processes prescribed by Chapter 43 of the Texas Local Government Code and the City Charter before imposing the new taxes.

e. **Violation of Texas Open Meetings Act:** The Repeal Ordinance is invalid because the City's notice on the agenda item regarding the ordinance did not comply with the subject specificity requirements of the Texas Open Meetings Act.

f. **Repeal of the 1986 Ordinance means the properties are still in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners:** Even if the attempted 2019 repeal of the 1986 Ordinance had been valid (which it is not), the repeal simply leaves the shoreline properties in the same status they enjoyed before the 1986 Ordinance—namely, still within the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners. The City

never taxed those properties or provided services to them before 1986. The shoreline properties have always been limited-purpose jurisdiction as that concept is now understood. And both the City Charter (Article I, §7) and state law (including §43.130 of the Local Government Code) bar the City from taxing properties within its limited-purpose jurisdiction.

g. **Violation of the Equal Protection Clause of the U.S. Constitution and the Equal Rights Clause of the Texas Constitution:** The Homeowners' rights to equal treatment under the law were violated because there was no rational basis to use a different process to annex the shoreline properties from the City's limited-purpose jurisdiction to its full-purpose jurisdiction than the process afforded to other limited-jurisdiction property owners. Additionally, the Homeowners' rights to equal treatment will be violated if the City and ACC are allowed to tax the Homeowners because there is no rational basis to treat the Homeowners differently than other limited-purpose property owners or, alternatively, full-purpose property owners.

h. **Failure to prove each shoreline property is within the taxing unit:** The City and ACC cannot tax the shoreline properties because the taxing entities never located their own boundary line to prove which properties—or which portion of such properties—fall below the 504.9′ contour lines.

266. Further, if TCAD is permitted to include the City and ACC as taxing units for the shoreline properties, TCAD's appraisals of the shoreline properties are unequal appraisals of these properties under §42.26 of the Texas Tax Code.

267. The remainder of this petition discusses the reasons why the City and ACC cannot tax the Homeowners' properties in greater detail.

*1. In enacting the Repeal Ordinance and imposing municipal taxes on the shoreline properties, the City violated Chapter 43 of the Texas Local Government Code.*

268. To impose the City tax on real property, the City must annex the property for full purposes in compliance with the rules set out in Chapter 43 of the Local Government Code. Indeed, the City routinely annexes property for full purposes when it seeks to change property from its limited-purpose jurisdiction to its full-purpose jurisdiction. And, when it does so, it complies with Chapter 43's requirements.

44

269.     There are different paths a municipality may follow under Chapter 43 to annex property for full purposes. The City followed none of them.

270.     Under the exempted-from-consent annexation procedures, the City did not meet the following statutory requirements:

    a.  The City did not "conduct two public hearings at which persons interested in the annexation [were] given the opportunity to be heard" before "the 20th day before the date of the institution of the [annexation] proceedings." Tex. Loc. Gov't Code §43.063(a).

    b.  The City did not "post notice of the hearings on the municipality's Internet website[.]" *Id.* §43.063(c)(1).

    c.  The City did not "publish notice of the hearings in a newspaper of general circulation[.]" *Id.* §43.063(c)(2).

    d.  The City failed to "direct its planning department or other appropriate municipal department to prepare a service plan that provides for the extension of full municipal services to the area to be annexed." *Id.* §43.065(a).

    e.  The City did not "complete[] before the annexation" a service plan that "include[s] a program under which the municipality will provide full municipal services in the annexed area no later than 2–1/2 years after the effective date of the annexation" or a schedule "for the provision of full municipal services not later than 4–1/2 years after the effective date of the annexation." *Id.* §§43.065(b), 43.056(b).

    f.  The City did not provide the shoreline properties with services such as fire protection, fire hydrants, operation and maintenance of water and wastewater facilities, operation and maintenance of roads and streets, or operation and maintenance of parks and playgrounds on the effective date of annexation, July 1, 2019. *Id.* §43.056(b).

    g.  The City failed to make the "proposed service plan available for public inspection" or "explain[ it] to the inhabitants of the area at public hearings[.]" *Id.* §§43.065(b), 43.056(j).

271.     Nor did the City follow any of the statutory requirements for consent annexations (Subchapter C-3, Subchapter C-4, or Subchapter C-5).

272.     Because the Repeal Ordinance did not properly annex the shoreline properties for full purposes under any of Chapter 43's allowable procedures, the shoreline properties remain in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners.

273.     Under Texas Local Government Code §43.130(c), the City "may not impose a tax on any property in an area annexed for limited purposes or any resident of the area for an activity occurring in the area."

274.     Nevertheless, the Repeal Ordinance finds that the shoreline properties "are subject to taxation by the City because they are within City limits[.]" The Repeal Ordinance therefore violates §43.130(c).

275.     Because the Repeal Ordinance violates multiple provisions of Chapter 43 of the Local Government Code, the shoreline properties remain within the City's limited-purpose jurisdiction (subject to disannexation requests from affected property owners) and are not taxable by the City (as applicable) ACC.

       *2.       In enacting the Repeal Ordinance, the City violated its own charter.*

276.     The "Annexation for All Purposes" section of the City Charter governs full-purpose annexations. It requires the City Council to provide an opportunity "for all interested persons" to be heard at a public hearing "[b]efore the city may institute annexation or disannexation proceedings." Austin, Tex., City Charter, art. I, §6.

277.     The Charter also mandates that prior notice of such public hearings must be published "in accordance with state law in a newspaper of general circulation in the city and in the territory proposed to be annexed." *Id.*

278.     For multiple reasons, the City did not satisfy these notice and opportunity-to-be-heard requirements before instituting full-purpose-annexation proceedings and passing the Repeal Ordinance.

279.     First, the City did not provide the notice required in Article I, §6 of the City Charter.

280.     Second, while City Council allowed a handful of citizens to speak about the proposed Repeal Ordinance at the City Council meeting, the City Council did not "provide an opportunity for all interested persons" to be heard at a public hearing.

281.     Third, the City instituted full-purpose annexation proceedings before providing *any* of the affected landowners with notice and an opportunity to be heard. The City Council originally placed the Repeal Ordinance on the consent agenda—instituting full-purpose annexation proceedings—before any public hearing on the matter. Thus, the City had already "institute[d] annexation . . . proceedings" before it allowed *any* affected landowners to speak at the public hearing, violating Article I, §6 of the City Charter.

282.     Indeed, public statements by Austin City Council Members confirm that the Repeal Ordinance—and thus full-purpose annexation of the shoreline properties—was already a done deal before the June 20, 2019 City Council meeting.

