# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **JUDY HARWARD, BRENT HARWARD, et al.,** | § | |
| *Plaintiffs* | § | |
| | § | **No.  A-21-CV-00095-RP** |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF AUSTIN,** | § | |
| *Defendant* | | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court is Defendant City of Austin's Rule 12(b)(1) and 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 41; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.      BACKGROUND

This case involves the City of Austin's treatment of certain properties along the Colorado River, along the portion that is called Lake Austin, as within its jurisdiction for taxing purposes. The City's treatment of the property in issue has a long history, which is set forth in Plaintiffs' Second Amended Complaint as follows:

· The City of Austin was incorporated in 1839. Dkt. 37, at ¶268.

· In 1891, the Texas Legislature reincorporated the City and "extend[ed]" the City's boundaries westward along the Colorado River "10 varas" (approximately 27.78

feet) from the ordinary water level on each bank of the river for the limited purpose of allowing the City to construct and maintain a dam. *Id.*, at ¶ 271.

• After the land within 10 varas of the Colorado River was added to the City's jurisdiction in 1891, the City regulated that land for limited purposes but did not tax it—or even list it on the tax rolls as taxable property. *Id.*, at ¶¶ 272, 277, 281, 386.

• In 1928, the City voted to amend its charter to redefine its boundaries from "10 varas" from the high water mark to "504.9 feet above mean sea level contour line" on both banks. *Id.*, at ¶ 278.

• In 1985, the City Auditor listed the shoreline properties on the City's tax appraisal roll for the first time. *Id.*, at ¶¶ 306-08, 387.

• In 1986, the City passed an ordinance "declaring the limited purpose jurisdiction status of all shoreline properties" to resolve any "confusion" regarding the legal status of the shoreline properties. *Id.*, at ¶¶ 309-11.

• The 1986 Ordinance, recognizing that "by an 1891 legislative enactment, a portion of the Lake Austin shoreline properties between the normal conservation pool level of lake Austin and the 504.9' mean sea level contour line was included within the limits of the City of Austin," and that "in 1928 the City of Austin redefined the boundaries of the corporate City limits to specifically include all lands along lake Austin and below 504.9' mean sea level" also stated the City would "apply the same tax collection policy"—that the shoreline properties were not taxable—at least until "all City services are available for said tracts." *Id.*, at ¶ 312; Dkt. 41, at 24-25.

• From 1986 to 2019, the City did not tax or provide full municipal services to the properties—and still fails to do so. Dkt. 37, at ¶¶317-24.

• In 2019, the City repealed the 1986 Ordinance, in doing so stating that "[t]he properties identified in Ordinance No. 860130-A are within the City's full-purpose jurisdiction and have been at all times since the 1891 Act of Incorporation." *Id.*, at ¶ 336.  The City was added as a taxing unit to Plaintiffs' properties, which were already on County tax rolls, making the properties subject to City taxes.

• After the Ordinance was repealed, some Plaintiffs sued the Travis Central Appraisal District, but the parties agreed to abate that suit in favor of the instant suit. Dkt. 41-3. Plaintiffs did not file direct actions in state district court.

Plaintiffs, who are property owners along the Colorado River whose properties are now subject to City of Austin taxes, now sue pursuant to 41 U.S.C. § 1983 asserting: (1) violations of their Fourteenth Amendment due process rights because the Repeal Ordinance changes the status of their properties from extraterritorial or limited purpose jurisdiction to full-purpose jurisdiction; (2) violations of their Fourteenth Amendment due process rights because the City failed to follow the procedures mandated by state and local law in annexing property; (3) violations of their Fourteenth Amendment due process right to fair notice and prohibition on vague laws because the City failed to perform a survey identifying which properties actually fall within the City's full-purpose jurisdiction and taxing authority; (4) violations of their Fourteenth Amendment equal protection rights because the City has provided specific processes to others when converting property to full-

jurisdiction and did not provide that process to these property owners; (5) violations of their Fourteenth Amendment equal protection rights because the City converted the Plaintiffs' property to full-service jurisdiction without providing full municipal services, and does not impose municipal taxes on other property owners who also do not receive full municipal services; (6) violations of the Takings Clause of the Fifth Amendment alleging a property interest in their land's extraterritorial-jurisdiction or limited-jurisdiction status; and (7) violations of the Ex Post Facto Clause of the Constitution.