283.     Only after the Repeal Ordinance was pulled from the consent agenda did the City Council provide *some* interested persons the opportunity to speak before the Council passed the Repeal Ordinance.

284.     Further, the City Charter requires that inhabitants of property annexed for all purposes "shall be entitled to all rights and privileges of all the citizens." *Id.*

285. But the owners of the shoreline properties do not receive all rights and privileges of other Austin citizens. The City does not provide full municipal services to the shoreline properties and has not made any plans to do so. The Repeal Ordinance thus violates the City Charter's guarantee that inhabitants of areas annexed for all purposes are entitled to all rights and privileges of all the citizens, including the rights or privileges of receiving full municipal services.

286. Additionally, because the Repeal Ordinance did not properly annex the shoreline properties for full purposes, the shoreline properties remain in the City's limited-purpose jurisdiction.

287. And under the City Charter, the City "has no power to levy any tax for municipal purposes on either the property or the inhabitants of territory annexed for limited purpose or purposes[.]" Austin, Tex., City Charter, art. I, §7.

288. Nevertheless, the Repeal Ordinance finds that the shoreline properties "are subject to taxation by the City because they are within City limits[.]"

289. Because the Repeal Ordinance violates multiple provisions of the Austin City Charter, the shoreline properties remain within the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners, and are not taxable by the City or ACC.

> 3. *The Repeal Ordinance violates the Texas Constitution's prohibition against retroactive laws.*

290. The Texas Constitution prohibits the making of any retroactive law. TEX. CONST. art. I, §16.

291.     The 1891 Act added the shoreline properties (as 10-vara strips) to the City's limited-purpose jurisdiction. For 94 years, the City treated the properties as within its limited-purpose jurisdiction and did not assess the properties for City taxes.

292.     In 1986, to fix an "error" and "clarify the status" of the shoreline properties, the City "declar[ed] the limited purpose jurisdiction status of all shoreline properties lying along Lake Austin below the 504.9′ mean sea level contour line[.]" Austin, Tex., Ordinance 860130-A (Jan. 30, 1986).

293.     For another 33 years, the shoreline properties unquestionably remained in the City's limited-purpose jurisdiction and did not receive full municipal services or pay City taxes.

294.     But, under the Repeal Ordinance in 2019, the City—for the first time—declared that the shoreline properties "are within the City's full-purpose jurisdiction and have been at all times since the 1891 Act[.]"

295.     The Repeal Ordinance is an attempt to retroactively change the status of the shoreline properties in violation of the Texas Constitution.

296.     The Homeowners have vested property rights in their homes and expected tax payments for those properties.

297.     The longtime limited-purpose-jurisdiction status of the shoreline properties and the 1986 Ordinance's reconfirmation of that status settled the Homeowners' expectations that the properties were within the City's limited-purpose jurisdiction. Any subsequent full-purpose annexation needs to satisfy state and City requirements—and also needs to comply with the constitutional prohibition against retroactive laws.

298. The Homeowners bought and developed their properties based on those expectations. Many invested in costly water-processing and septic systems. Others live on a fixed income and considered their expected tax bill in making careful financial decisions.

299. The City did not have and does not have a compelling public interest to overcome the heavy presumption against retroactive laws. Instead of retroactively changing the status of the shoreline properties, the City could have annexed the properties for full purposes through the procedures prescribed by Texas Local Government Code Chapter 43 and the City Charter—but failed to do so.

300. Because the Repeal Ordinance violates the Texas Constitution's prohibition against retroactive laws, the shoreline properties remain in the City's limited-purpose jurisdiction (subject to disannexation requests from affected property owners) and cannot be taxed.

    *4.    The Repeal Ordinance violates the U.S. Constitution's and the Texas Constitution's due-process guarantees.*

301. The Fourteenth Amendment of the United States Constitution and Article I, §19 of the Texas Constitution guarantee that an individual may not be deprived of certain substantive rights—life, liberty, and property—without constitutionally adequate procedures. If an individual is to be deprived of a vested property right, the government must afford an appropriate and meaningful opportunity to be heard to comport with procedural due process. Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner before a decision affecting an individual's property rights.

302.     Changing the shoreline properties' status from limited-purpose to full-purpose jurisdiction constitutes a deprivation of the Homeowners' property rights. Collection of a tax likewise constitutes a deprivation of property.

303.     A taxing unit must afford property owners due process of law before depriving them of property.

304.     The City violated the Homeowners' rights to due process in multiple ways, each constituting a constitutional violation.

305.     First, the City retroactively changed the status of the shoreline properties (from limited-purpose jurisdiction to full-purpose jurisdiction) to avoid complying with the law as it stands today.

306.     Second, the City failed to provide notice, an opportunity to be heard, or a forum where its actions could be considered and adjudicated, violating three basic norms of procedural fairness.

307.     Third, the City did not follow the processes prescribed by Chapter 43 of the Texas Local Government Code and the City Charter before imposing the new taxes. Here, the Homeowners' vested due-process rights are defined by Chapter 43 of the Texas Local Government Code, the City Charter, and/or the City's regular procedures for annexing limited-jurisdiction property to its full-purpose jurisdiction. The City did not comply with the procedures set out in Chapter 43, the City Charter, or its regular procedures for annexing limited-jurisdiction property to its full-purpose jurisdiction in enacting the Repeal Ordinance and therefore violated the Homeowners' constitutional due-process rights.

308.    Because the Repeal Ordinance is constitutionally invalid, the shoreline properties remain in the City's limited-purpose jurisdiction (subject to disannexation requests from affected property owners) and cannot be taxed.

  5.    *The Repeal Ordinance is invalid because the Austin City Council violated the Texas Open Meetings Act.*

309.    The Texas Open Meetings Act requires that governmental bodies give written notice of the subject of each meeting held. TEX. GOV'T CODE §551.041.

310.    When a meeting topic is of special interest to the public, the description of that topic must be more detailed and must provide reasonable specificity of the subject matter to be considered.

311.    Full-purpose annexation is a topic of special interest to the public. A meeting about full-purpose annexation of property must provide notice to the public through a detailed topic description.

312.    Additionally, the imposition of new taxes on real property—taxes that had never before been imposed on that property—is a topic of special interest to the public that requires a detailed description.

313.    The Austin City Council is a governmental body to which the requirements of the Texas Open Meetings Act apply.

314.    The Austin City Council held a meeting on June 20, 2019. Item 87 on the City Council's consent agenda for that meeting was described as follows: "Approve an Ordinance repealing Ordinance No. 860130-A, relating to certain properties located along Lake Austin."

315. Item 87's description did not provide adequate notice of the topic slated for discussion.

316. At the June 20, 2019 meeting, the City Council intended to annex the shoreline properties to City's full-purpose jurisdiction. Full-purpose annexation of these properties does not appear in the meeting's subject description.