Plaintiffs request declaratory relief pursuant to 28 U.S.C. § 2201 that: (1) the Repeal Ordinance violates Chapter 43 of the Texas Local Government Code and thus the shoreline properties remain outside the City's taxing authority; (2) the Repeal Ordinance violates the 1913 Act and § 43.136 of the Texas Local Government Code and therefore the properties are not subject to municipal taxation by the City; (3) the Repeal Ordinance violates the Austin City Charter and thus the shoreline properties are outside the City's taxing jurisdiction or are subject to disannexation requests; (4) the Repeal Ordinance violates the Texas Constitution's prohibition on retroactive laws; (5) the Repeal Ordinance violates the Texas Constitution's Due Course of Law Clause; (6) the Repeal Ordinance violates the Texas Constitution's Equal Rights Clause; and (7) the shoreline properties remain in the City's extraterritorial or limited-purpose jurisdiction pursuant to the Texas Local Government Code and the Austin City Charter.

Plaintiffs also assert claims under Texas law including: (1) violations of the Takings Clause of the Texas Constitution; (2) violation of the Texas Open Meetings Act; and (3) a petition for disannexation.

## II.    LEGAL STANDARDS

### A.    12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B.    12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a

5

12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her

6

claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III.    DISCUSSION

### A.    Tax Injunction Act

The City's first argument is that this case should be dismissed pursuant to the Tax Injunction Act. The Tax Injunction Act states that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The TIA acts as a broad restriction on federal suits that impede the assessment, levy, or collection of any tax under state or local law. *Hibbs v. Winn*, 542 U.S. 88, 100 n.1 (2004); *see also Smith v. Travis Cnty. Educ. Dist.*, 968 F.2d 453, 455 (5th Cir. 1992) (citing *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982)); *Home Builders Ass'n of Miss.*, 143 F.3d at 1010 n.6 ("It is well-settled that [the TIA] applies not only to taxes imposed by states, but also to those imposed by municipalities."). Indeed, the Fifth Circuit has determined that "[t]he act imposes drastic limitations on the federal judiciary's ability to meddle with a local concern as important and sensitive as the collection of taxes." *Id.* at 1010. Generally, "a broad

construction of 'tax' is necessary to honor Congress's goals in promulgating the TIA." *Henderson v. Stalder*, 407 F.3d 351, 356 (5th Cir. 2005).

The TIA bars federal district courts from granting declaratory as well as injunctive relief in cases challenging state, or in this case municipal, tax systems. *Grace Brethren Church*, 457 U.S. at 408. Taxpayers also are barred by the principles of comity from asserting § 1983 actions against the validity of state tax systems in federal court. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981). Thus, the TIA bars the district court from asserting jurisdiction over a tax case unless the State fails to supply a "plain, speedy and efficient remedy" for the property owners' claims. *Smith v. Travis Cnty. Educ. Dist.*, 968 F.2d 453, 456 (5th Cir. 1992).

### B.    Tax Case or Annexation Case?

The parties dispute whether this case is a tax case or an annexation case. The City argues that Plaintiffs' complaint is that the City is requiring them to pay property taxes, that the relief sought would result in them not having to pay future City taxes as well as taxes already assessed, and therefore the suit is over a "tax." Dkt. 41, at 5. The City maintains that the TIA "proscribe[s] suits for declaratory relief that would thwart state tax collection." *Levin v. Com. Energy, Inc.*, 560 U.S. 413, 424 n.4 (2010). And that the TIA applies even when the "effect of the suit will relieve the taxpayer's burden only indirectly." 17A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 4237 (3d ed.) (collecting cases).  The City points out that although Plaintiffs maintain that their suit is about annexation and not taxation, and

8

that they seek declarations that their property is within the City's extraterritorial or limited-purpose jurisdiction, the word "tax" appears over 100 times in Plaintiffs' Second Amended Complaint. Dkt. 41, at 6. The crux of Plaintiffs' complaint, the City contends, is that they are newly required to pay City property taxes after not having done so for decades. The City points out is that if Plaintiffs prevail, the result will be that Plaintiffs will not be required to pay City taxes, and that the City will be deprived of revenue from those properties.

Plaintiffs argue that the City, after treating the shoreline properties as outside City limits or within its limited-purpose jurisdiction for over 130 years, passed the 2019 Ordinance repealing the 1986 City Ordinance, declaring that the properties had been in the City's full-purpose jurisdiction "at all times since 1891," attempted to change the property's status retroactively. Plaintiffs argue this act violated their federal and state constitutional rights, including the rights to substantive due process, procedural due process and equal protection. Dkt. 48, at 2. Plaintiffs argue that they are unable to vindicate their claims in state court because: (1) the City avoided the annexation process by declaring the legal status of the shoreline properties as always within its jurisdiction; and (2) Texas law bars the City as a party in state-court proceedings to protest their taxes. *Id.* Plaintiffs argue that if the federal court declines review, the Plaintiffs will have no remedy, because they have nowhere to sue the City to vindicate their constitutional and other legal rights.