317. Also significant, at the June 20, 2019 meeting, the City Council intended to declare the shoreline properties subject to taxation by the City for the first time in the over 128 years the properties had been considered part of the City (albeit within the City's limited-purpose jurisdiction). There is no mention of imposing new taxes in the subject of Item 87.

318. Because the City violated the Texas Open Meetings Act in not adequately describing the subject of the topic slated for discussion, the Homeowners request injunctive relief to prevent or reverse the violation by directing TCAD to remove the City and (as applicable) ACC as taxing units for the Homeowners' properties.

> 6. *Even if the Repeal Ordinance had been valid (which it is not), the shoreline properties remain in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners.*

319. At most, the City repealed the 1986 Ordinance via the Repeal Ordinance. But repealing the 1986 Ordinance did not actually change the shoreline properties' limited-purpose jurisdiction status. For nearly 100 years before the 1986 Ordinance was enacted, the City did not tax or provide services to the shoreline properties because they were in the City's limited-purpose jurisdiction.

320.    To change the shoreline properties' annexation status from limited-purpose to full-purpose, the City must comply with the procedures prescribed by state law and the Austin City Charter. It has not done so.

321.    The shoreline properties therefore remain in the City's limited-purpose jurisdiction, subject to the disannexation remedies available due to the City's failure to timely annex the properties for full purposes in accordance with the requirements of Subchapter F of Chapter 43 of the Texas Local Government Code.

322.    Both Texas Local Government Code §43.130 and Article I, §7 of the City Charter prohibit the City from taxing properties within its limited-purpose jurisdiction.

> 7.    *Allowing the City and ACC to impose a tax on the Homeowners' properties violates the Equal Protection Clause of the U.S. Constitution and the Equal Rights Clause of the Texas Constitution.*

323.    The Fourteenth Amendment of the United States Constitution and Article I, §3 of the Texas Constitution guarantee individuals the right to equal treatment under the law.

324.    In annexing the shoreline properties to the City's full-purpose jurisdiction, the City did not follow its regular procedures when annexing limited-jurisdiction property to its full-purpose jurisdiction. Instead, it provided substantially less process to the Homeowners than it provides to other property owners whose land is initially in the City's limited-purpose jurisdiction. The City had no rational basis for that different treatment and thus violated the Homeowners' rights to equal treatment under the law.

325.    Additionally, the Homeowners' rights to equal treatment under the law will be violated if the City and ACC are allowed to tax the Homeowners.

326.    The shoreline properties remain in the City's limited-purpose jurisdiction, subject to disannexation requests from affected property owners. The City and ACC are not collecting taxes from other similarly situated properties—those in the City's limited-purpose jurisdiction to which it does not provide full municipal services. There is no rational basis for treating the Homeowners' properties differently from other limited-purpose-jurisdiction properties.

327.    Alternatively, if the Homeowners' properties are now considered to be in the City's full-purpose jurisdiction, there is no rational basis for treating the Homeowners' properties differently than other full-purpose-jurisdiction properties. Like other full-purpose-jurisdiction properties, the City must provide the Homeowners with "all rights and privileges of all the citizens," which includes full municipal services—including the most valuable and important services of water, wastewater, and fire hydrants.

328.    The City's failure to provide the Homeowners with the same privileges it affords to other property owners in its full-purpose jurisdiction violates the Homeowners' equal protection rights.

    8.    *The City and ACC cannot prove each shoreline property is within their boundaries.*

329.    In repealing the 1986 Ordinance, the City claims the properties below the 504.9′ contour line along Lake Austin are within its full-purpose jurisdiction and therefore subject to taxation.

330.    The exact location of the City's boundary line along the 504.9′ contour line has never been ascertained.

331. The taxing units—here the City and ACC—have the burden to prove that all the land it seeks to tax is situated within its geographical boundaries.

332. The City and ACC cannot prove which shoreline properties—or which portion of such properties—fall below the 504. 9′ contour line.

333. Because the City and ACC cannot prove their entitlement to collect taxes from the Homeowners by showing the shoreline properties are located within the City's boundaries, the City and (as applicable) ACC cannot tax the Homeowners' properties.

## IX. PRAYER FOR RELIEF

334. For these reasons, the Homeowners respectfully request a final judgment that:

a. declares the Appraisal Review Board's denial of the Homeowners' protests unlawful and therefore void pursuant to §42.24 of the Texas Tax Code;

b. orders TCAD to correct the appraisal roll to delete the City and, for those shoreline properties located within the Eanes or Lake Travis school districts, ACC as taxing units and to certify those changes to the tax assessor-collector pursuant to §42.41 of the Texas Tax Code;

c. declares that TCAD cannot list the City and (for those shoreline properties located within the Eanes or Lake Travis school districts) ACC as taxing units for the Homeowners' properties unless and until the City properly annexes the properties for full purposes in accordance with Chapter 43 of the Texas Local Government Code and the City Charter;

d. awards the Homeowners reasonable and necessary attorneys' fees incurred in this action pursuant to §42.29 of the Texas Tax Code;

e. orders TCAD, pursuant to §42.43 of the Texas Tax Code, to refund to the Homeowners any taxes paid for City or (as applicable) ACC taxes for the 2020 tax year;

f. awards interest on any tax refund as a result of this action pursuant to §42.43 of the Texas Tax Code;

g. orders TCAD to correct the appraisal roll for the shoreline properties to establish equal appraisals conforming to §42.26 of the Texas Tax Code;

h.  awards all costs of court; and

i.  awards any other legal or equitable relief to which the Homeowners may show themselves to be justly entitled.

Dated: January 20, 2021

Respectfully submitted,

    /s/ Christopher S. Johns
Christopher S. Johns
State Bar No. 24044849
Christen Mason Hebert
State Bar No. 24099898
JOHNS & COUNSEL PLLC
14101 Highway 290 West, Suite 400A
Austin, Texas 78737
512-399-3150
512-572-8005 fax
cjohns@johnsandcounsel.com
chebert@johnsandcounsel.com

Lorri Michel
State Bar No. 14009460
MICHEL | GRAY | ROGERS LLP
812 West 11th Street, Suite 301
Austin, Texas 78701
512-477-0200
512-477-6636 fax
lorri@michelgray.com

*Attorneys for Plaintiffs*

Unofficial copy Travis Co. District Clerk Velva L. Price

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document has been sent via

email, CMRR, and/or e-file to the following on January 20, 2021:

Dustin L. Banks
State Bar No. 24064344
TRAVIS CENTRAL APPRAISAL DISTRICT
850 East Anderson Lane
Austin, Texas 78752
512-834-9317
litigation@tcadcentral.org