In assessing an Anti-Injunction Act[1] case, the Supreme Court stated, "we inquire not into a taxpayer's subjective motive, but into the action's objective aim—essentially, the relief the suit requests." *CIC Services, LLC v. Internal Revenue Serv.*, 141 S. Ct. 1582, 1589 (2021). In this case, the relief requested includes "a declaration that the City's notices to TCAD that the shoreline properties are within their taxing unit boundaries are invalid," and "a writ of mandamus instructing the City to direct TCAD that the shoreline properties are in the City's extraterritorial or limited-purpose jurisdiction." Dkt. 37, at 86. The undersigned finds that the City is correct, and the crux of this suit is taxes. *See Washington v. Linebarger, Goggan, Blair, Pena & Sampson, LLP*, 338 F.3d 442, 444 (5th Cir. 2003) (holding the TIA is not limited to suits directly challenging "taxes only," but also extends to "the broader activities of assessing, levying, and collecting taxes"); *see, e.g.*, *Dawson v. Childs*, 665 F.2d 705, 710 (5th Cir. 1982) (TIA barred attempt to enjoin state tax lien); *Hammonds v. Dallas Cnty.*, 815 F. App'x 787, 788 (5th Cir. 2020).

Plaintiffs argue that this case is controlled by *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1 (2015), and that the TIA does not bar challenges to the City's treatment of the tax status of the Plaintiffs' properties. In *Direct Marketing*, the plaintiff sought to enjoin a Colorado law that required retailers that do not collect sales or use tax to notify customers of their use-tax liability and to report that tax information to

---

[1] The Court further noted that the Tax Injunction Act is modeled on the Anti-Injunction Act, which limits injunctive relief against federal tax collection. The Court stated that it assumed that the words used in both Acts, including "assessment" and "collection" are "generally used in the same way." *CIC Services*, 141 S. Ct. 1589, n.1 (quoting *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1 (2015)).

customers and the state. *Id.* at 4. The Supreme Court noted that "[t]he TIA is keyed to the acts of assessment, levy, and collection themselves" and found that the notice and reporting obligations at issue were part of information gathering, which is a phase of tax administration that occurs before assessment, levy, or collection. *Id.* at 8-12. The Court acknowledged that enforcement of the law "may improve Colorado's ability to assess and ultimately collect its sales and use taxes from consumers," *id.* at 11, but held that a suit seeking to enjoin its enforcement would, if successful, "merely inhibit[ ]" those acts as opposed to "restrain" them and thus is not barred by the TIA, *id.* at 14. Plaintiffs liken the determination of the tax-status of their properties and the City's action in notifying TCAD of the taxability of their properties to the Colorado reporting requirement, and assert that the City's actions is not an effort to assess, levy, or collect taxes, but is a predicate act, and therefore their challenge falls outside the scope of the TIA.

The undersigned finds that *Direct Marketing* is not determinative of this case. First, *Direct Marketing* specifically held that the terms "assessment" and "collection" do not refer to reporting requirements. Rather, such "information gathering" is distinct from and occurs before these other stages of the taxation process. *Id.* at 1129-31. This case does not involve a reporting requirement or "information gathering"; it involves an ordinance that effectively requires Plaintiffs to pay City taxes.[2] Second,

---

[2] *See Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1120 (10th Cir. 2017) (noting that Justice Ginsburg's concurrence in *Direct Marketing* would limit that case to its unique facts as it noted that the retailers were "not challenging [their] own or anyone else's tax liability or tax collection responsibilities," and explained that "[a] different question would be posed ... by a suit to enjoin reporting obligations imposed on a taxpayer ... in lieu of a direct challenge to an 'assessment.'" *Direct Mktg.*, 135 S. Ct. at 1136 (Ginsburg, J., concurring)).

the Court in *Direct Marketing* held that the term "restrain" means to "prohibit" or "stop" not merely to inhibit. *Id.* at 1132. It did so because the term "'restrain' acts on a carefully selected list of technical terms" (e.g., "assessment" and "collection"), not "an all-encompassing term, like 'taxation.'" *Id.* To adopt a broader definition, the Court explained, would "defeat the precision of that list, as virtually any court action related to any phase of taxation" could "inhibit" tax collection. *Id.* In this case, Plaintiffs have been assessed City taxes based on the City Ordinance stating their properties are taxable. Accordingly, the relief requested by Plaintiffs would not merely "inhibit" tax collection by the City, it would "restrain" or prohibit it. The crux of Plaintiffs' claims in this case seek relief from City taxes, and the TIA applies.