*Attorney for Defendant Travis*
*Central Appraisal District*

                              /s/ Christopher S. Johns
                              Christopher S. Johns

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

David Johns on behalf of Christopher Stephen Johns
Bar No. 24044849
djohns@johnsandcounsel.com
Envelope ID: 49885138
Status as of 1/22/2021 3:46 PM CST

Associated Case Party: BrentR.Bailey

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lorri Michel | | lorri@michelgray.com | 1/20/2021 9:05:18 PM | SENT |
| Christopher SJohns | | cjohns@johnsandcounsel.com | 1/20/2021 9:05:18 PM | SENT |
| David Johns | | djohns@johnsandcounsel.com | 1/20/2021 9:05:18 PM | SENT |
| Christen Hebert | | chebert@johnsandcounsel.com | 1/20/2021 9:05:18 PM | SENT |

Associated Case Party: JanetLynnBailey

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Shane Rogers | | shane@michelgray.com | 1/20/2021 9:05:18 PM | SENT |
| Kimberley Baldridge | | Kim@michelgray.com | 1/20/2021 9:05:18 PM | SENT |

Associated Case Party: Travis Central Appraisal District

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| TCAD LITIGATION | | litigation@tcadcentral.org | 1/20/2021 9:05:18 PM | SENT |

Unofficial copy Travis Co. District Clerk Velva L. Price

# Exhibit A:
# Property Descriptions

Unofficial copy Travis Co. District Clerk Velva L. Price

| Property ID | Owner | Address |
|---|---|---|
| 119628 | Robert W. and Valerie A. Beardsley | 2405 Westlake Drive, Austin, Texas 78746 |
| 119633 | Susan Cope Griffith | 2415 Westlake Drive, Austin, Texas 78746 |
| 119653 | Thomas W. Gilligan and Christie L. Skinner | 2455 Westlake Drive, Austin, Texas 78746 |
| 119693 | Lake Austin Marina I, L.P. | 2215 Westlake Drive, Austin, Texas 78746 |
| 120974 | Robert L. and Karen E. Depwe | 2508 Westlake Drive, Austin, Texas 78746 |
| 120980 | Robert L. and Karen E. Depwe | 2507 Westlake Drive, Austin, Texas 78746 |
| 120988 | Lance Hughes | 2609 Westlake Drive, Austin, Texas 78746 |
| 121772 | William M. and Leigh E. Hablinski | 2905 Westlake Cove, Austin, Texas 78746 |
| 121773 | Elizabeth and Shelby Carter III | 2909 Westlake Cove, Austin, Texas 78746 |
| 121780 | Bob E. and Kay R. Gregory | 2939 Westlake Cove, Austin, Texas 78737 |
| 121797 | HubBev, LLC | 2926 Westlake Cove, Austin, Texas 78746 |
| 122342 | Jack Dallas Holford | 3409 Westlake Drive, Austin, Texas 78746 |
| 122343 | Kay M. and Gordon R. McNutt Jr., Lolla M. Page, and the William Page Bypass Trust | 3411 Westlake Drive, Austin, Texas 78746 |
| 122347 | Menno and Christina Vermeulen | 3320 Westlake Drive, Austin, Texas 78746 |
| 122394 | Kay M. and Gordon R. McNutt Jr., and Lolla M. Page | 3413 Westlake Drive, Austin, Texas 78746 |
| 122395 | Clinton Bybee | 3415 Westlake Drive, Austin, Texas 78746 |
| 122402 | HubBev, LLC | 3317 Westlake Drive, Austin, Texas 78746 |
| 122403 | John C. Horton III | 3411 Westlake Drive, Austin, Texas 78746 |
| 123442 | The John S. Mayes Revocable Trust | 3715 Westlake Drive, Austin, Texas 78746 |
| 123522 | Menno and Christina Vermeulen | 4301 Michaels Cove, Austin, Texas 78746 |
| 123644 | Eugene P. Schoch III | 1907 Manana Street, Austin, Texas 78730 |
| 123646 | Bob A. Estes | 2001 Manana Street, Austin, Texas 78730 |
| 123647 | Gail Findlay | 2005 Manana Street, Austin, Texas 78730 |
| 123648 | Joshua Adam and Stephanie S. Fogelman | 2007 Manana Street, Austin, Texas 78730 |
| 123649 | Todd T. and Lori K. Trenasty | 2009 Manana Street, Austin, Texas 78730 |
| 123657 | The Richmond Family Trust | 2303 Manana Street, Austin, Texas 78730 |
| 123658 | D. Kirk and Sheryl R. Miller | 2305 Manana Street, Austin, Texas 78730 |
| 123693 | William L. and Linda Campbell | 1701 Manana Street, Austin, Texas 78730 |
| 123694 | William R. and Elizabeth Barnett Boebel | 1703 Manana Street, Austin, Texas 78730 |
| 123696 | The Clark Living T... | 1707 Manana Street, Austin, Texas 78730 |
| 123697 | Robert Shawn and Dianne Marie Breedlove | 1709 Manana Street, Austin, Texas 78730 |
| 123698 | T. Glenn and Erin Brougher Scott | 1711 Manana Street, Austin, Texas 78730 |
| 123702 | Wombwell Land Holdings LP | 1507 Manana Street, Austin, Texas 78730 |
| 123703 | David Archer McWhorter Jr. | 1509 Manana Street, Austin, Texas 78730 |
| 123704 | Archer McWhorter Jr. | 1511 Manana Street, Austin, Texas 78730 |
| 123706 | Jimmy Lee and Lora Reynolds | 1515 Manana Street, Austin, Texas 78730 |
| 123707 | Mark Preston Caudle and Molly Borden Caudle | 1601 Manana Street, Austin, Texas 78730 |
| 123708 | Kevin M. Cunningham | 1603 Manana Street, Austin, Texas 78730 |
| 123... | Brent R. and Janet Lynn Bailey | 1609 Manana Street, Austin, Texas 78730 |
| 123984 | Toni R. and Charles R. Spangler Jr. | 12417 River Bend #8, Austin, Texas 78732 |
| 123986 | Robert Sonheim | 12417 River Bend #16, Austin Texas 78732 |
| 123987 | Jason E. and Nanette A. Simmons | 12417 River Bend #15, Austin Texas 78732 |
| 123997 | Rob Ray Reid | 12505 River Bend, Austin, Texas 78732 |
| 124000 | Christopher Schultz | 12515 River Bend, Austin, Texas 78732 |
| 124046 | Charles D. and Shelly Orr Priebe | 13005 On the Lake Road, Austin, Texas 78732 |
| 125209 | Mark and Colleen Klingseisen | 3008 Rivercrest Drive, Austin, Texas 78746 |
| 125210 | Robert L. and Catherine E. Romano | 3006 Rivercrest Drive, Austin, Texas 78746 |