## C.   Whether State Court Provides a "Plain, Speedy and Efficient" Remedy

For the TIA to apply, there must also be a "plain, speedy and efficient" remedy in state court. 28 U.S.C. § 1341. The City argues that this language has been construed narrowly to require only that the remedy "provide[ ] the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514 (1981). The City cites *City of Houston v. Standard-Triumph Motor Co.*, 347 F.2d 194, 195-96 (5th Cir. 1965), cert. denied, 382 U.S. 974 (1966), and *Dawson v. Childs*, 665 F.2d 705, 707, 710 (5th Cir. 1982), for the proposition that the Fifth Circuit has already concluded that Texas state court procedures are "plain, speedy and efficient." The City argues that this precedent binds the Court. 28 U.S.C. § 1341; *see also Hammonds v. City of Corpus Christi, Tex.*, 226 F. Supp. 456, 459 (S.D. Tex. 1964)

("The Texas remedies have been held to be completely adequate."), aff'd, 343 F.2d 162 (5th Cir. 1965), cert. denied, 343 F.2d 162 (1965).

Plaintiffs respond that the cases cited by the City relate to state remedies available for particular claims and not a general endorsement of Texas state court remedies as "plain, speedy and efficient." Dkt. 48, at 5. Plaintiffs assert that Texas courts provide no adequate remedy for the Plaintiffs' claims because: (1) Texas's tax protest system, which they identify as their only state court remedy, prevents them from challenging the City's violation of their federal rights directly; (2) Texas's *quo warranto* scheme, as argued by the City, risks depriving the Plaintiffs of the opportunity to raise their federal constitutional claims.

A plaintiff seeking to litigate in federal court in the face of the TIA bears the burden of demonstrating the insufficiency of the remedy available in the state court system. *See Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 340-41 (1990). Plaintiffs argue that the Texas Tax Code provides the exclusive remedy for them to bring any disputes involving "identification of the taxing units in which the owner's property is taxable." Tex. Tax Code §41.41(a)(6). Plaintiffs argue that they are required to protest their taxes to an appraisal review board, which is the administrative body with exclusive jurisdiction over tax protests, *id.* § 25.22, and following an ARB decision, they may appeal the identification of taxing units to Texas district court, but that appeal can only be brought against the appraisal district, not against taxing units themselves, including the City of Austin. *Id.* §§ 42.01(a)(1)(A), 42.21(b). Plaintiffs maintain that Texas's remedy—the tax-protest suit—thus forces

them to litigate their federal constitutional claims, as well as their state constitutional and statutory claims, against a third party, the Travis Central Appraisal District, when their claims are against the City.

The City responds that while the tax protest system requires exhaustion of administrative remedies before bringing certain tax claims, not all of Plaintiffs' claims in this suit require exhaustion. The City points out that state and federal constitutional and civil rights claims do not require administrative exhaustion. The City is correct. *See Clark v. Andrews Cnty. Appraisal Dist.*, 76 F. App'x 525, 526 (5th Cir. 2003) (finding Fifth and Fourteenth Amendment challenges against county taxing authorities could be adequately adjudicated in Texas state court); *McQueen v. Bullock*, 907 F.2d 1544, 1550 (5th Cir. 1990) (noting that "Texas has a vast arsenal to assure orderly adjudication of serious federal constitutional questions" and holding that Texas courts do not demand the exhaustion of administrative remedies when the agency in issue is not equipped to remedy the injury at stake, and have jurisdiction over claims that an agency contravened constitutional imperatives); *Hammonds*, 815 F. App'x at 788 (noting the Fifth Circuit has consistently applied the TIA to bar constitutional and civil rights claims).