Unofficial copy from Travis Co. District Clerk Velva L. Price

| Property ID | Owner | Address |
|---|---|---|
| 125212 | Scott D. and Margot F. Ritchie | 3000 Rivercrest Drive, Austin, Texas 78746 |
| 125213 | Richard L. and Patricia B. Wambold | 2906 Rivercrest Drive, Austin, Texas 78746 |
| 125215 | James Jefferson Dean | 2902 Rivercrest Drive, Austin, Texas 78746 |
| 125218 | John H. Greenwood | 2806 Rivercrest Drive, Austin, Texas 78746 |
| 125220 | Gary P. and Frances P. Little | 2802 Rivercrest Drive, Austin, Texas 78746 |
| 125223 | Lyall Thomas Sinclair | 2702 Rivercrest Drive, Austin, Texas 78746 |
| 125250 | Lyall Thomas Sinclair | 3007 Rivercrest Drive, Austin, Texas 787... |
| 125256 | Jonathan L. Morgan | 3111 Ski Shores Terrace, Austin, Texas 78730 |
| 125270 | Lew D. and Dawnetta L. Hodge | 2307 Manana Street, Austin, Texas 78... |
| 125282 | William L. Reeb and Michaelle A. Cameron | 2603 Pearce Road, Austin, Texas 78730 |
| 125284 | Brent and Judy Harward | 2701 Pearce Road, Austin, Texas 78730 |
| 126432 | John B. and Margaret E. Pevateaux | 1306 Rockcliff Road, Austin, Texas 78746 |
| 126433 | Craig C. and Margaret M. Kuglen | 1310 Rockcliff Road, Austin, Texas 78746 |
| 126434 | The Donald R. Chapman Management Trust and Linda B. Shelton | 1314 Rockcliff Road, Austin, Texas 78746 |
| 126435 | Joseph W. Blandford, Patricia R. Blandford, and the Blandford Family Partnership | 1318 Rockcliff Road, Austin, Texas 78746 |
| 126439 | Daryl and Robin Ostrander | 1400 Rockcliff Drive, Austin, Texas 78746 |
| 126441 | The Elkhorn-South Trust | 1410 Rockcliff Drive, Austin, Texas 78746 |
| 126565 | Kent A. and Cheryl K. Savage | 1500 Rockcliff Road, Austin, Texas 78746 |
| 126837 | Ryan P. and Margaret Dumont | 3602 Rivercrest Drive, Austin, Texas 78746 |
| 126839 | Frank and Melinda M. Simmen | 6704 Pixie Cove, Austin, Texas 78746 |
| 126840 | Phillip M. and Melissa Cameron | 6705 Pixie Cove, Austin, Texas 78746 |
| 126846 | Numvula Holdings, LLC | 6706 Elfland Drive, Austin, Texas 78746 |
| 126849 | William and Alexandra Muehl | 6701 Elfland Drive, Austin, Texas 78746 |
| 126851 | Todd Lively | 6702 Leprechaun Drive, Austin, Texas 78746 |
| 126877 | Michael and Yolanda F. Patino | 6702 Troll Haven, Austin, Texas 78746 |
| 126878 | Aaron R. and Daryl F. Hoove | 6706 Troll Haven, Austin, Texas 78746 |
| 126881 | Joseph Dunlin | 6703 Troll Haven, Austin, Texas 78746 |
| 126882 | John P. Duffy and Stephanie C. Stokes | 3308 Rivercrest Drive, Austin, Texas 78746 |
| 126883 | Al and Joann Bentley | 3306 Rivercrest Drive, Austin, Texas 78746 |
| 126884 | James C. and Anna L. Root | 3304 Rivercrest Drive, Austin, Texas 78746 |
| 126887 | Gregory K. and Dawn Stone Crouch | 3206 Rivercrest Drive, Austin, Texas 78746 |
| 126890 | Jennifer G. and Thomas M. West Jr. | 3108 Rivercrest Drive, Austin, Texas 78746 |
| 126891 | The McAllister Management Trust | 3106 Rivercrest Drive, Austin, Texas 78746 |
| 126893 | The Rose Living Trust | 6704 Troll Haven, Austin, Texas 78746 |
| 126908 | G. Matt and Amelia J. Ralls | 3414 Robbins Road, Austin, Texas 78730 |
| 126913 | Iliana Fuller Johnson | 3115 Ski Shores Terrace, Austin, Texas 78730 |
| 126969 | Wesley G. Ritchie | 2201 Island Wood Road, Austin, Texas 78733 |
| 126970 | Gregory M. and Sharon L. Kronberg | 2205 Island Wood Road, Austin, Texas 78733 |
| 126973 | Glenn E. and Marsha Staats | 2311 Island Wood Road, Austin, Texas 78733 |
| 126974 | Edward D. and Gail R. Thomas | 2315 Island Wood Road, Austin, Texas 78733 |
| 126976 | Edward J. and Dorothy M. MacInerney | 2316 Island Wood Road, Austin, Texas 78733 |
| 126978 | Michael and Emily Sheehan | 2304 Island Wood Road, Austin, Texas 78733 |
| 126979 | Jeff R. and Anne Marie Hunt | 2204 Island Wood Road, Austin, Texas 78733 |
| 126981 | Jax B. Cowden | 2100 Island Wood Road, Austin, Texas 78733 |
| 128930 | Eric and Elizabeth Goldreyer | 1502 Rockcliff Road, Austin, Texas 78746 |
| 128931 | Alan and Michelle Smith | 1504 Rockcliff Road, Austin, Texas 78746 |
| 128932 | Mark and Naomi Tate | 1506 Rockcliff Road, Austin, Texas 78746 |

Unofficial copy of Travis Co. Distribution list of L. Price

| Property ID | Owner | Address |
|---|---|---|
| 128934 | Teri Niven Waters | 1510 Rockcliff Road, Austin, Texas 78746 |
| 128935 | The Janet Zand Revocable Trust | 1600 Rockcliff Road, Austin, Texas 78746 |
| 128936 | James M. and Jo Ann M. Wiersema | 1602 Rockcliff Road, Austin, Texas 78746 |
| 128943 | Amy and John Porter | 1704 Channel Road, Austin, Texas 78746 |
| 128944 | Amy and John Porter | 1706 Channel Road, Austin, Texas 78746 |
| 128945 | Austin Travis Williams and John Terrell Williams | 1742 Channel Road, Austin, Texas 78746 |
| 128950 | Tom Martin Davis III | 1752 Channel Road, Austin, Texas 78746 |
| 128952 | The Matthew T. Voss Revocable Trust | 1754 Channel Road, Austin, Texas 78746 |
| 128955 | Red Bud Partners, LP | 1751 Channel Road, Austin, Texas 78746 |
| 128968 | Mark and Kathy Mathias | 4108 Sandy Acre Road, Austin, Texas 78746 |
| 128976 | Eleanor Powell | 1810 Rockcliff Road, Austin, Texas 78746 |
| 128977 | Jim and Caren Upshaw | 1715 Channel Road, Austin, Texas 78746 |
| 128979 | Robert W. and Donna J. Talbot | 1719 Channel Road, Austin, Texas 78746 |
| 128980 | Robert W. and Donna J. Talbot | 4825 Laguna Lane, Austin, Texas 78746 |
| 128983 | Robert Dunbar | 4813 Laguna Lane, Austin, Texas 78746 |
| 128986 | Brent and Katherine Hunter | 4711 Laguna Lane, Austin, Texas 78746 |
| 128998 | Felix Erbring | 1714 Channel Road, Austin, Texas 78746 |
| 129000 | The TXLARC Beach Trust | 1610 Rockcliff Road, Austin, Texas 78746 |
| 129007 | David and Christy May | 1601 Rockcliff Road, Austin, Texas 78746 |
| 129008 | Katie May | 1511 Rockcliff Road, Austin, Texas 78746 |
| 129051 | Mary Austin Hewitt | 4009 Rivercrest Drive, Austin, Texas 78746 |
| 129117 | Scott R. Crawley | 3702 Rivercrest Drive, Austin, Texas 78746 |
| 129132 | The R & G Swisher Family Trust | 3601 Robbins Road, Austin, Texas 78730 |
| 129134 | Stephen E. Hambric | 3605 Robbins Road, Austin, Texas 78730 |
| 129158 | Martha R. and Doug Murrell Jr. | 2607 N River Hills Road #E, Austin, Texas 78733 |
| 129161 | Michael and Terri Frost | 2311 River Hills Road, Austin, Texas 78733 |
| 129165 | J.B. and Marilyn Goodwin | 2607 River Hills Road #D, Austin, Texas 78733 |
| 129605 | Robert S. and Marcie C. Zlotnik | 10706 River Terrace, Austin, Texas 78733 |
| 129608 | Stephen A. Pyhrr | 10806 River Terrace, Austin, Texas 78733 |
| 129610 | Lisa Snider | 10810 River Terrace, Austin, Texas 78733 |
| 129619 | Robert S. and Marcie C. Zlotnik | 10610 River Terrace, Austin, Texas 78733 |
| 134392 | Kathleen Suzanne Kenyon McConnachie | 3128 Edgewater Drive, Austin, Texas 78733 |
| 134393 | Conrad and Bernadine Bering | 3126 Edgewater Drive, Austin, Texas 78733 |
| 134394 | Richard A. Berkowitz, Judith A. Berkowitz, and Jason S. Berkowitz | 3124 Edgewater Drive, Austin, Texas 78733 |
| 134398 | The John and Shari Hodges Revocable Trust | 3102 Edgewater Drive, Austin, Texas 78733 |
| 134399 | Allen N. Steinle, Jr., Alfred A. Steinle, Jane Steinle Andrus, and Don W. Steinle | 3100 Edgewater Drive, Austin, Texas 78733 |
| 134400 | Kathy Ann Goss Johnston | 3018 Edgewater Drive, Austin, Texas 78733 |
| 134401 | Diana Zuniga | 3014 Edgewater Drive, Austin, Texas 78733 |
| 134402 | Ricky L. and Carolyn M. Jenkins | 3016 Edgewater Drive, Austin, Texas 78733 |
| 134403 | Diana Zuniga | 3012 Edgewater Drive, Austin, Texas 78733 |
| 134405 | Windler Family Partners LTD | 3010 Edgewater Drive, Austin, Texas 78733 |
| 134406 | Ted G. and Carol L. Thomson | 3008 Edgewater Drive, Austin, Texas 78733 |
| 134407 | The LaRue Olson Family Trust | 3006 Edgewater Drive, Austin, Texas 78733 |
| 134408 | Thomas P. and Marsha P. Mucks | 3004 Edgewater Drive, Austin, Texas 78733 |
| 134476 | EHSME Partners, LTD | 2910 Edgewater Drive, Austin, Texas 78733 |
| 134478 | Jo Ann Moore and the William R. Moore Trust | 2900 Edgewater Drive, Austin, Texas 78733 |
| 134479 | Carrie Ann Finch | 2806 Edgewater Drive, Austin, Texas 78733 |

Unofficial copy, Travis Co. District Court, Velva L. Price

| Property ID | Owner | Address |
|---|---|---|
| 143184 | Robert G. and Roberta H. Anding | 2105 Big Horn Drive, Austin, Texas 78734 |
| 366708 | Cary D. and Allyssa A. Juby | 407 Lago Verde Drive, Austin, Texas 78734 |
| 374865 | The R & R Trust | 3900 Island Knoll Drive, Austin, Texas 78746 |
| 374869 | Ricardo Jose Manllo Kuri | 2908 Westlake Cove, Austin, Texas 78746 |
| 375224 | Sara G. Austin | 2706 Edgewater Drive, Austin, Texas 78733 |
| 474420 | Donald and Kathryn O. Counts | 3925 Westlake Drive, Austin, Texas 78746 |
| 474421 | Kathryn O'Connor Counts | 3919 Westlake Drive, Austin, Texas 78746 |
| 495675 | Kurt M. and Cheryl R. Simons | 6707 Leprechaun Drive, Austin, Texas 78746 |
| 521635 | Cynthia and Steve Present | 12413 River Bend, Austin, Texas 78732 |
| 521701 | Kenneth K. and Lisa E. Ellis | 2700 Rivercrest Drive, Austin, Texas 78746 |
| 541280 | Juli N. and Everett J. Carmody, Jr. | 2329 Westlake Dr. Unit 5, Austin, Texas 78746 |
| 541281 | Ridge Harbor Properties, LLC | 2329 Westlake Drive #6, Austin, Texas 78746 |
| 541282 | The Berger Living Trust | 2329 Westlake Drive, Austin, Texas 78746 |
| 541283 | RD KD Family Partners, LP | 2329 Westlake Drive #8, Austin, Texas 78746 |
| 541284 | Justin H. and Ashley E. Hartley | 2315 A Westlake Drive #9, Austin, Texas 78746 |
| 541285 | Krista D. and Robert W. Dillard III | 2329 Westlake Drive #10, Austin, Texas 78746 |
| 541286 | Paul B. and Peggy A. Pender | 2329 Westlake Drive #11, Austin, Texas 79846 |
| 541287 | David J. and Jody B. Jones | 2329 Westlake Drive #12, Austin, Texas 78746 |
| 541288 | Robert O. and Jill L. Williams | 2305 Westlake Drive #A, Austin, Texas 78746 |
| 541289 | Michael Lehrter | 2329 Westlake Drive #14, Austin, Texas, 78746 |
| 541302 | Mark Jason Harries | 3804 Island Way #7, Austin, Texas 78746 |
| 565389 | Michael and Janice Panoff | 14316 Flat Top Ranch Road, Austin, Texas 78732 |
| 709016 | BRAMS Fund I LLC | 6901 Greenshores Drive #3, Austin, Texas 78730 |
| 709017 | Elma and Joe F. Vaughan Jr. | 6901 Greenshores Drive #2, Austin, Texas 78730 |
| 709031 | Grant L. Richards and Karen L. Kofod | 6919 Greenshores Drive, Austin, Texas 78730 |
| 726701 | Ryan N. and Shannon L. Gustafson | 3510 Rivercrest Drive, Austin, Texas 78746 |
| 726702 | Ryan N. and Shannon L. Gustafson | 6700 Elfland Drive, Austin, Texas 78746 |
| 768960 | Eric and Daisa Hoffman | 14524 Flat Top Ranch Road, Austin, Texas 78732 |
| 777066 | William and Elizabeth Budinez | 1905 Manana Street, Austin, Texas 78730 |
| 834337 | Nicholas Wayne McCaire | 1201 N. Weston Lane, Austin, Texas 78733 |
| 841218 | Shain and Melody McCaig | 921 Cypress Grove Drive, Austin, Texas 78732 |
| 841219 | Shain and Melody McCaig | Cypress Grove Drive, Austin, Texas 78732 |
| 895360 | The 3705 Westlake Trust | 3701 Westlake Drive, Austin, Texas 78746 |

Unofficial copy Travis Co. District Clerk Velva L. Price

# EXHIBIT B

# MINUTES
## Special Meeting - Board of Trustees
### May 16, 2005

In accordance with the terms and provisions of the Texas Open Meetings Act, Chapter 551 of Texas Government Code, the Board of Trustees of the Austin Community College District convened in public session on Monday, March 21, 2005, at 6:07 p.m. in the Board Room (201) of the Highland Business Center of Austin Community College located at 5930 Middle Fiskville Road, Austin, Texas, with the following members present: Dr. Barbara P. Mink, Chair/Presiding Officer; Mr. John F. Hernandez, Board Vice Chair; Dr. Lillian J. Davis; Mr. John F. Hernandez; Mr. Allen H. Kaplan; Ms. Nan McRaven; Mr. Rafael Quintanilla; Mr. Jeffrey Richard; and Dr. John Worley.

It is further found and determined that in accordance with the policies and orders of this Board, the notice of this meeting has been posted and return thereof made pursuant to the terms and provisions of the Texas Open Meetings Act, Chapter 551 of the Texas Government Code, and there has been full compliance with the terms and provisions of said act, including the timely posting of the subjects of this meeting.

## Agenda Item 8067
## Approval of Resolution Canvassing the Returns and Declaring the Results of the May 7, 2005, Special Election of the Austin Community College District and Annexing for Junior College Purposes Only that Portion of the City of Austin Not Presently Included in the Austin Community College District

Chair Mink introduced the item and Ms. Linda Young, Special Assistant to the President for Governmental and Community Relations, called attention the precinct-by-precinct returns of the May 7, 2005, Election.

| ACC PROPOSITION 202 of 202 Precincts Reporting | Early Voting | | Election Day | | Total Vote | |
|---|---|---|---|---|---|---|
| FOR: | 19,608 | 79.08% | 32,339 | 79.59% | 51,947 | 79.39% |
| AGAINST: | 5,188 | 20.92% | 8,294 | 20.41% | 13,482 | 20.61% |
| Total Votes Counted in this Race: | 24,796 | | 40,633 | | 65,429 | |

**Trustees Rivera moved and Lillian Davis seconded that:**
**MOTION:  The Board of Trustees approve an Order Canvassing the Returns, Declaring the Results of the May 7, 2005, Special Election of the Austin Community College District.**
**VOTE:  The motion passed on a unanimous vote of 9-0.**
**FOR:  Lillian J. Davis, John F. Hernandez, Allen H. Kaplan, Nan McRaven, Barbara P. Mink, Rafael Quintanilla, Jeffrey Richard, Veronica Rivera, and John Worley.**
**AGAINST:  None.**

***********

### AN ORDER CANVASSING THE RETURNS,
### DECLARING THE RESULTS OF THE MAY 7, 2005 SPECIAL ELECTION
### OF THE AUSTIN COMMUNITY COLLEGE DISTRICT AND
### ANNEXING FOR JUNIOR COLLEGE PURPOSES ONLY THAT PORTION OF THE CITY OF AUSTIN NOT PRESENTLY INCLUDED IN THE AUSTIN COMMUNITY COLLEGE DISTRICT

THE STATE OF TEXAS            §
                             §
COUNTY OF TRAVIS             §
                             §
COUNTY OF WILLIAMSON         §
                             §

On this the 16th day of May, 2005, the Board of Trustees of the Austin Community College District ("ACC") convened in

regular session, open to the public at the ACC District Administrative Offices, 5930 Middle Fiskville Road, Austin, Texas, with a quorum present, and among other proceedings had by said Board of Trustees was the following:

**WHEREAS**, on May 7, 2005, the Special Election was held to annex for junior college purposes only, that portion of the City of Austin not presently included in the Austin Community College District; and

**WHEREAS**, the Board has reviewed and investigated all matters pertaining to this election, including the calling, notices, election officers, holding, and reports thereof under the Joint Election Agreement with Manor Independent School District, the City of Austin and the City of Jonestown; and

**WHEREAS**, the Board hereby canvasses the returns of this election, at which the proposed annexation of that portion of the City of Austin not presently included in the District was submitted to all resident, qualified voters of the District and was submitted to all resident qualified voters of that portion of the City of Austin not included within the existing boundaries of ACC for their vote thereupon; and

**WHEREAS**, the Board has diligently inquired into the poll lists and the official election returns which were duly and lawfully made to the Board by the judges and clerks holding and conducting such election; the poll lists and the official election returns showing separately the votes cast in the election; and

**WHEREAS**, from these returns, the Board hereby finds that the following votes were cast in the Elections by voters who were resident, qualified voters of the District and that portion of the City of Austin not currently included in the District.

ANNEXING FOR JUNIOR COLLEGE PURPOSES
ONLY, THAT PORTION OF THE CITY OF AUSTIN
THAT IS NOT PRESENTLY INCLUDED WITHIN
THE CURRENTLY EXISTING BOUNDAIRES OF
AUSTIN COMMUNITY COLLEGE DISTRICT

**VOTES CAST FOR**      51,947

**VOTES CAST AGAINST**      13,482

**NOW, THEREFORE**, IT IS ACCORDINGLY FOUND, DECLARED, ORDERED, AND RESOLVED BY THE BOARD OF TRUSTEES OF THE AUSTIN COMMUNITY COLLEGE DISTRICT THAT:

<u>**SECTION 1.**</u>  The Board officially finds, determines, and declares that the election was duly and properly conducted, that proper legal notice of such election was duly given in the English language and the Spanish language (to the extent required by law), that proper election officers were duly appointed prior to the election, that the election was duly and legally held, that all resident, qualified voters of the District and that all resident, qualified voters of that portion of the City of Austin not presently included in the District were permitted to vote at the election, that due returns of the results of the election had been made and delivered, and that the Board has duly canvassed such returns, all in accordance with the laws of the State of Texas and of the United States of America, and the resolution calling the election.

<u>**SECTION 2.**</u>  The Board officially finds and determines that the vote to annex the portion of the City of Austin that is not presently included within the currently existing boundaries of Austin Community College prevailed; that the election was duly called; that proper notice was given; and that the election was held in all aspects in conformity with the law.

<u>**SECTION 3.**</u>  The Board hereby declares the territory of the City of Austin that was outside the boundary of the Austin Community College District annexed to Austin Community College District for junior college purposes only.

<u>**SECTION 4.**</u>  The recitals contained in the preamble hereof are hereby found to be true, and such recitals are hereby made a part of this Order for all purposes and are adopted as a part of the judgment and findings of the Board.

<u>**SECTION 5.**</u>  It is officially found, determined, and declared that the meeting at which this Order is adopted was open to the public and public notice of the time, place and subject matter of the public business to be considered at such meeting, including this Order, was given, all as required by Chapter 551, as amended, Texas Government Code.

<u>**SECTION 6.**</u>  This Order shall be in force and effect from and after its final passage and it is so resolved.

**PASSED, ADOPTED AND APPROVED,** this the 16th day of May, 2005.

AUSTIN COMMUNITY COLLEGE DISTRICT

_____
Barbara Mink, Chair, Board of Trustees

ATTEST:

_____
Jeffrey Richard, Secretary, Board of Trustees


(DISTRICT SEAL)

**\*\*\*\*\*\*\*\*\*\***

**Trustees Rafael Quintanilla moved and Veronica Rivera seconded that:**
**MOTION: The Board of Trustees approve Annexation for Junior College Purposes Only that Portion of the City of Austin Not Presently Included in the Austin Community College District.**
**VOTE: The motion passed on a unanimous vote of 9-0.**
**FOR: Lillian J. Davis, John F. Hernandez, Allen H. Kaplan, Nan McRaven, Barbara P. Mink, Rafael Quintanilla, Jeffrey Richard, Veronica Rivera, and John Worley.**
**AGAINST: None.**

Trustees discussed the success of the referendum and expressed appreciation to all individuals who assisted in the successful election. The Board also recognized Neil Vickers, Director of Finance and Budgeting, who found the language to make the referendum possible.


# Agenda Item 8068
# Discussion and Possible Action on Search Process for and/or Appointment of Replacement of College President
Chair Mink introduced the item.
**Trustees Nan McRaven moved and Lillian Davis seconded that that the Board of Trustees take from the table a motion made at the May 2, 2005, Regular Meeting of the Board of Trustees:**
**Motion: Dr. Stephen Kinslow be the sole finalist for the President of Austin Community College and that the Board of Trustees meet this evening with Dr. Kinslow in Executive Session to discuss the terms of the position. I further move that the tenure of this position, which will be part of this term, not exceed two years. Additionally, I move that the Board of Trustees begin a presidential search for a new, long-term President-- "long-term" is key here--not later than the Fall, third quarter, of 2006.**

## Recess
The Board of Trustees of Austin Community recessed into Executive Session at 6:22 p.m. related to personnel matters, including appointment of the College President, pursuant to Government Code 551.074.

## Reconvene
The Board of Trustees of Austin Community College reconvened in public session at 6:59 p.m. pursuant to Texas Government Code 551.

# Agenda Item 8068 (continued)
# Discussion and Possible Action on Search Process for and/or Appointment of Replacement of College President

**Trustee Veronica Rivera moved and Jeffrey Richard seconded that:**
**SUBSTITUTE MOTION: The Board of Trustees postpone action on this item until the next Regular Board meeting to continue feedback and get additional testimony from the community.**
**Trustees discussed the Substitute Motion.**

**VOTE:  The motion failed on a vote of 5-4.**
**FOR:  Allen Kaplan, Jeffrey Richard, Veronica Rivera, and John Worley.**
**AGAINST:  Lillian Davis, John Hernandez, Nan McRaven, Barbara Mink, and Rafael Quintanilla.**

**Trustee Rafael Quintanilla requested a Friendly Amendment to the Main Motion.**
**FRIENDLY AMENDMENT:  Add as a last sentence to the Main Motion:  "The process of launching the actual advertisement for a President would start on January 1, 2006.**
**Trustees Nan McRaven and Lillian Davis accepted the Friendly Amendment."**

**MAIN MOTION WITH FRIENDLY AMENDMENT:  Dr. Stephen Kinslow be the sole finalist for the President of Austin Community College.  I further move that the tenure of this position, which will be part of this term, not exceed two years.  Additionally, I move that the Board of Trustees begin a presidential search for a new, long-term President--"long-term" is key here--not later than the Fall, third quarter, of 2006. The process of launching the actual advertisement for a President would start on January 1, 2006.**
Trustees discussed the motion.
**VOTE:  The Main Motion, as amended, passed on a vote of 5-4.**
**FOR:  Lillian Davis, John Hernandez, Barbara Mink, Nan McRaven, and Rafael Quintanilla.**
**AGAINST:  Allen Kaplan, Jeffrey Richard, Veronica Rivera, and John Worley.**

Dr. Kinslow stated that he was completely committed to Austin Community College and looked forward to leadership opportunities in this period.  He said he appreciated that this was a difficult decision for the Board, and looked forward to working with the Board and all of the internal and external constituencies to advance Austin Community College.

## Adjournment
Having no motion before the Board, the May 16, 2005, Special meeting of the Austin Community College Board of Trustees was adjourned at 7:20 p.m.

## Approved By
Jeffrey K. Richard