Moreover, under Texas law, an aggrieved party is excused from exhausting its administrative remedies if certain exceptions apply: (1) where an injunction is sought and irreparable harm would result; (2) where the administrative agency cannot grant the requested relief; (3) when the issue presented is purely a question of law; (4) where certain constitutional issues are involved; and (5) where an administrative

agency purports to act outside its statutory powers. *See Gibson v. Waco Indep. Sch. Dist.*, 971 S.W.2d 199, 201-02 (Tex. App.—Waco 1998) (enumerating the exceptions), vacated on other grounds, 22 S.W.3d 849 (Tex. 2000); *see also Strayhorn v. Lexington Ins. Co.*, 128 S.W.3d 772, 780 (Tex. App.—2004), aff'd, 209 S.W.3d 83 (Tex. 2006); *Appraisal Review Bd. of El Paso County Cent. Appraisal Dist. v. Fisher*, 88 S.W.3d 807 (Tex. App.—El Paso 2002, pet. denied) (stating Texas courts have historically asserted jurisdiction over tax suits where the taxpayer alleges a violation of his or her constitutional rights); *Larry Koch, Inc. v. Texas Natural Res. Conservation Comm'n*, 52 S.W.3d 833, 839-40 (Tex. App.—Austin 2001, pet. denied). Plaintiffs have failed to establish that none of these exceptions apply.

Additionally, the City points out that even if Plaintiffs were required to exhaust their administrative remedies in state court before bringing suit, they would be required to exhaust those some remedies before proceeding to federal court. Moreover, Plaintiffs have filed tax protest suits and suit against the ARB in state district court, but they have not attempted to file a separate suit against the City bringing their state and federal constitutional and civil rights claims. The tax protest system is not the only avenue for Plaintiffs' claims, and accordingly, Plaintiffs' arguments fail.

The parties additionally dispute the application of Texas's *quo warranto* requirement.[3] The City argues that Plaintiffs' claims should be dismissed for lack of

---

[3] The purpose of a *quo warranto* proceeding is to question the right of a person or corporation, including a municipality, to exercise a public franchise or office. *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436-37 (Tex. 1991). *Quo warranto* proceedings are brought in the name of the State by the attorney general or a district or county attorney. Tex. Civ. Prac. &

subject matter jurisdiction because procedural defects in annexation can only be challenged by the Attorney General via a *quo warranto* action, unless the annexation is wholly void. *Alexander Oil*, 825 S.W.2d at 436. Thus, the City argues that Plaintiffs do not have standing to bring an annexation claim, because procedural irregularities in an annexation cannot be brought by a private party. Dkt. 41, at 12.

Plaintiffs respond that Texas's *quo warranto* requirement, as applied by the City, would impede the Plaintiffs' ability to protect their rights. They assert that the *quo warranto* doctrine does not apply in this case because Plaintiffs assert that the City's actions are void and not voidable. Plaintiffs complain that "the City's strategy is clear: ask the Court to order the Homeowners to state court on the theory that 'plain speedy and efficient' remedies are available, and then argue to state courts that no such remedies are permitted." Dkt. 48, at 8. Plaintiffs argue that the uncertainty compounds whether their claims would ever be heard in state court and compromises their ability to raise their federal constitutional claims. Once again, it is Plaintiffs' burden to establish the insufficiency of the remedy available in the state court system. *See Franchise Tax Bd.,* 493 U.S. at 331. Plaintiffs have not shown that they have requested the Attorney General to instigate a *quo warrant*o proceeding. Additionally, they argue the *quo warranto* requirement does not even apply in this

---

Rem. Code §§ 66.001-.003. *Quo warranto* proceedings serve the purpose of avoiding "the specter of numerous successive suits by private parties attacking the validity of annexations." *Alexander Oil Co.*, 825 S.W.2d at 437. Because judgments in suits brought by private parties are binding only on those parties, conflicting results might be reached in subsequent suits by other individuals. *Id.* By requiring *quo warranto* proceedings, these conflicting results are avoided because the judgment settles the validity of the annexation on behalf of all property holders in the affected area. *Id.*

case. The undersigned finds that Plaintiffs have failed to establish that the *quo warranto* requirement undermines their "plain, speedy and efficient" state court remedies.

Accordingly, the undersigned finds Texas state courts provide "a plain, speedy and efficient remedy" for Plaintiffs' complaints and that they are thus barred by the TIA. Because the Complaint is barred by the TIA, the undersigned recommends that the Court dismiss this lawsuit for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Defendant City of Austin's Rule 12(b)(1) and 12 (b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint, Dkt. 41, and **DISMISS** Plaintiffs' claims **WITHOUT PREJUDICE** for lack of jurisdiction. It is **FURTHER RECOMMENDED** that all other pending motions are **DENIED AS MOOT**. Lastly, it is **ORDERED** that this cause of action is **REMOVED** from the undersigned's docket.

## V.     WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d

419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED July 22, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE